**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMAZON.COM INC., | |
| Plaintiff, | |
| v. | No. 21-CV-767 (BMC) |
| ATTORNEY GENERAL LETITIA JAMES, in her official capacity as the Attorney General of the State of New York, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

STANDARD OF REVIEW ....................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

I.   THE COURT LACKS SUBJECT MATTER JURISDICTION ........................................... 4

II.  *YOUNGER* ABSTENTION IS REQUIRED ............................................................................ 5

III.  THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THIS DECLARATORY JUDGMENT ACT REQUEST ....................................................................... 9

IV.  EVEN IF THE COURT REACHES THE MERITS, THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ........................................................................................................... 12

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Elzanaty*,
  916 F. Supp. 2d 273 (E.D.N.Y. 2013) ..................................................................3

*Apotex Inc. v. Sanofi-Synthelabo*,
  386 F. Supp. 2d 549 (S.D.N.Y. 2005)..................................................................10

*Arbitron Inc. v. Cuomo*,
  No. 08 Civ. 8497 (DLC), 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008)............6–9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................4

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ................................................................................15

*Belknap, Inc. v. Hale*,
  463 U.S. 491 (1983)..............................................................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................4

*Bldg. Trades Employers' Educ. Ass'n v. McGowan*,
  311 F.3d 501 (2d Cir. 2002)............................................................................20–21

*Brillhart v. Excess Ins. Co.*,
  316 U.S. 491 (1942)................................................................................................9

*Cadle Co. v. Bankers Fed. Sav. FSB*,
  929 F. Supp. 636 (E.D.N.Y. 1996) ................................................................11–12

*Coley v. Ogden Mem'l Hosp.*,
  107 A.D.2d 67 (3d Dep't 1985)............................................................................18

*Concerned Home Care Providers, Inc. v. Cuomo*,
  783 F.3d 77 (2d Cir. 2015)...................................................................................25

*Cuomo v. Dreamland Amusements, Inc.*,
  No. 08 Civ. 6321 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) .......7–9, 25

*Diamond "D" Constr. Corp. v McGowan*,
  282 F.3d 191 (2d Cir. 2002)...................................................................................7

*Doe v. Conn. Dep't of Health Servs.*,
  75 F.3d 81 (2d Cir. 1996) ..................................................................................7

*Domnister v. Exclusive Ambulette, Inc.*,
  607 F.3d 84 (2d Cir. 2010) ..........................................................................21–23

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ..........................................................................................6

*Dow Jones & Co. v. Harrods, Ltd.*,
  237 F. Supp. 2d 394 (S.D.N.Y. 2002) ............................................................11

*Eccles v. Peoples Bank*,
  333 U.S. 426 (1948) ..........................................................................................9

*Ellis v. Tribune Television Co.*,
  443 F.3d 71 (2d Cir. 2006) ................................................................13, 15–17

*Fleet Bank, N.A. v. Burke*,
  160 F.3d 883 (2d Cir. 1998) ..........................................................................4–5

*Gade v. Natural Solid Wastes Management Association*,
  505 U.S. 88 (1992) ...................................................................................13, 15

*Gasperino v. Larsen Ford, Inc.*,
  426 F.2d 1151 (2d Cir. 1970) ..........................................................................16

*Gianni Sport Ltd. v. Metallica*,
  No. 00 Civ. 0937 (MBM), 2000 WL 1773511 (S.D.N.Y. Dec. 4, 2000) ...............11

*Gibson v. Berryhill*,
  411 U.S. 564 (1973) ..........................................................................................7

*GOJO Indus., Inc. v. Innovative Biodefense, Inc.*,
  407 F. Supp. 3d 356 (S.D.N.Y. 2019) ............................................................16

*Great Lakes Co. v. Huffman*,
  319 U.S. 293 (1943) ..........................................................................................9

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) ................................................................................4

*Harvey v. 320 Owners Corp.*,
  No. 07 Civ. 6763 (LAP), 2009 WL 1110794 (S.D.N.Y. Apr. 21, 2009) ................8

*Hasemann v. Gerber Prod. Co.*,
  No. 15-CV-2995 MKB, 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) ................17

*Healthcare Ass'n of New York State, Inc. v. Pataki*,
  471 F.3d 87 (2d Cir. 2006)........................................................................21–22, 24

*Hicks v. Miranda*,
  422 U.S. 332 (1975).......................................................................................6

*Hindu Temple Soc'y of N. Am. v. Supreme Ct. of State of New York*,
  335 F. Supp. 2d 369 (E.D.N.Y. 2004) ...........................................................8

*Huston v. Hayden Bldg. Maintenance Corp.*,
  617 N.Y.S.2d 335 (2d Dept. 1994) ...............................................................20

*In re Am. Fed'n of Labor & Cong. of Indus. Orgs.*,
  No. 20-1158, 2020 WL 3125324 (D.C. Cir. June 11, 2020) ...........................14–15

*In re Standard & Poor's Rating Agency Litig.*,
  23 F. Supp. 3d 378 (S.D.N.Y. 2014)..........................................................6, 8–9

*MacPherson v. Town of Southampton*,
  No. 07-CV-3497 DRH AKT, 2013 WL 6058202 (E.D.N.Y. Nov. 14, 2013) .........8

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)......................................................................3–4

*McNally v. Port Authority*,
  414 F.3d 352 (2d Cir. 2005).......................................................................16

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)...............................................................................13, 25

*Metro. Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985).............................................................................23–24

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982).....................................................................................6

*National Commc'ns Ass'n, Inc. v. American Tel. & Tel. Co.*,
  46 F.3d 220 (2d Cir. 1995).........................................................................16

*New Orleans Public Serv. Council, Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989).....................................................................................7

*New York v. Amazon.com Inc.*,
  No. 21 Civ. 1417 (JSR) (S.D.N.Y. Feb. 18, 2021) ..........................................3

*New York v. Solvent Chem. Co.*,
  664 F.3d 22 (2d Cir. 2011)...........................................................................10

*O'Rourke v. Long*,
  41 N.Y.2d 219 (N.Y. 1976) ...............................................................................18

*Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*,
  477 U.S. 619 (1986)..........................................................................................7

*Paige v. Henry J. Kaiser Co.*,
  826 F.2d 857 (9th Cir. 1987) ...........................................................................25

*Palmer v. Amazon*,
  No. 20-CV-2468 BMC, 2020 WL 6388599 (E.D.N.Y. Nov. 2, 2020)........12–14, 19

