# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Jason C. Schwartz
Direct: +1 202.955.8242
Fax: +1 202.530.9522
JSchwartz@gibsondunn.com

May 28, 2021

The Honorable Brian M. Cogan
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Amazon.com, Inc. v. Attorney General Letitia James*, No. 1:21-cv-767 (E.D.N.Y.)

Dear Judge Cogan:

Pursuant to Section III.A.2 of Your Honor's Individual Practices, Plaintiff Amazon.com, Inc. ("Amazon") respectfully responds to the May 25, 2021 pre-motion letter submitted by the Defendant Attorney General of New York (the "OAG") renewing her motion to dismiss Amazon's amended complaint. Dkt. 29 ("Ltr."). The OAG's letter also opposes Amazon's request for leave to move for summary judgment. Although the OAG's arguments lack merit, its letter confirms the need for cross-briefing on the OAG's anticipated motion to dismiss and Amazon's anticipated motion for summary judgment. The issues are inextricably intertwined. And it would be highly inefficient to rule on one motion but not the other; the questions here "should be fully briefed and argued by the parties before they are resolved." *Local Union No. 12004, United Steelworkers of Am. v. Massachusetts*, 377 F.3d 64, 81 (1st Cir. 2004).

## I. This Court Has Jurisdiction Over This Action And Abstention Is Inappropriate

***Jurisdiction.*** Under *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), this Court has jurisdiction over this action "to enjoin state officials from interfering with federal rights." *Id.* at 96 n.14. The OAG's attempt to invoke a limited exception to *Shaw* recognized in *Fleet Bank, N.A. v. Burke*, 160 F.3d 883 (2d Cir. 1998), depends on a mischaracterization of Amazon's claims. Unlike *Fleet*, Amazon is not asking for an interpretation of state law, and the Court does not need to decide any question of state law before deciding Amazon's federal claims. *See id.* at 889. Rather, Amazon seeks a ruling that the OAG's regulation of Amazon's COVID-19 workplace safety response and its discipline of employees who violated COVID-19 safety rules are preempted by *federal law* or within the jurisdiction of *federal* regulators.

***Abstention.*** The abstention doctrines the OAG cites cannot shield its conduct from scrutiny. *First*, abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is not appropriate. The state court assigned to hear the OAG's claims has not yet had an opportunity to rule on Amazon's just-filed motion to dismiss, but it is "readily apparent" that the state court would be "acting beyond the lawful limits of its authority" were it to retain the case. *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*, 70 F.3d 1361, 1370 (1st Cir. 1995). That is because the National Labor Relations Board ("NLRB") is *already* exercising jurisdiction over the events giving rise to the OAG's retaliation claims. And the Occupational Safety and Health Administration ("OSHA") is *already* governing COVID-19 workplace safety issues. This is not a difficult question of "first impression," *HSBC Bank USA, N.A. v. N.Y.C. Comm'n on Human Rights*,

673 F. Supp. 2d 210, 215 (S.D.N.Y. 2009), but an issue settled decades ago by the Supreme Court. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45 (1959); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 97 (1992) (plurality). Federal law and federal regulators control the issues the OAG seeks to regulate.

*Younger* abstention is inappropriate for other reasons. Because all the state court can do is dismiss the OAG's lawsuit, it cannot "afford [Amazon] the full relief [it] seeks" here. *Bridges v. Kelly*, 84 F.3d 470, 477 (D.C. Cir. 1996). Only this Court can enjoin the OAG's purported regulation of matters governed exclusively by federal law or federal regulators. Federal intervention is also warranted given the significant evidence that the OAG launched its investigation and brought its case in a "bad faith" effort to harass Amazon. *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994). Respectfully, there is no "alternative," good-faith explanation for the OAG's conduct. Ltr. 2. An investigator proceeding in good faith does not announce its conclusion—coupled with a highly prejudicial public condemnation—*before* starting its investigation, it does not leak its preliminary assessments to the press (especially one month into its purported investigation), and it does not ignore contrary conclusions from the only investigators (from the New York City Sheriff's Office) who actually visited the facility that is the focus of the dispute. Am. Compl. ¶¶ 217–34. These and other allegations are far from "conclusory," Ltr. 2, and they raise troubling questions about the OAG's actions.

*Second*, *Wilton* abstention does not apply where, as here, the case "rais[es] issues of federal law." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995). It is settled that "cases like this one that involve questions of federal law are 'fundamentally distinct from *Wilton* because federal law supplies a rule of decision,' whereas *Wilton* 'involved state law only.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012). Resolving "questions of federal law" is "quintessentially [the] obligation" of federal courts, and the presence of such questions "demand[s]" a federal forum. *Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996). *Wilton* abstention is also inappropriate because Amazon does "not seek purely declaratory" relief. *Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999). That Amazon does not pursue damages is irrelevant, *see* Ltr. 2–3: *Wilton* does not apply to "actions [], like this one, [that] involve … claims for injunctive relief." *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).[1]

## II.    Amazon States A Claim For Relief

*First*, Amazon adequately alleges that the OAG's attempts to use the New York Labor Law ("NYLL") to regulate claims that Amazon retaliated against Mr. Smalls and Mr. Palmer for protesting working conditions are preempted by the National Labor Relations Act ("NLRA") and within the exclusive jurisdiction of the NLRB. The OAG does not dispute that the NLRB already exercised its jurisdiction over a retaliation claim by a former JFK8 associate that arose from the *same* protests that Mr. Smalls and Mr. Palmer organized or attended. Am. Compl.