*People v Greenberg*,
  34 N.Y.S.3d 402 (N.Y. 2016) ..........................................................................19

*Philip Morris, Inc. v. Blumenthal*,
  123 F.3d 103 (2d Cir. 1997)...............................................................................7

*Pinckney v. Bd. of Educ.*,
  920 F. Supp. 393 (E.D.N.Y. 1996) ....................................................................7

*Queenside Hills Realty Co. v. Saxl*,
  328 U.S. 80 (1946)...........................................................................................24

*Reed v. 1-800-Flowers.com, Inc.*,
  327 F. Supp. 3d 539 (E.D.N.Y. 2018) .............................................................16

*Ross v. Curtis-Palmer Hydro-Elec. Co.*,
  81 N.Y.2d 494 (N.Y. 1993) .............................................................................16

*Sampson v. Medisys Health Network Inc.*,
  No. 10-CV-1342 SJF, 2011 WL 579155 (E.D.N.Y. Feb. 8, 2011) .................21–22

*Samuels v. Mackell*,
  401 U.S. 66 (1971)...........................................................................................10

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
  359 U.S. 236 (1959)........................................................................... *passim*

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*,
  436 U.S. 180 (1978)..............................................................................20–22, 24

*Shanahan v. Monarch Eng'g Co.*,
  219 N.Y. 469 (N.Y. 1916) ...........................................................................18–19

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)..............................................................................................5

*Silva v. Hornell Brewing Co.*,
No. 20-CV-756 ARR PL, 2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020)..............................17

*Simmonds v. Deutsch*,
No. 88-CV-3881, 1989 WL 32835 (E.D.N.Y. Mar. 22, 1989)..................................................7

*Spargo v. N.Y. State Comm'n on Judicial Conduct*,
351 F.3d 65 (2d Cir. 2003)...............................................................................................5–6

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013)...............................................................................................................9

*State of New York v Cortelle Corp.*,
38 N.Y.2d 83 (N.Y. 1975) ..................................................................................................19

*State of New York v Princess Prestige Co*,
42 N.Y.2d 104 (N.Y. 1977) ...........................................................................................19–20

*State v. Frink Am., Inc.*,
770 N.Y.S.2d at 227...........................................................................................................20

*Steel Inst. of New York v. City of New York*,
716 F.3d 31 (2d Cir. 2013).................................................................................................25

*Storms v. U.S.*,
No. 13-CV-811 MKB, 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015)....................................12

*Sun Refining & Marketing Co. v. Brennan*,
921 F.2d 635 (6th Cir. 1990) ...............................................................................................7

*Tassy v. Brunswick Hosp. Ctr., Inc.*,
296 F.3d 65 (2d Cir. 2002)............................................................................................14, 17

*Townsend v. New York*,
No. 14-CV-6079 CBA LB, 2015 WL 4692604 (E.D.N.Y. Aug. 6, 2015) ...............................9

*Trainor v. Hernandez*,
431 U.S. 434 (1977)...............................................................................................................6

*Tsirelman v. Daines*,
794 F.3d 310 (2d Cir. 2015)..................................................................................................4

*U.S. ex rel. Best v. Barbarotta*,
No. 12-CV-6218 NGG, 2013 WL 66031 (E.D.N.Y. Jan. 4, 2013) ..........................................7

*United States v. Western Pac. R.R. Co.*,
352 U.S. 59 (1956)........................................................................................................ 13-15

*Wilton v. Seven Falls*,
  515 U.S. 277 (1995) ..................................................................2, 9–10, 12

*XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*,
  414 F. Supp. 3d 605 (S.D.N.Y. 2019) ......................................................12

*Younger v. Harris*,
  401 U.S. 37 (1971) ........................................................... *passim*

**FEDERAL STATUTES**

29 U.S.C.
  § 151 ..........................................................................................23
  § 653(b)(4) ............................................................................13–15
  § 667(a) .................................................................................13–15
  § 667(b)–(c) ...............................................................................13

Declaratory Judgment Act, 28 U.S.C.
  § 2201(a) ................................................................................9–10

**STATE STATUTES**

N.Y. Exec. Law
  § 63(12) ........................................................................... *passim*

N.Y. Labor Law
  § 200................................................................................. *passim*
  § 215................................................................................. *passim*
  § 740................................................................................. *passim*

N.Y. Workers Comp. Law
  § 11..................................................................................2, 18–19

**RULES**

Federal Rule of Civil Procedure
  Rule 12(b)(1)........................................................................1, 3–4
  Rule 12(b)(6)...........................................................................1, 4

Defendant Attorney General Letitia James ("OAG"), respectfully submits this memorandum of law in support of her motion to dismiss the complaint or, in the alternative, stay the action filed by Plaintiff Amazon.com, Inc. ("Amazon"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Following an 11-month investigation, the OAG commenced a state-court action against Amazon under the OAG's express authority pursuant to New York Executive Law § 63(12), asserting violations of New York Labor Law ("NYLL") § 200, which requires employers to provide reasonable and adequate protection to the lives, health, and safety of their employees, and NYLL §§ 215 and 740, which are New York's anti-retaliation and whistleblower protection laws, respectively. *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. Feb. 16, 2021) (the "State Action"). Seeking to interfere with the OAG's imminent state-court proceeding, Amazon filed this anticipatory federal action one business day earlier. Compl., ECF No. 1. Amazon asserts that the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 *et seq*., preempts the OAG's efforts to regulate workplace safety and that the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–69, preempts the OAG's claims that Amazon retaliated against individuals for complaining about health and safety violations. Amazon also contends that the OAG does not have authority under state law to bring her NYLL claims.

Amazon's complaint should be dismissed. As an initial matter, the Court lacks federal subject matter jurisdiction because Amazon requests anticipatory declaratory and injunctive relief while disputing the meaning and application of state law. Furthermore, even assuming federal jurisdiction, *Younger* abstention is mandatory here because the OAG's action is pending in state court; a safe and retaliation-free workplace is an important state interest; and the State

Action affords an adequate opportunity for judicial review of Amazon's preemption defenses. The *Wilton* abstention doctrine also calls for this Court to abstain from exercising jurisdiction.

Even if the Court reaches the merits, the complaint fails to state a claim. The Occupational Safety and Health Administration ("OSHA") has left COVID-19 workplace safety issues to the states, so there is no OSH Act preemption. And the primary-jurisdiction doctrine is inapplicable here. Nor does New York Workers' Compensation Law ("WCL") bar the OAG's § 200 claim. Indeed, the OAG has authority under state law to pursue claims for NYLL violations. NLRA preemption under *Garmon* does not apply to the OAG's §§ 215 and 740 claims because the State Action is different from the one that would be presented to the NLRB; and even if that were not true, the local interest exception applies. This case should be dismissed.