---

[1] The OAG's contention that a judicial declaration has "the same practical impact" as an injunction, Ltr. 3, is unavailing because Amazon's claim for injunctive relief is neither "frivolous" nor "made solely to avoid" *Wilton*. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000).

¶¶ 214–15. The OAG nonetheless argues that its claims are somehow still viable because they are not "identical to those before the NLRB." Ltr. 3. That is of no moment. The OAG cannot evade federal law by simply "repackag[ing]" worker-retaliation claims as whistleblower claims under state law. *Chaulk*, 70 F.3d at 1370. The NLRA preempts activity that is even "arguably" within its scope. *Andrewsikas v. Supreme Indus., Inc.*, 2021 WL 1090786, at *3 (D. Conn. Mar. 22, 2021) (quoting *Garmon*, 359 U.S. at 245). Here, there is no question that Mr. Smalls and Mr. Palmer "could have brought to the NLRB the specific claim asserted in this lawsuit—that [they] w[ere] [disciplined] for making job safety complaints," *Platt v. Jack Cooper Transp., Co.*, 959 F.2d 91, 94–96 (8th Cir. 1992); their co-worker already has done so. Regardless, any "uncertainty" about the NLRA's application is a question for the NLRB to resolve in the first instance. *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 95, 101 (2d Cir. 2006) (it "is for the NLRB, not the courts, to draw the close lines").

The "local interest" exception to NLRA preemption is no help to the OAG because the exercise of state jurisdiction presents an "obvious and substantial" "risk of interference with the Board's jurisdiction." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676, 683 (1983). Because the OAG's retaliation claims are "substantially the same" as a claim brought before the Board, the NLRA precludes the OAG from "relitigat[ing]" the same issue "under state law." *Casumpang v. Hawaiian Commmercial & Sugar Co.*, 712 F. App'x 709, 710–11 (9th Cir. 2018). Moreover, Mr. Smalls's and Mr. Palmer's alleged protected activity does not "touch[] interests so deeply rooted in local feeling and responsibility," such as preventing "imminent threats to the public order." *K.D. Hercules, Inc. v. Laborers Local 78 of Laborers' Int'l Union of N. Am.*, 2021 WL 1614369, at *4 (S.D.N.Y. Apr. 26, 2021). New York, in fact, explicitly *declined* to assume responsibility for enforcing workplace safety standards against private employers, and chose instead to rely on *federal* standards. *See* NYLL § 27(1). In any event, the local authorities, *i.e.*, the New York City Sheriff's Office, have already found that Amazon went "above and beyond" the current compliance requirements. Am. Compl. ¶ 4.

*Second*, Amazon adequately alleges that the OAG's attempts to regulate COVID-19 workplace safety are under the primary jurisdiction of OSHA and preempted by the Occupational Safety and Health Act. OSHA's recent regulatory activities leave no doubt on this score. Since this Court decided *Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359 (E.D.N.Y. 2020), President Biden issued an Executive Order directing OSHA to take additional actions regarding COVID-19. Exec. Order No. 13,999, 86 Fed. Reg. 7211 (Jan. 21, 2021). Accordingly, OSHA issued over 100 additional citations related to COVID-19. OSHA, *Inspections with COVID-19-related Citations*, https://tinyurl.com/kr42s6zc. It launched a National Emphasis Program designed "to ensure that employees in high-hazard industries are protected from . . . contracting [COVID-19]," including "General Warehousing and Storage" employees. Am. Compl. ¶ 202. And it sent an Emergency Temporary Standard on COVID-19 to the President for review—typically the final regulatory step before promulgation. *Id.* ¶ 201. COVID-19 workplace safety clearly is not an issue that OSHA has left to the states, nor an "occupational safety or health issue" for which no "[federal] standard is in effect." 29 U.S.C. § 667(a).[2]

---

[2] The OAG cannot escape this Court's primary jurisdiction holding by contending (incorrectly) that only the *Palmer* plaintiffs could have petitioned OSHA for action. *See* Ltr. 3 n.3. The OAG can also bring workplace-safety issues to OSHA's attention.

GIBSON DUNN

Respectfully submitted,

/s/ *Jason C. Schwartz*
Jason C. Schwartz (*Admitted pro hac vice*)
Lucas C. Townsend (*Admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com

Mylan L. Denerstein
Zainab N. Ahmad
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
mdenerstein@gibsondunn.com
zahmad@gibsondunn.com