## BACKGROUND

Throughout the historic COVID-19 pandemic, Amazon has repeatedly and persistently failed to comply with its obligation to institute reasonable and adequate measures to protect its workers from the spread of the virus in its New York City facilities JFK8, a Staten Island fulfillment center, and DBK1, a Queens distribution center. Amazon's flagrant disregard for health and safety requirements has threatened serious illness and grave harm to the thousands of workers in these facilities and poses a continued substantial and specific danger to the public health. When Amazon employees began to object to Amazon's inadequate practices and to make complaints to Amazon management, government agencies, and the media, Amazon took swift retaliatory action to silence workers' complaints. In late-March 2020, Amazon fired employee Christian Smalls, and in early-April 2020, Amazon issued a final written warning to

employee Derrick Palmer. Amazon's actions against these visible critics who advocated for compliance with legal health requirements sent a chilling message to other Amazon employees.

In a deliberate effort to interfere with the OAG's imminent state-court lawsuit, Amazon brought this action on February 12, 2021. *See* Compl. ¶¶ 13, 165, 174. The complaint seeks declaratory relief that the OAG lacks authority to regulate workplace safety responses to COVID-19 and retaliation against worker complaints. And the complaint seeks injunctive relief preventing the OAG from pursuing those claims in a state-court enforcement proceeding.

Just one business day later, on February 16, 2021, the OAG filed the State Action, requesting an order that enjoins Amazon from engaging in unlawful practices which fail to reasonably and adequately protect the lives, health, and safety of its employees; requires Amazon to notify its employees of their rights and train supervisors on these rights; awards damages for two employees who were wrongly disciplined; and requires disgorgement of excess profits that Amazon realized by failure to reasonably protect its employees. On February 18, 2021, Amazon removed the State Action to the U.S. District Court for the Southern District of New York. *New York v. Amazon.com Inc.*, No. 21 Civ. 1417 (JSR) (S.D.N.Y. Feb. 18, 2021). On April 9, 2021, after briefing and argument, Judge Jed S. Rakoff remanded the State Action to New York State Supreme Court. *See* ECF No. 23-1.

## STANDARD OF REVIEW

On a Rule 12(b)(1) motion to dismiss, the "'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A case is properly dismissed for lack of subject matter

jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113.

A court reviewing a motion to dismiss under Rule 12(b)(6) must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). But a court need not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To defeat the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction

As an initial matter, the Court does not have federal subject matter jurisdiction over this case. In *Fleet Bank, N.A. v. Burke*, 160 F.3d 883 (2d Cir. 1998), the Second Circuit held that subject matter jurisdiction is lacking where, as here, a plaintiff seeking anticipatory declaratory and injunctive relief—including on federal preemption grounds—disputes the meaning and application of state law. In that case, Fleet Bank sued the Connecticut Commissioner of Banking and Department of Banking in federal court seeking declaratory and injunctive relief on the ground that Connecticut law (a) did not prohibit Fleet from charging non-customers ATM fees to use the bank's ATMs; or if it did, (b) was preempted by federal law. *Fleet*, 160 F.3d at 885. The Second Circuit ruled that Fleet Bank's dispute over the meaning of state law deprived the federal court of subject-matter jurisdiction, reasoning that "opening the federal courts to preemption claims by plaintiffs raising disputes about the meaning and application of state law risks a major and unwarranted incursion on the authority of state courts." *Id.* at 892.

4

The *Fleet* court distinguished *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983), on which Amazon relies. Compl. ¶ 22. In *Shaw*, unlike in *Fleet*, no dispute was raised as to the interpretation of state law, and in fact, the *Shaw* plaintiffs "acknowledged that the state law regulated them in the manner that the state officials were asserting." *Fleet*, 160 F.3d at 889. Accordingly, the Second Circuit limited *Shaw*'s holding to situations where a plaintiff does not challenge the interpretation of the allegedly pre-empted state law. *Id.* at 893.

In the instant case, Amazon has raised precisely the type of state-law dispute that was not present in *Shaw*, and that was fatal to subject-matter jurisdiction in *Fleet Bank*.[1] Specifically, Amazon alleges that the OAG lacks legal authority under state law to pursue claims for NYLL violations because: (1) the OAG's authority to enforce NYLL § 200 depends on the New York Labor Commissioner making a determination that an area is in a dangerous condition; (2) New York's Workers' Compensation Law bars the OAG's claims; (3) New York administrative procedure law does not allow for COVID-19 guidance to have any legal effect; and (4) NYLL §§ 215 and 740 only provide a private, not public, right of action. While Amazon is wrong on all counts, *see infra* IV., because Amazon has disputed the application of New York law, the exception to *Shaw* recognized in *Fleet* applies, and there is accordingly no subject-matter jurisdiction over its preemption claims.

## II.   *Younger* Abstention is Required

Even if the Court determines that subject matter jurisdiction exists, *Younger* abstention is required. Based on affirming state courts' competence "and acknowledging the dignity of states

---

[1] *See* Compl. ¶¶ 15, 189–92, 200–01, 206, 208–09, 216, 218–19 (disputing interpretation and application of state law).

as co-equal sovereigns," the *Younger* doctrine[2] applies when a three-part test is met. *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (citations omitted). The doctrine makes federal-court abstention "mandatory when: (1) there is a pending state proceeding (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Id.* (citations omitted); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (same factors). Each of the three factors exists here.

With respect to the first factor, the OAG's State Action—the proceeding Amazon seeks to enjoin in this federal action—is pending in state court.[3] To be sure, Amazon filed this case one business day before the State Action, but where state "proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975) (applying *Younger* abstention where "federal litigation was in an embryonic stage and no contested matter had been decided"); *Middlesex County Ethics Comm.*, 457 U.S. at 436–37 (applying *Younger* abstention where "an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits"). There had been no proceedings—let alone ones of substance on the merits—in this federal lawsuit prior to the filing of the State Action on February 16. *See Arbitron Inc. v. Cuomo*, No. 08 Civ. 8497

---

[2] *See, e.g.*, *Younger v. Harris*, 401 U.S. 37 (1971) (requiring abstention from deciding suit to enjoin state criminal prosecution); *see also Trainor v. Hernandez*, 431 U.S. 434 (1977) (requiring abstention from deciding suit seeking injunctive and declaratory relief against state civil proceedings to stop alleged welfare fraud).

[3] "In light of [Judge Rakoff's] decision to remand" the State Action, there can be "no dispute that there is—now—a pending state proceeding." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 409 (S.D.N.Y. 2014).

(DLC), 2008 WL 4735227, at *3–4 (S.D.N.Y. Oct. 27, 2008) (OAG state-court action filed four days after plaintiff moved for TRO in federal court "properly trigger[ed] *Younger* abstention.").

The second *Younger* factor is satisfied because "the state action concerns the central sovereign functions of state government such that 'exercise of the federal judicial power would disregard the comity between the States and the National Government.'" *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997) (citations omitted); *see also New Orleans Public Serv. Council, Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989) ("*NOPSI*") ("[P]re-emption-based challenges merit a similar focus."). The Supreme Court, Second Circuit, and this District have found that "central sovereign functions of state government" include many matters comparable to protecting workplace health and safety and anti-retaliation rights.[4] And the Southern District has held in an analogous case that "New York has an important interest in assuring safe, sanitary, and non-discriminatory working conditions for workers in the State," and New York's "interest in enforcing its own laws and investigating their violation cannot seriously be disputed." *Cuomo v. Dreamland Amusements, Inc.*, No. 08 Civ. 6321 (JGK), 2008 WL 4369270, at *10 (S.D.N.Y. Sept. 22, 2008); *see also Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 640–41 (6th Cir. 1990) (recognizing Ohio's "substantial, legitimate interest in regulating the safety of the workplace"). The State Action is also brought pursuant to New York Executive Law § 63(12), which gives "the Attorney General sole authority to sue"—further

---

[4] *See, e.g.*, *Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (outlawing sex discrimination); *Gibson v. Berryhill*, 411 U.S. 564, 576–77 (1973) (regulating practice of medicine); *Doe v. Conn. Dep't of Health Servs.*, 75 F.3d 81 (2d Cir. 1996) (same); *Diamond "D" Constr. Corp. v McGowan*, 282 F.3d 191 (2d Cir. 2002) (enforcing "prevailing wage" law); *U.S. ex rel. Best v. Barbarotta*, No. 12-CV-6218 NGG, 2013 WL 66031, at *2–3 (E.D.N.Y. Jan. 4, 2013) (application of New York's "own mental health laws"); *Pinckney v. Bd. of Educ.*, 920 F. Supp. 393, 397 (E.D.N.Y. 1996) ("managing education"); *Simmonds v. Deutsch*, No. 88-CV-3881, 1989 WL 32835, at *9 (E.D.N.Y. Mar. 22, 1989) (regulation of day care center "which involves equally weighty interests in the protection of public health, safety and welfare").

evincing the important state interests at stake here. *Arbitron, Inc.*, 2008 WL 4735227, at \*5. For all these reasons, comity requires abstention in recognition of New York courts' jurisdiction to apply and enforce state law in the first instance.

The third *Younger* prong is also met because Amazon is free to assert its federal preemption claims as defenses in the state-court proceeding. *See Harvey v. 320 Owners Corp.*, No. 07 Civ. 6763 (LAP), 2009 WL 1110794, at \*3 (S.D.N.Y. Apr. 21, 2009) (abstaining from hearing plaintiffs' claims for injunctive and declaratory relief because, *inter alia*, plaintiffs could raise their constitutional defenses to the defendants' state claims in the state-court proceedings); *see also Hindu Temple Soc'y of N. Am. v. Supreme Ct. of State of New York*, 335 F. Supp. 2d 369, 374–75 (E.D.N.Y. 2004) ("[T]he motivating spirit of *Younger* is the presumption that state courts are eminently able to recognize and resolve federal constitutional questions."). It is Amazon's burden to establish that the New York courts would be unable or unwilling to address its preemption arguments. Amazon's complaint does not contain any such allegation—reason enough to find this *Younger* factor to be satisfied. *See MacPherson v. Town of Southampton*, No. 07-CV-3497 DRH AKT, 2013 WL 6058202, at \*19 (E.D.N.Y. Nov. 14, 2013) (finding *Younger* abstention applied where complaint did not contain any allegation that the state-court proceedings would not afford opportunity for judicial review of constitutional claims). Nor would any such allegation be credible. "State courts routinely hear cases in which federal preemption is asserted as a defense." *Dreamland Amusements*, 2008 WL 4369270, at \*11. "There is no reason that the state court cannot hear and decide all of [Amazon's] preemption claims." *Id.*

In addition to the traditional *Younger* factors, this case further satisfies several additional considerations that courts have recognized support *Younger* abstention—it was (1) "initiated by a

state actor (namely, the state attorney general in . . . her official capacity)" to (2) "sanction the federal plaintiff for some wrongful act" (namely, Amazon for its health and safety violations and retaliatory acts), and (3) "involved a lengthy investigation culminating in the filing of a formal complaint or charges." *In re Standard and Poor's*, 23 F. Supp. 3d at 409 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013) (internal quotation marks and alterations omitted)).

Because *Younger* applies*, the Court should dismiss this action. *See, e.g.*, *Arbitron, Inc.*, 2008 WL 4735227, at *5 (granting OAG's motion to dismiss under *Younger*); *see also Townsend v. New York*, No. 14-CV-6079 CBA LB, 2015 WL 4692604, at *8 (E.D.N.Y. Aug. 6, 2015) (dismissing claims for prospective relief under *Younger*); *Dreamland Amusements*, 2008 WL 4369270, at *12 (granting OAG's motion to dismiss under *Younger*).

## III.   The Court Should Decline to Exercise Jurisdiction over this Declaratory Judgment Act Request

Even if *Younger* abstention were not mandatory here, this case does not merit the Court's discretionary declaratory judgment jurisdiction under *Wilton v. Seven Falls*, 515 U.S. 277 (1995). In *Wilton*, the Supreme Court held that federal courts can and should use the "unique and substantial discretion" granted them by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to avoid piecemeal litigation and prevent forum shopping. The Declaratory Judgment Act is an authorization, not a command, giving federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 499 (1942); *Great Lakes Co. v. Huffman*, 319 U.S. 293, 297–98 (1943). "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948). The OAG has brought NYLL claims in state court; another federal court has already concluded that there is no basis for

removing the OAG's state-law claims to federal court, *see* ECF No. 23-1 (S.D.N.Y. order); and Amazon's challenges to that state-law enforcement proceeding can be litigated there. To avoid piecemeal litigation and prevent Amazon from forum shopping, the Court should decline to exercise federal declaratory judgment jurisdiction here.[5]

In *New York v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011), the Second Circuit set forth five factors for district courts to consider in deciding whether to entertain a request pursuant to the Declaratory Judgment Act: "[1] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . [2] whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . [3] whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; [4] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy."

As to the first factor, the declaratory judgment Amazon seeks will not serve a useful purpose in clarifying the legal issues involved, which can be adjudicated in the State Action. "The existence of another pending action concerning the same" issues "such as this litigation, could undermine or even contradict the adjudication ultimately reached" in the State Action "and thus multiply and muddy the legal issues involved." *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 552 (S.D.N.Y. 2005) (declining to entertain declaratory judgment action under *Wilton* and granting motion to dismiss), *aff'd*, 175 F. App'x 349 (Fed. Cir. 2006). The pending

---

[5] While *Wilton* addresses declaratory judgment jurisdiction, the Supreme Court has recognized (in the *Younger* abstention context) that a declaratory judgment like the one Amazon seeks "has virtually the same practical impact as a formal injunction would." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971); *see id.* at 73 ("Ordinarily, . . . the practical effect of [injunctive and declaratory] relief will be virtually identical" and the policy against federal interference "will be frustrated as much by a declaratory judgment as it would be by an injunction").

coercive action in state court will provide Amazon the opportunity to resolve the issues raised in the instant action. *See Gianni Sport Ltd. v. Metallica*, No. 00 Civ. 0937 (MBM), 2000 WL 1773511, at *5 (S.D.N.Y. Dec. 4, 2000) (declining to exercise jurisdiction and granting motion to dismiss where plaintiff filed anticipatory suit).

The second factor might weigh in favor of this Court exercising jurisdiction because declaratory relief might finalize the instant controversy, but that would only apply if the Court were to decide that the OAG's claims are preempted, which they are not. *See infra* IV.1., IV.5. Allowing the state court to decide the preemption issues would also finalize the controversy and would maximize judicial economy.

With respect to the third factor, Amazon raced to file its action knowing full well that the OAG was planning to file an enforcement action soon in state court.[6] Courts in the Second Circuit have held that a party's behavior in "rac[ing] to the courthouse" in order to choose the forum weighs against the exercise of declaratory judgment jurisdiction. *See, e.g.*, *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 at 440 (S.D.N.Y. 2002); *see also Gianni Sport Ltd.*, 2000 WL 1773511, at *5. "A rush to file first in anticipation of litigation in another tribunal, thereby enabling a potential defendant to choose the forum . . . , is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief." *Dow Jones*, 237 F. Supp. 2d at 440. This factor weighs strongly against the exercise of jurisdiction here.

The fourth factor counsels against jurisdiction as well. The OAG's case is proceeding in state court, and thus a decision in this lawsuit would necessarily create the possibility of inconsistent outcomes and dueling court decisions in different sovereign systems. Furthermore, "actions which have as their underlying basis rights that are essentially governed by state law

---

[6] *See, e.g.*, Compl. ¶ 13.

present particularly appropriate cases for application of the abstention doctrine." *Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996).

As to the fifth factor, Amazon should present its defenses in the State Action rather than seeking relief here. "[W]hen the traditional remedy provides the parties with the procedural safeguards required by the law to insure the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment." *Storms v. U.S.*, No. 13-CV-811 MKB, 2015 WL 1196592, at *24 (E.D.N.Y. Mar. 16, 2015) (declining to exercise jurisdiction where three of five factors weighed against adjudication) (citations omitted). "[R]esolution of the underlying claims in a parallel proceeding is a 'more effective remedy' than a declaratory judgment." *XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605, 611–12 (S.D.N.Y. 2019) (finding *Wilton* abstention warranted). And the State Action has the additional virtue of being an appropriate forum for Amazon to raise state-law defenses (such as Amazon's disagreement over the meaning of NYLL) as well as the federal-preemption defenses that Amazon has asserted here.

Accordingly, this Court should abstain from exercising its discretion and dismiss Amazon's claims.

## IV. Even if the Court Reaches the Merits, the Complaint Fails to State a Claim for Relief

### 1. The OAG's New York Labor Law § 200 Claim Is Not Preempted by the OSH Act.

Amazon claims that the OSH Act preempts any attempt by the OAG to exercise regulatory authority over a private employer's health-and-safety response to COVID-19. Compl. ¶¶ 204, 214. But as this Court recognized in *Palmer v. Amazon.com, Inc.*, the OSH Act does not preempt the OAG's Labor Law § 200 claim because it "does not conflict with an existing federal

standard and the OSH Act's savings clause expressly excludes statutory tort law claims from preemption." No. 20-CV-2468 BMC, 2020 WL 6388599, at *10 (E.D.N.Y. Nov. 2, 2020).

The presumption against preemption is especially strong when States "exercise[] their police powers to protect the health and safety of their citizens." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). The OSH Act expressly provides that "[n]othing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title." 29 U.S.C. § 667(a). Here, the federal government did not promulgate standards with respect to the COVID-related workplace safety issues involved in this case.[7] The OSH Act also preserves "common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4). That savings clause encompasses state-law workplace protections such as NYLL § 200. Therefore, the OAG's enforcement of NYLL § 200 does not conflict with existing federal standards, as there was no standard in effect by OSHA to govern workplace exposure to COVID-19.

## 2. OSHA Does Not Have Primary Jurisdiction over the OAG's Labor Law § 200 Claim.

Amazon also asserts that OSHA has primary jurisdiction over the OAG's NYLL § 200 claim. Compl. ¶¶ 205, 215. Whether to invoke the primary-jurisdiction doctrine is analyzed "on a case-by-case basis." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006) (citation omitted). It is a prudential doctrine that "applies where a claim is originally cognizable in the

---

[7] Amazon's focus on the submission of a "state plan" (Compl. ¶ 178) is a red herring, because such plans are needed only to impose a State standard on an issue "with respect to which Federal standard has been promulgated under section 655." 29 U.S.C. § 667(b)–(c); *see also Gade v. Natural Solid Wastes Management Association*, 505 U.S. 88, 102 (1992) (plurality op.).

courts," but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956).  In this case, the primary-jurisdiction doctrine does not apply.[8]  There is no basis to subordinate New York law in favor of OSHA jurisdiction merely because OSHA can resolve issues related to workplace health and safety.  *See Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002) ("[W]hether an agency is statutorily authorized to resolve a particular issue is not itself determinative of whether to apply the doctrine.").

The text of the OSH Act makes clear that Congress did not intend to vest OSHA with primary jurisdiction over workplace safety generally, let alone jurisdiction to resolve workplace safety disputes that arise under state laws.  *See* 29 U.S.C. §§ 653(b)(4), 667(a); *see also supra* IV.1.  Here, it is undisputed that OSHA has not promulgated any national safety standard in response to COVID-19, let alone one specific to warehouse operations.  *See In re Am. Fed'n of Labor & Cong. of Indus. Orgs.*, No. 20-1158, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020) (dismissing challenge to OSHA's "decision not to issue an [emergency temporary standard] to protect working people from occupational exposure to [COVID-19]").  Instead, OSHA has expressly cited the various "non-OSHA public safety requirements enacted by federal, state, and local officials in response to the pandemic" as a reason *not* to enact such federal standards.  *See* OSHA Resp. to Emergency Pet. at 16, *In re Am. Fed'n of Labor & Congress of Indus. Orgs*, No. 20-1158 (D.C. Cir. May 29, 2020).  OSHA has explained, "the pandemic has had dramatically

---

[8] The OAG respectfully disagrees with this Court's holding in *Palmer v. Amazon*, 2020 WL 6388599, at *4–7, that the primary-jurisdiction doctrine applied to the private plaintiffs' NYLL § 200 claim, and certainly, with extending that holding to preclude the OAG from enforcing the NYLL in state court.  Further, any analysis of primary-jurisdiction doctrine should be for the court in the State Action to adjudicate in the first instance.

different impacts on different parts of the country," and "State and local requirements and guidance on COVID-19 are thus critical to employers in determining how to best protect workers." *See id.* at 32.

In the absence of any federal standard that could preempt the OAG's COVID-related NYLL § 200 claim, and in light of OSHA's disclaimer of any need for uniformity, there is no basis to rely on the primary-jurisdiction doctrine and refer this matter to OSHA in the first instance. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) ("[E]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation."). Congress chose to enact federal regulation of workplace safety in a specific manner: by conferring authority on OSHA to issue certain regulations, and then vesting such federal standards with carefully defined preemptive effect. *See Gade*, 505 U.S. at 96–97. When, as here, OSHA declines to exercise its authority, Congress expressly preserves the substantive effect of state laws and safety standards, 29 U.S.C. § 653(b)(4), as well as the jurisdiction of state courts and agencies, *id.* § 667(a), to resolve matters of workplace safety. The primary-jurisdiction doctrine has no application under these circumstances.

The traditional factors the Second Circuit considers in determining whether to apply primary jurisdiction counsel the same result. Although "[n]o fixed formula exists for applying" the doctrine, *Western Pac. R.R. Co.*, 352 U.S. at 64, the Second Circuit has looked to:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83 (internal citation omitted).  Additionally, the court may consider "potential costs resulting from complications and delay in the administrative proceedings."  *Id.*

None of the *Ellis* factors support the application of the primary-jurisdiction doctrine here. *First*, the claims presented in this case do not present issues that are so arcane or complex that they fall beyond the competence of judges and instead require OSHA's "technical or policy expertise."  *National Commc'ns Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995); *see also Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 547–49 (E.D.N.Y. 2018) (denying request to abstain pursuant to primary-jurisdiction doctrine because determining violations of law was within core competency of judiciary, and agency had not yet promulgated regulations despite authority and relevant experience to do so).  To the contrary, NYLL claims are well within the conventional experience of judges, and courts routinely adjudicate tort claims under NYLL § 200.[9]  By contrast, although OSHA has general expertise over workplace safety, it has no expertise over interpreting or applying state laws or state-issued safety requirements for businesses operating during the COVID-19 pandemic.

*Second*, as previously noted, COVID-19 related workplace health and safety issues do not fall particularly within OSHA's discretion as OSHA has "already taken a clear position," declining to issue COVID-19 guidance and instead choosing to rely on state and local measures. *GOJO Indus., Inc. v. Innovative Biodefense, Inc.*, 407 F. Supp. 3d 356, 362–63 (S.D.N.Y. 2019) (finding all factors weighed against stay, including second factor because nothing raised an unresolved question of agency discretion).  Even if this Court interprets the instant matter to be

---

[9] *See, e.g.*, *Gasperino v. Larsen Ford, Inc.*, 426 F.2d 1151, 1153 (2d Cir. 1970) (wrongful death action under NYLL § 200); *see also McNally v. Port Authority*, 414 F.3d 352, 380 (2d Cir. 2005) (applying NYLL § 200 substantive standards to claims arising from World Trade Center attacks); *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505–06 (N.Y. 1993) (workplace injury claim under NYLL § 200).

"particularly within" OSHA's jurisdiction, this factor is not dispositive, and it does not necessarily mean that the primary-jurisdiction doctrine is applicable. *See, e.g.*, *Tassy*, 296 F.3d at 73; *see also Silva v. Hornell Brewing Co.*, No. 20-CV-756 ARR PL, 2020 WL 4586394, at *3 (E.D.N.Y. Aug. 10, 2020) (rejecting application of the primary-jurisdiction doctrine even where the issue of food labeling and packaging fell within the FDA's discretion because the other three *Ellis* factors weighed against applying the doctrine).

*Third*, there is no substantial danger of businesses being subject to inconsistent rulings. Where an agency is not simultaneously contemplating the same issue as one presented in a court case, "there is no risk of inconsistent rulings between the [agency] and the Court." *Hasemann v. Gerber Prod. Co.*, No. 15-CV-2995 MKB, 2016 WL 5477595, at *7 (E.D.N.Y. Sept. 28, 2016) (citing *Ellis*, 443 F.3d at 87–88). Here, Amazon has not alleged that OSHA is investigating Amazon's response to the COVID-19 pandemic. OSHA has declined to issue COVID-19 guidance and has instead deferred to the states. Therefore, there is no risk of inconsistent rulings, and this factor also weighs against applying the primary-jurisdiction doctrine.

*Fourth*, Amazon has not identified any complaints filed with OSHA concerning working conditions at JFK8 and DBK1. *See Ellis*, 443 F.3d at 89 (disfavoring primary jurisdiction when "prior application to the agency is absent").

*Lastly*, there is no advantage in applying the doctrine here. OSHA made clear its view that state and local regulation is preferable to a uniform national standard. The OAG seeks to enforce state law in state court to ensure workers' health and safety and anti-retaliation rights at New York facilities. A deferral to OSHA would be inappropriate and cause unnecessary delay. Thus, there are no benefits to deferring to OSHA instead of allowing the OAG to proceed in state court.

3. **The New York Workers' Compensation Law Does Not Bar the OAG's Claims.**

Amazon also alleges that the New York WCL bars the OAG's NYLL § 200 claim. Compl. ¶¶ 206, 216. However, the compensation-exclusivity rule of WCL § 11 does not bar claims seeking to enjoin hazardous working conditions. The focus of the WCL is *monetary* compensation: the scheme was enacted to ensure that injured workers and their families could receive compensation without "the expenses of a protracted litigation," while protecting employers from "unbounded" damages awards. *See Shanahan v. Monarch Eng'g Co.*, 219 N.Y. 469, 477–78 (N.Y. 1916). To that end, the WCL establishes a comprehensive administrative scheme for determining and awarding damages to injured workers, making monetary awards provided under this scheme to "be exclusive and in place of any other liability whatsoever, to [the injured or deceased] employee" or "any person otherwise entitled to recover damages, contribution or indemnity . . . on account of [the employee's] injury or death." WCL § 11.

The "compensation exclusivity" rule of WCL § 11, *O'Rourke v. Long*, 41 N.Y.2d 219, 226 (N.Y. 1976), thus bars duplicative recovery of monetary damages for past workplace injuries. But no New York court has ever construed this rule to foreclose prospective remedies aimed at preventing future injuries from demonstrated workplace hazards—remedies that had been long been available at common law, and that the New York Legislature has codified, including in statutes like Labor Law § 200. To the contrary, New York courts have held that the exclusivity provision of the WCL does not bar actions against employers for claims that are "outside the scope of the Workers' Compensation Law." *Coley v. Ogden Mem'l Hosp.*, 107 A.D.2d 67, 68–69 (3d Dep't 1985). And the legislative history of WCL § 11 confirms the state legislature's intent to ensure a single source of limited monetary liability—not to preclude other

nonmonetary forms of relief.  *See generally Shanahan*, 219 N.Y. at 477–78 (discussing

legislative aims of workers' compensation scheme and its history).

Here, the OAG seeks an injunction directing Amazon to comply with affirmative

obligations under NYLL § 200 to provide safe working conditions and the equitable remedy of

disgorgement[10]—neither of which is available under New York's WCL.  There is no basis for the

Court to hold that compensation exclusivity under the WCL precludes the OAG's request for

equitable relief in the State Action.

### 4.    The OAG Has Authority to Seek Relief Under NYLL § 200.

Amazon also argues that the OAG lacks authority under New York law to seek relief.  To

the extent Amazon tries to rely on this Court's recent holdings in *Palmer* that the threat of future

harm does not provide a basis for a NYLL § 200 claim, 2020 WL 6388599, at *11, that decision

is readily distinguishable from the instant matter.  The OAG is not a private plaintiff, but a state

agency authorized by New York Executive Law § 63(12) to bring a proceeding for repeated or

persistent fraud and/or illegality, specifically including "an order enjoining the continuance of . .

. illegal acts."  Amazon's argument that only the Commissioner of Labor can enforce NYLL

§ 200, Compl. ¶ 189, is incorrect as well.

New York Executive Law § 63(12) provides the OAG with standing "to seek redress

and additional remedies for recognized wrongs" based on the violation of other statutes.  *State

of New York v Cortelle Corp.*, 38 N.Y.2d 83, 85 (N.Y. 1975); *State of New York v Princess

Prestige Co*, 42 N.Y.2d 104 (N.Y. 1977) (holding that the OAG could obtain injunctive relief

pursuant to Executive Law § 63(12) even though the underlying statute at issue did not provide

---

[10] Disgorgement is an equitable remedy distinct from restitution, which may be available in an
appropriate case under New York Executive Law § 63(12).  *People v Greenberg*, 34 N.Y.S.3d
402, 404–405 (N.Y. 2016).

for such relief).  A violation of any state law or regulation, including the New York Labor Law,

constitutes "illegality" within the meaning of § 63(12).  *State v. Frink Am., Inc.*, 770 N.Y.S.2d at

227.  Injunctive relief directing Amazon to eliminate hazards to prevent future harm to workers

is in line with the Legislature's primary purpose in enacting NYLL § 200.  *See Huston v. Hayden*

*Bldg. Maintenance Corp.*, 617 N.Y.S.2d 335 (2d Dept. 1994) (stating that NYLL § 200 was

enacted by the Legislature for the "primary purpose" of "regulat[ing] conduct" so as to prevent

injury—not merely for allocating liability after the fact).

### 5. The OAG's NYLL §§ 215 and 740 Claims Are Not Preempted by the NLRA.

Relying on *Garmon*, Amazon also claims that the NLRA preempts the OAG from

pursuing her NYLL §§ 215 and 740 claims.  *See* Compl. ¶¶ 207, 217; *San Diego Bldg. Trades*

*Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959).  But this claim has no

merit.  As the Supreme Court has explained, *Garmon* "does not . . . sweep[] away state-court

jurisdiction over conduct traditionally subject to state regulation without careful consideration of

the relative impact of such a jurisdictional bar on the various interests affected."  *Sears, Roebuck*

*& Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978).  Rather,

"inflexible application of the doctrine is to be avoided."  *Id.* (internal quotation marks omitted).

Preemption "must depend upon the nature of the particular interests being asserted and the effect

upon the administration of national labor policies of permitting the state court to proceed."  *Id.* at

189 (internal quotation marks omitted).

To that end, state regulation yields to the jurisdiction of the National Labor Relations

Board ("NLRB") only "[w]hen it is clear or may fairly be assumed that the activities which a

State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor

practice under § 8."  *Garmon*, 359 U.S. at 244.  Generally, "[s]ections 7 and 8 of the Act regulate

'concerted activities' and 'unfair labor practices,' respectively, seeking to protect the former and

stamp out the latter." *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002).

To establish *Garmon* preemption, therefore, the court must first identify "whether any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation." *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006). Next, the court "must decide whether the controversy is identical to one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB." *Id*. Absent identical proceedings, Amazon would need to make "a strong showing that the State has interfered with the protections offered by section 7 or 8 of the NLRA." *Id.* Even if these thresholds are met, a state that has "interests so deeply rooted in local feeling and responsibility" at stake will overcome *Garmon* preemption "in the absence of compelling congressional direction." *Sears*, 436 U.S. at 195 (quoting *Garmon*, 359 U.S. at 244). Here, even if the NLRA is found to protect the conduct at issue here, the proceedings would not be identical, and, regardless, the "local interest" exception should apply.

### a.    The OAG's claims do not meet the threshold for *Garmon* Preemption.

"In order to fall under Section 8 of the NLRA, plaintiffs must be alleging that they were retaliated against on the basis of having engaged in 'concerted protected activity.'" *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 89 (2d Cir. 2010) ("*Domnister II*"). "Concerted protected activity, as defined by [s]ection 7, requires 'that an employee's action be taken for purposes of collective bargaining or other mutual aid or protection.'" *Sampson v. Medisys Health Network Inc.*, No. 10-CV-1342 SJF, 2011 WL 579155, at *8 (E.D.N.Y. Feb. 8, 2011) (quoting *Domnister II*, 607 F.3d at 89). In other words, any proceeding before the NLRB would focus on whether Mr. Smalls and Mr. Palmer were engaged in concerted activities and whether

those activities were "taken for purposes of collective bargaining or other mutual aid or protection." *Id.*

By contrast, whether Mr. Smalls or Mr. Palmer acted in a "concerted" manner for "collective bargaining" or "mutual aid," *id.*, is "irrelevant to the state claim[s]," *Sears*, 436 U.S. at 198. Rather, NYLL § 215 is concerned with whether an employer has discharged or penalized an "employee [who] has made a complaint to his or her employer [or regulators] . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the Labor Law. Similarly, § 740 prohibits "retaliatory personnel action against an employee" who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." In a proceeding before the NLRB, however, the Board would not look at whether the employer engaged in conduct that a complaining employee reasonably believed violated the NYLL, nor whether the employer violated a regulation creating a danger to the public health.

At bottom, therefore, an NLRB proceeding would focus on the right to leverage workers' collective power, while the OAG's case focuses on protecting each employee's ability to raise complaints about NYLL violations that endanger workers' health or the public health during a global pandemic. While potentially related, these issues are "discrete," *Belknap, Inc. v. Hale*, 463 U.S. 491, 512 (1983), and certainly not "identical," *Pataki*, 471 F.3d at 96. As such, Amazon's *Garmon* preemption claim is unsustainable. *See Sears*, 436 U.S. at 196–97 ("Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same."); *Domnister II*, 607 F.3d at 89–90 (rejecting a preemption defense to state- and city-law

national origin discrimination claims that did not "address (or even mention) any collective-bargaining agreement" or claim "to have acted in concert in any fashion," notwithstanding that the same plaintiffs had also raised separate federal-law claims that were dismissed).

Nor would this Court's exercise of jurisdiction interfere with the protections or prohibitions of the NLRA. "The NLRA's declared purpose is to remedy '[t]he inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association.'" *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 753 (1985) (quoting 29 U.S.C. § 151) (holding that the NLRA did not preempt state law requiring employers to provide certain mental health benefits in insurance plans). The Act "notes the desirability of 'restoring equality of bargaining power,' among other ways, 'by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.'" *Id.* at 753–54 (quoting 29 U.S.C. § 151).

This Court's adjudication of the OAG's claims will not threaten these goals. Indeed, Congress did not "intend[] to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization." *Id*. at 756. "To the contrary," the Supreme Court has found "that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety." *Id.* As the OAG seeks to enforce state law to regulate health and safety here, this case creates no risk of undermining the policies

of the NLRA.  And Amazon has failed to make the requisite "strong showing" demonstrating otherwise.  *Pataki*, 471 F.3d at 96.  *Garmon* does not apply.

> **b.** **The strong local interest exception to *Garmon* applies.**

Even if *Garmon* extends to the instant case, "the Court has upheld state-court jurisdiction over conduct that touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.'"  *Sears*, 436 U.S. at 195 (quoting *Garmon*, 359 U.S. at 244). Whether the "local interest" exception applies depends on two factors: First, courts consider whether there exists a "significant state interest in protecting the citizen from the challenged conduct."  Second, "although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed," courts consider whether the exercise of state jurisdiction over the state-law claim entails "little risk of interference with the regulatory jurisdiction of the Labor Board."  *Id.* at 196.

As explained above, there is "little risk" of interference with the NLRB's jurisdiction. *See supra* IV.5.a.  As such, the only remaining question is whether the OAG's claims arose out of "a significant state interest."  *Sears*, 436 U.S. at 196.  But there can be no doubt as to the significance of the state's interest where, as here, the state seeks to protect workers from retaliation for raising concerns about health and safety during a historic pandemic.  "Protection of the safety of persons is one of the traditional uses of the police power of the States," and, as such, "is one of the least limitable of governmental powers."  *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 82–83 (1946); *Metro. Life Ins.*, 471 U.S. at 756 ("The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." (internal quotation marks omitted)).

To that end, "[t]here is a strong presumption against preemption when states and localities 'exercise[] their police powers to protect the health and safety of their citizens.'" *Steel Inst. of New York v. City of New York*, 716 F.3d 31, 36 (2d Cir. 2013) (quoting *Medtronic*, 518 U.S. at 475) (discussing preemption in the OSHA context); *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 865 (9th Cir. 1987) ("As it is uniquely within the states' police powers to legislate for the health and safety of their citizens, and such regulation does not interfere with the NLRA's goals, federal law does not preempt such statutes."). That presumption is at its strongest when the State is enforcing state laws protecting the health and safety of in-person workers during a once-in-a-century pandemic. As "[t]he NLRA does not contain an express preemption provision," *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 84 (2d Cir. 2015), this Court should not infer preemption in this context. The "local interest" exception applies.

### 6.    The OAG Has Authority to Enforce NYLL §§ 215 and 740 Claims.

Amazon also alleges that NYLL §§ 215 and 740 only create a private, not public, right of action, Compl. ¶¶ 208, 218, but, as explained above, *see supra* IV.4., the OAG has express statutory authority under Executive Law § 63(12) to investigate and enforce the New York Labor Law. *See, e.g.*, *Dreamland Amusements*, 2008 WL 4369270, at *4.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action or, in the alternative, stay this action in deference to the OAG's State Action.

Dated: May 3, 2021

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Fiona J. Kaye*

KAREN CACACE
   *Chief of Labor Bureau*
JULIE R. ULMET
   *Deputy Chief of Labor Bureau*

FIONA J. KAYE
ROYA AGHANORI
ELIZABETH KOO
SETH KUPFERBERG
DANIELA L. NOGUEIRA
JEREMY PFETSCH
   *Assistant Attorneys General*

Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8036
Fiona.Kaye@ag.ny.gov

*Attorneys for the State of New York*