**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

AMAZON.COM INC.,

             Plaintiff,

     v.

ATTORNEY GENERAL LETITIA
JAMES, in her official capacity as the
Attorney General of the State of New
York,

             Defendant.

No. 21-CV-767 (BMC)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I. THE COURT LACKS SUBJECT MATTER JURISDICTION ........................................... 4

II. YOUNGER ABSTENTION IS REQUIRED ................................................................... 5

III. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THIS
DECLARATORY JUDGMENT ACT REQUEST ................................................................ 11

IV. EVEN IF THE COURT REACHES THE MERITS, THE COMPLAINT FAILS TO STATE
A CLAIM FOR RELIEF ...................................................................................................... 15

    A. THE OAG'S NYLL § 200 CLAIM IS NOT PREEMPTED BY THE OSH ACT. .......................... 15

    B. OSHA DOES NOT HAVE PRIMARY JURISDICTION OVER THE OAG'S NYLL § 200 CLAIM. 16

    C. THE OAG'S NYLL §§ 215 AND 740 CLAIMS ARE NOT PREEMPTED BY THE NLRA. ......... 19

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allstate Ins. Co. v. Elzanaty*,
    916 F. Supp. 2d 273 (E.D.N.Y. 2013) ....................................................................4

*Anderson v. Chou*,
    No. 06-CV-3563 (BMC)(LB), 2006 WL 2620424 (E.D.N.Y. Sept. 13, 2006) ........6

*Anheuser-Busch, Inc. v. Abrams*,
    520 N.E.2d 535 (N.Y. 1988) ..................................................................................9

*Apotex Inc. v. Sanofi-Synthelabo*,
    386 F. Supp. 2d 549 (S.D.N.Y. 2005) ...................................................................12

*Arbitron, Inc. v. Cuomo*,
    No. 08 Civ. 8497 (DLC), 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008) ...........7, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................3

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................17

*Belknap, Inc. v. Hale*,
    463 U.S. 491 (1983) .............................................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................3

*Black Sea Inv., Ltd. v. United Heritage Corp.*,
    204 F.3d 647 (5th Cir. 2000) ...............................................................................14

*Bldg. Trades Employers' Educ. Ass'n v. McGowan*,
    311 F.3d 501 (2d Cir. 2002) .................................................................................20

*Bridges v. Kelly*,
    84 F.3d 470 (D.C. Cir. 1996) ..........................................................................10-11

*Cadle Co. v. Bankers Fed. Sav. FSB*,
    929 F. Supp. 636 (E.D.N.Y. 1996) ......................................................................13

*Carlisle v. Bennett*,
    197 N.E. 220 (N.Y. 1935) ......................................................................................9

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
    280 F.3d 874 (8th Cir. 2002) ........................................................14

*Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*,
    70 F.3d 1361 (1st Cir. 1995)..........................................................8

*Concerned Home Care Providers, Inc. v. Cuomo*,
    783 F.3d 77 (2d Cir. 2015)...........................................................25

*Cullen v. Fliegner*,
    18 F.3d 96 (2d Cir. 1994)...........................................................8-9

*Cuomo v. Dreamland Amusements, Inc.*,
    No. 08 Civ. 6321 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) ...................... 7-8, 11

*Diamond "D" Constr. Corp. v. McGowan*,
    282 F.3d 191 (2d Cir. 2002)..........................................................10

*Doe v. Conn. Dep't of Health Servs.*,
    75 F.3d 81 (2d Cir. 1996).............................................................7

*Domnister v. Exclusive Ambulette, Inc.*,
    607 F.3d 84 (2d Cir. 2010)........................................................21-22

*Dow Jones & Co., Inc. v. Harrods Ltd.*,
    346 F.3d 357 (2d Cir. 2003)..........................................................14

*Dow Jones & Co. v. Harrods, Ltd.*,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 347 (2d Cir. 2003) ...........12

*Eccles v. Peoples Bank*,
    333 U.S. 426 (1948)................................................................11

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006) ..................................................... 16, 18-19

*Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*,
    430 U.S. 290 (1977)..............................................................22, 25

*Fleet Bank, N.A. v. Burke*,
    160 F.3d 883 (2d Cir. 1998)........................................................4-5

*Gade v. Natural Solid Wastes Management Association*,
    505 U.S. 88 (1992)................................................................15

*Gasperino v. Larsen Ford, Inc.*,
    426 F.2d 1151 (2d Cir. 1970)........................................................18

iv

*Gianni Sport Ltd. v. Metallica*,
    No. 00 Civ. 0937 (MBM), 2000 WL 1773511 (S.D.N.Y. Dec. 4, 2000) ...............................12

*Gibson v. Berryhill*,
    411 U.S. 564 (1973)............................................................................................................7

*GOJO Indus., Inc. v. Innovative Biodefense, Inc.*,
    407 F. Supp. 3d 356 (S.D.N.Y. 2019)..............................................................................18

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)..................................................................................................3

*Hartman v. Moore*,
    547 U.S. 250 (2006)............................................................................................................9

*Hasemann v. Gerber Prod. Co.*,
    No. 15-CV-2995 (MKB), 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016)...........................18

*Healthcare Ass'n of New York State, Inc. v. Pataki*,
    471 F.3d 87 (2d Cir. 2006) ...................................................................................... 20-21, 23

*Hicks v. Miranda*,
    422 U.S. 332 (1975)............................................................................................................6

*Hindu Temple Soc'y of N. Am. v. Supreme Ct. of State of New York*,
    335 F. Supp. 2d 369 (E.D.N.Y. 2004) ...............................................................................7

*HSBC Bank USA v. N.Y. City Comm'n on Human Rights*,
    673 F. Supp. 2d 210 (S.D.N.Y. 2009)...............................................................................8

*In re Standard and Poor's*,
    23 F. Supp. 3d 378 (S.D.N.Y. 2014)...................................................................................6

*Johnson v. D.A. Off., Staten Island*,
    No. 18-CV-1205 (BMC), 2018 WL 1135475 (E.D.N.Y. Feb. 28, 2018)..............................8

*Kanciper v. Suffolk Cty. SPCA*,
    722 F.3d 88 (2d Cir. 2013)................................................................................................14

*Linn v. United Plant Guard Workers of Am., Loc. 114*,
    383 U.S. 53 (1966)............................................................................................................22

*MacPherson v. Town of Southampton*,
    No. 07-CV-3497 (DRH) (AKT), 2013 WL 6058202 (E.D.N.Y. Nov. 14, 2013)....................8

*McNally v. Port Authority*,
    414 F.3d 352 (2d Cir. 2005)..............................................................................................18

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)................................................................................15, 25

*Metro. Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985)................................................................................. 23-24

*National Comm'ns Ass'n, Inc. v. American Tel. & Tel. Co.*,
    46 F.3d 220 (2d Cir. 1995)..........................................................................18

*New Orleans Public Serv., Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989)..................................................................................6, 8

*New York v. Solvent Chem. Co.*,
    664 F.3d 22 (2d Cir. 2011)......................................................................... *passim*

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012)...........................................................................14

*Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*,
    477 U.S. 619 (1986)....................................................................................7

*Paige v. Henry J. Kaiser Co.*,
    826 F.2d 857 (9th Cir. 1987) ......................................................................25

*Palmer v. Amazon.com Inc.*,
    498 F. Supp. 3d 359 (E.D.N.Y. 2020) ....................................................... 9, 15-16

*Philip Morris, Inc. v. Blumenthal*,
    123 F.3d 103 (2d Cir. 1997).........................................................................6

*Pia v. URS Energy & Constr., Inc.*,
    227 F. Supp. 3d 999 (S.D. Iowa 2017) ....................................................... 24-25

*Pinckney v. Bd. of Educ.*,
    920 F. Supp. 393 (E.D.N.Y. 1996) ...............................................................7

*Queenside Hills Realty Co. v. Saxl*,
    328 U.S. 80 (1946)....................................................................................24

*Ross v. Curtis-Palmer Hydro-Elec. Co.*,
    81 N.Y.2d 494 (N.Y. 1993) .........................................................................18

*Sampson v. Medisys Health Network Inc.*,
    No. 10-CV-1342 SJF, 2011 WL 579155 (E.D.N.Y. Feb. 8, 2011) ........................21

*Samuels v. Mackell*,
    401 U.S. 66 (1971)....................................................................................13

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
    359 U.S. 236 (1959)..................................................................................... *passim*

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*,
    436 U.S. 180 (1978)..................................................................................... *passim*

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)............................................................................................ 4-5

*Simmonds v. Deutsch*,
    No. 88-CV-3881, 1989 WL 32835 (E.D.N.Y. Mar. 27, 1989)................................7

*Spargo v. N.Y. State Comm'n on Judicial Conduct*,
    351 F.3d 65 (2d Cir. 2003)...................................................................................6

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)...............................................................................................6

*Steel Inst. of New York v. City of New York*,
    716 F.3d 31 (2d Cir. 2013).................................................................................25

*Storms v. U.S.*,
    No. 13-CV-811 (MKB), 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015)...............13

*Sun Refining & Marketing Co. v. Brennan*,
    921 F.2d 635 (6th Cir. 1990) ..............................................................................7

*Tassy v. Brunswick Hosp. Ctr., Inc.*,
    296 F.3d 65 (2d Cir. 2002).................................................................................16

*Townsend v. New York*,
    No. 14-CV-6079 (CBA) (LB), 2015 WL 4692604 (E.D.N.Y. Aug. 6, 2015).......11

*Tsirelman v. Daines*,
    794 F.3d 310 (2d Cir. 2015)................................................................................3

*U.S. ex rel. Best v. Barbarotta*,
    No. 12-CV-6218 NGG, 2013 WL 66031 (E.D.N.Y. Jan. 4, 2013) ........................7

*United States v. Western Pac. R.R. Co.*,
    352 U.S. 59 (1956).............................................................................................16

*Vill. of Westfield v. Welch's*,
    170 F.3d 116 (2d Cir. 1999)...............................................................................14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)............................................................................. 2, 11, 13-14

*XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*,
    414 F. Supp. 3d 605 (S.D.N.Y. 2019) ................................................................13

*Youell v. Exxon Corp.*,
    74 F.3d 373 (2d Cir. 1996) ..................................................................... 14-15

*Younger v. Harris*,
    401 U.S. 37 (1971) .................................................................... *passim*

**FEDERAL STATUTES**

29 U.S.C.
    § 151 ...............................................................................................1, 23
    § 651 ......................................................................................................1
    § 653(b)(4) ...................................................................................15, 17
    § 667(a) .......................................................................................15, 17
    § 667(b)–(c) ......................................................................................15

Declaratory Judgment Act, 28 U.S.C.
    § 2201(a) ............................................................................................11

**STATE STATUTES**

N.Y. Exec. Law
    § 63(12) ....................................................................................1, 7, 16

N.Y. Labor Law
    § 200 .................................................................................... *passim*
    § 215 .................................................................................... *passim*
    § 740 .................................................................................... *passim*

**FEDERAL REGULATIONS**

29 C.F.R. 1910, Subpart U .......................................................... 16-17, 19

**RULES**

Federal Rule of Civil Procedure
    Rule 12(b)(1) ......................................................................................1, 3
    Rule 12(b)(6) ......................................................................................1, 3

Defendant Attorney General Letitia James ("OAG") respectfully submits this memorandum of law in support of her motion to dismiss the amended complaint or, in the alternative, stay the action filed by Plaintiff Amazon.com, Inc. ("Amazon"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Following an 11-month investigation, the OAG commenced a state-court action against Amazon under the OAG's express authority pursuant to New York Executive Law § 63(12), asserting violations of New York Labor Law ("NYLL") § 200, which requires employers to provide reasonable and adequate protection to the lives, health, and safety of their employees, and NYLL §§ 215 and 740, which are New York's anti-retaliation and whistleblower protection laws, respectively. *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. Feb. 16, 2021) (the "State Action"). Seeking to prevent the OAG's imminent state-court proceeding, Amazon filed this anticipatory federal action one business day earlier. ECF No. 1 ("Compl."). In its now-amended complaint, ECF No. 27 ("Am. Compl."), Amazon contends that the OAG does not have authority under state law to bring NYLL claims. Amazon also asserts that the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 *et seq*., preempts the OAG's efforts to regulate workplace safety and that the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–69, preempts the OAG's claims that Amazon retaliated against individuals for complaining about health and safety violations.

Amazon's complaint should be dismissed. As an initial matter, there is no subject matter jurisdiction because Amazon requests anticipatory declaratory and injunctive relief against a state-law proceeding while disputing the meaning and application of state law. Even assuming federal jurisdiction, *Younger* abstention is mandatory because the OAG's action is pending in

state court; a safe and retaliation-free workplace is an important state interest; and the State Action affords an adequate opportunity for judicial review of Amazon's preemption defenses. The "facially conclusive" and "bad faith" exceptions to *Younger* do not apply. The *Wilton* abstention doctrine also calls for this Court to abstain from exercising jurisdiction.

Even if the Court reaches the merits, the complaint fails to state a claim. Apart from healthcare settings, the Occupational Safety and Health Administration ("OSHA") has left COVID-19 workplace safety issues to the states, so there is no OSH Act preemption of the OAG's § 200 claim. And the primary-jurisdiction doctrine is also inapplicable. NLRA preemption under *Garmon* does not apply to the OAG's §§ 215 and 740 claims because the State Action is different from the one that would be presented to the NLRB, and even if that were not true, the local interest exception applies. This case should be dismissed.

## BACKGROUND

Throughout the historic COVID-19 pandemic, Amazon has repeatedly and persistently failed to comply with its obligation under New York law to institute reasonable and adequate measures to protect its workers from the spread of the virus in its New York City facilities. Amazon's flagrant disregard for health and safety requirements has threatened serious illness and grave harm to the thousands of workers and poses a continued substantial and specific danger to the public health. When Amazon employees objected to its inadequate practices and made complaints to management, government agencies, and the media, Amazon took swift retaliatory action. In late March 2020, Amazon fired employee Christian Smalls, and in early April 2020, Amazon issued a final written warning to employee Derrick Palmer. Amazon's actions against these visible critics for complaints of non-compliance with legally required health protection standards sent a chilling message to other Amazon employees.

Amazon brought this action on February 12, 2021, in an attempt to stop the OAG's imminent State Action, filed one business day later on February 16, 2021. In the State Action, the OAG requests an order that enjoins Amazon from engaging in unlawful practices which fail to reasonably and adequately protect the lives, health, and safety of its employees; requires Amazon to take affirmative steps to train and notify its employees and undergo monitoring; awards damages for employees against whom there was wrongful retaliation; and requires disgorgement of excess profits that Amazon realized by failure to reasonably protect employees. *See* Am. Compl. at 29–30, NYSCEF No. 15, *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. May 6, 2021). On February 18, 2021, Amazon removed the State Action to the Southern District of New York. *New York v. Amazon.com Inc.*, No. 21 Civ. 1417 (JSR) (S.D.N.Y. Feb. 18, 2021). On April 9, 2021, after briefing and argument, Judge Jed S. Rakoff remanded the State Action to New York State Supreme Court. *See* ECF No. 23-1.

The OAG filed a motion to dismiss Amazon's original complaint on May 3. ECF No. 25. In lieu of opposing the motion, Amazon amended its complaint on May 17. ECF No. 27.

## STANDARD OF REVIEW

A court reviewing a Rule 12(b)(6) motion to dismiss must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). But a court need not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To defeat the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The standard for reviewing a 12(b)(1) motion to dismiss is

essentially identical to the 12(b)(6) standard, except that" the plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013).

## ARGUMENT

### I.     The Court Lacks Subject Matter Jurisdiction

As an initial matter, the Court lacks subject matter jurisdiction over this case. *Fleet Bank, N.A. v. Burke*, 160 F.3d 883 (2d Cir. 1998), held that federal subject matter jurisdiction is lacking when, as here, a plaintiff seeking anticipatory declaratory and injunctive relief—including on federal preemption grounds—disputes the meaning and application of state law. In *Fleet*, the Connecticut Commissioner of Banking had opined that state law prohibited a bank from charging non-customers to use its ATMs. Fleet sued in federal court, seeking injunctive and declaratory relief, based on two propositions: that the commissioner was wrong about state law, and that if he was right the National Bank Act preempted the law. *Id.* at 885. The Second Circuit ruled that the federal court lacked subject-matter jurisdiction since "opening the federal courts to preemption claims by plaintiffs raising disputes about the meaning and application of state law risks a major and unwarranted incursion on the authority of state courts." *Id.* at 892. *Fleet* distinguished *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983), on which Amazon relies, Am. Compl. ¶ 23, because the plaintiffs in *Shaw* had "acknowledged that the state law regulated them in the manner that the state officials were asserting." *Fleet*, 160 F.3d at 889. Like *Fleet*, and unlike *Shaw*, the present case implicates a state-law dispute, which is fatal to federal subject-matter jurisdiction. Amazon alleges that the OAG lacks authority under <u>state</u> law—regardless of federal preemption—to pursue any of its claims against Amazon.

Specifically, as to workplace safety claims under NYLL § 200, Amazon alleges that New York law restricts the OAG to enforcing findings made by the New York Commissioner of

4

Labor after a workplace inspection, Am. Compl. ¶¶ 219, 229, and precludes giving effect to either federal or state agencies' safety guidance, *id.* ¶¶ 207–08. As to retaliation claims under NYLL §§ 215 and 740, Amazon alleges that "[e[ven if the New York Labor Law were not preempted," Mr. Smalls and Mr. Palmer are pursuing private actions and "even under state law, the OAG has no power to file employment claims on behalf of individuals" *Id.* ¶¶ 15, 189. While Amazon is wrong on all counts, *see infra* IV., what matters for jurisdictional purposes is that if Amazon were right that the OAG is exceeding its authority under state law, no preemption issue would exist. Amazon cannot ask for the federal preemption questions to be decided first by implicitly asking the Court to assume that the NYLL applies to it. Under *Fleet*, only state courts have jurisdiction to decide that threshold question.

Amazon has framed its amended complaint to focus on preemption rather than on the OAG's authority to pursue its state law claims. But a plaintiff's desire to win on federal-law grounds does not create jurisdiction. The relevant question under *Fleet* is whether the meaning of the allegedly preempted statutes is disputed—regardless of how the plaintiff has ordered its arguments. The *Fleet* court noted that "it is possible that the Supreme Court" may one day find "that the *Shaw* footnote authorizes federal court jurisdiction for suits to enjoin state officers from enforcing allegedly preempted statutes not only when the meaning of those statutes is undisputed but also when the meaning is disputed." 160 F.3d at 893. But until the Supreme Court so instructs, *Fleet* is not limited to cases "primarily" attempting to have a federal court construe a state regulatory statute. *Fleet* applies whenever a plaintiff seeks to enjoin state officers from enforcing allegedly preempted statutes while also disputing the meaning of those statutes. Therefore, federal jurisdiction does not lie here.

## II. *Younger* Abstention Is Required

Even if the Court determines that subject matter jurisdiction exists, *Younger* abstention is

required.  Based on affirming state courts' competence "and acknowledging the dignity of states as co-equal sovereigns," the *Younger* doctrine applies when a three-part test is met.  *Younger v. Harris*, 401 U.S. 37 (1971).  The doctrine makes federal-court abstention "mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."  *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (citations omitted); *see also Anderson v. Chou*, No. 06-CV-3563 (BMC)(LB), 2006 WL 2620424, at *2 (E.D.N.Y. Sept. 13, 2006).  Each of the three factors exists here.  Plus, the State Action bears "all three hallmarks" of state proceedings as to which the Supreme Court has found *Younger* abstention appropriate: it "(1) was 'initiate[d]' by 'a state actor' (namely, the state attorney general acting in [her] official capacity) to (2) 'sanction the federal plaintiff for some wrongful act'…; and (3) 'involved' a lengthy 'investigation[]… culminating in the filing of a formal complaint.'"  *In re Standard and Poor's*, 23 F. Supp. 3d 378, 409 (S.D.N.Y. 2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013)).

With respect to the first *Younger* factor, the OAG's State Action—the proceeding Amazon seeks to enjoin in this federal action—is pending in state court.[1]

The second *Younger* factor is satisfied because "the state action concerns the central sovereign functions of state government such that 'exercise of the federal judicial power would disregard the comity between the States and the National Government.'"  *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997) (citations omitted); *see also New Orleans Public*

---

[1] "In light of [Judge Rakoff's] decision to remand" the State Action, there can be "no dispute that there is—now—a pending state proceeding."  *Standard & Poor's*, 23 F. Supp. 3d at 409.  While Amazon filed this case one business day before the State Action, no proceedings of substance took place, so *Younger* "should apply in full force."  *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).  Moreover, Amazon amended its complaint three months after the State Action's filing.

*Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989) ("*NOPSI*") ("[P]re-emption-based challenges merit a similar focus."). The Southern District held in an analogous case that "New York has an important interest in assuring safe, sanitary, and non-discriminatory working conditions for workers in the State" and its "interest in enforcing its own laws and investigating their violation cannot seriously be disputed." *Cuomo v. Dreamland Amusements, Inc.*, No. 08 Civ. 6321 (JGK), 2008 WL 4369270, at *10 (S.D.N.Y. Sept. 22, 2008) (abstaining under *Younger*); *see also Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 640–41 (6th Cir. 1990) (recognizing Ohio's "substantial, legitimate interest in regulating the safety of the workplace").[2] And the New York Executive Law § 63(12) grants "the Attorney General sole authority to sue" here—further evincing the important state interests at stake. *Arbitron, Inc. v. Cuomo*, No. 08 Civ. 8497 (DLC), 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008), at *5.

The third *Younger* factor is also met because Amazon not only can, but already has, asserted its federal constitutional defense in the State Action. *See, e.g.*, Defs. Mem. of Law in Supp. of Mot. to Dismiss, NYSCEF No. 27 at 11–15, 19–22, *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. Feb. 16, 2021) ("Amazon MTD"). It is Amazon's burden to establish that New York courts are unable or unwilling to address its preemption arguments. *See, e.g.*, *Hindu Temple Soc'y of N. Am. v. Supreme Ct. of State of New York*, 335 F. Supp. 2d

---

[2] The Supreme Court, Second Circuit, and this District have found in *Younger* cases that central sovereign functions of state government include many matters comparable to protecting workplace health and safety and anti-retaliation rights. *See, e.g.*, *Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (outlawing sex discrimination); *Gibson v. Berryhill*, 411 U.S. 564, 576–77 (1973) (regulating practice of medicine); *Doe v. Conn. Dep't of Health Servs.*, 75 F.3d 81 (2d Cir. 1996) (same); *U.S. ex rel. Best v. Barbarotta*, No. 12-CV-6218 NGG, 2013 WL 66031, at *2–3 (E.D.N.Y. Jan. 4, 2013) (application of New York's "own mental health laws"); *Pinckney v. Bd. of Educ.*, 920 F. Supp. 393, 397 (E.D.N.Y. 1996) ("managing education"); *Simmonds v. Deutsch*, No. 88-CV-3881, 1989 WL 32835, at *9 (E.D.N.Y. Mar. 27, 1989) (regulation of day care center "which involves equally weighty interests in the protection of public health, safety and welfare").

369, 374–75 (E.D.N.Y. 2004). Amazon's complaint does not contain any such allegation—

reason enough to find this factor to be satisfied. *See MacPherson v. Town of Southampton*, No.

07-CV-3497 (DRH) (AKT), 2013 WL 6058202, at *19 (E.D.N.Y. Nov. 14, 2013) (finding

*Younger* abstention applied where complaint did not allege state-court proceeding would not

afford opportunity to raise constitutional claims). Nor would any such allegation be credible.

"State courts routinely hear cases in which federal preemption is asserted as a defense," and there

is "no reason that the state court cannot hear and decide all of [Amazon's] preemption claims."

*Dreamland*, 2008 WL 4369270, at *11. For all these reasons, comity requires abstention here.

Citing *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*, 70 F.3d 1361 (1st Cir.

1995), Amazon asserts that *Younger* should not govern when "a federal preemption claim is

'readily apparent.'" Am. Compl. ¶¶ 243, 253; ECF No. 28 at 2. Even assuming the Second

Circuit would adopt this "readily apparent" or "facially conclusive" exception to *Younger*, it

"applies only where there exists no unresolved questions of fact or law in deciding the

preemption question." *HSBC Bank USA v. N.Y. City Comm'n on Human Rights*, 673 F. Supp. 2d

210, 215–16 (S.D.N.Y. 2009) (citations omitted). Indeed, even a substantial "pre-emption-based

request for equitable relief" does not "compel the exercise of federal jurisdiction." *NOPSI*, 491

U.S. at 364–65. Section IV of this brief, *see infra*, shows that Amazon's preemption claims are

wrong and certainly not so "facially conclusive" as to create an exception to *Younger* abstention.

Amazon also argues for "an exception to any applicable abstention doctrines" by alleging

that the OAG's investigation and the State Action "were 'conducted in bad faith.'" Am. Compl.

¶¶ 244, 254 (citing *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994)). The narrow "bad

faith" exception to *Younger* has hardly ever been applied, *see Johnson v. D.A. Off., Staten Island*,

No. 18-CV-1205 (BMC), 2018 WL 1135475, at *2 (E.D.N.Y. Feb. 28, 2018), and the OAG is

presumed to act in good faith, *see, e.g.*, *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 537

(N.Y. 1988); *Hartman v. Moore*, 547 U.S. 250, 263 (2006).[3]

Amazon's amended complaint is also facially insufficient to support a "bad faith"

exception to *Younger*. Setting aside conclusory claims which need not be credited even on a

motion to dismiss, the factual allegations that supposedly support a "bad faith" exception fall

into five basic categories. Amazon alleges that the OAG expressed views prior to investigating,

did not reverse them despite what Amazon deems the weight of evidence, cooperated with

counsel for the plaintiffs in the *Palmer* case, and applied to Amazon stricter standards than the

OAG advocated when defending New York State in a different, unrelated suit. Finally, an

unknown person leaked to NPR a letter the OAG sent Amazon early in the investigation. *See*

Am. Compl. ¶¶ 9–10, 12–14, 16, 124, 130–36, 164–81, 185–88, 217–20, 226–34.

None of these allegations, alone or together, supports the conclusory claim that OAG

conduct was "designed to damage Amazon," *id.* ¶ 217, or that the OAG acted in "bad faith" as

*Cullen* used the term. *Cullen* applied a "bad faith" *Younger* exception based on findings that a

school district had brought charges against a teacher in retaliation for exercising his "First

Amendment right to protest the school board elections," the board and he "had a 'past history of

personal conflict' . . . , and their corresponding desire 'to do something about' him rose to the

'level of animus.'" *See* 18 F.3d at 104. Here, Amazon does not allege—nor could it—that the

OAG has retaliated against it for exercising constitutional rights. Nor has it alleged that the

OAG has any bias against the company or its founder, or that the OAG's investigation was

---

[3] During the OAG's 11-month investigation, Amazon never moved to quash the OAG's
subpoenas on grounds of "bad faith" or otherwise as New York law allowed it to do. *See, e.g.*,
*Carlisle v. Bennett*, 197 N.E. 220, 223 (N.Y. 1935). On the contrary, Amazon's complaint
trumpets its alleged cooperation and "efforts to ensure that the OAG had a complete and accurate
view of the facts." Am. Compl. ¶¶ 11–12.

motivated by anything other than a desire to protect workplace safety during an unprecedented pandemic.[4] Amazon's criticisms of the OAG do not constitute "bad faith" for *Younger* purposes.

Amazon's allegations do not even approach the conduct alleged in *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002), which found that "bad faith" did not exist. *Diamond "D"* held that a proceeding "legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.* at 199. The Second Circuit reached this conclusion even though the district court had found that $1.2 million was wrongfully ordered withheld from a small business, based on a "fundamentally flawed" investigation, reliance on reports known to be unreliable, failure to interview all but a few employees, refusal to consider facts, and irrational assumptions. *See* 142 F.Supp.2d 377, 403–404 (W.D.N.Y. 2001), *vacated*, 282 F.3d 191. Despite those findings, the court held that "bedrock principles of federalism, embodied in the Younger abstention doctrine," 282 F.3d at 193, required federal abstention.

Amazon has also cited *Bridges v. Kelly*, 84 F.3d 470, 477 (D.C. Cir. 1996), for the proposition that abstention is inappropriate "[b]ecause all the state court can do is dismiss the OAG's lawsuit." *See* ECF No. 30, at 2. In the present case, Amazon seeks a declaration that the OAG "lacks authority to regulate (1) workplace safety responses to COVID-19 and (2) claims of retaliation against workers who protest," and injunctive relief preventing the OAG from purporting to exercise such authority. *See* Am. Compl., "Prayer for Relief." In the State Action, Amazon requests dismissal with prejudice based on the same arguments as those in the federal complaint. *See* Amazon MTD at 11–15, 19–22. Dismissal with prejudice of the State Action

---

[4] Indeed, Amazon acknowledges that "the OAG expressed 'concern[]' that Amazon failed to take adequate steps to protect its associates[.]" Am. Compl. ¶ 167.

would give Amazon the full relief it seeks, including constituting *res judicata* were the OAG inexplicably to re-launch an investigation. This is completely unlike *Bridges* where the District of Columbia courts could not grant the federal plaintiff's request for $14 million in damages.

Because *Younger* applies, the Court must dismiss this action. *See, e.g.*, *Arbitron*, 2008 WL 4735227, at *5 (granting OAG's motion to dismiss under *Younger*); *see also Townsend v. New York*, No. 14-CV-6079 (CBA) (LB), 2015 WL 4692604, at *8 (E.D.N.Y. Aug. 6, 2015) (dismissing claims for prospective relief under *Younger*); *Dreamland*, 2008 WL 4369270, at *12 (granting OAG's motion to dismiss under *Younger*).

### III. The Court Should Decline to Exercise Jurisdiction over this Declaratory Judgment Act Request

Even if *Younger* abstention were not mandatory, this case would not merit the Court's discretionary declaratory judgment jurisdiction under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). In *Wilton*, the Supreme Court held that federal courts can and should use the "unique and substantial discretion" granted them by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to avoid piecemeal litigation and prevent forum shopping. *Id.* at 286. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948). Another federal court has already concluded that there is no basis to remove the OAG's state-law claims to federal court, *see* ECF No. 23-1 (S.D.N.Y. order), and Amazon's challenges to the State Action can and are being litigated there. To avoid piecemeal litigation and prevent Amazon from forum shopping, the Court should decline to exercise federal declaratory judgment jurisdiction even assuming that it could do so as a discretionary matter.

In *New York v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011), the Second Circuit set forth five factors for district courts to consider in deciding whether to entertain a request

pursuant to the Declaratory Judgment Act: "[1] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . [2] whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . [3] whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; [4] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy." Here, the five *Solvent* factors favor abstaining from exercising jurisdiction.

As to the first factor, the declaratory judgment Amazon seeks will not serve a useful purpose: the legal issues can be settled in the State Action. *See Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 552 (S.D.N.Y. 2005) (dismissing action that could "muddy" a pending, more comprehensive case), *aff'd,* 175 F. App'x 349 (Fed. Cir. 2006); *Gianni Sport Ltd. v. Metallica*, No. 00 Civ. 0937 (MBM), 2000 WL 1773511, at *5 (S.D.N.Y. Dec. 4, 2000) (dismissing anticipatory action where pending case "will provide [plaintiff] the opportunity to resolve the issues raised").

As to the second factor, the State Action is fully capable of resolving not only the preemption question, but also the threshold state-law issues which Amazon's complaint raises, thereby maximizing judicial economy.

With respect to the third factor, Amazon raced to file its action knowing full well that the OAG was planning to file an enforcement action soon in state court. *See, e.g.*, Am. Compl. ¶ 13. Courts in the Second Circuit have held that a party's "race to the courthouse" weighs against the exercise of declaratory judgment jurisdiction. *See, e.g.*, *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 347 (2d Cir. 2003); *see also Gianni Sport*, 2000 WL 1773511, at *5.

The fourth factor counsels against exercising jurisdiction as well. With the State Action underway, the federal lawsuit increases friction between sovereign legal systems. Furthermore, "actions which have as their underlying basis rights that are essentially governed by state law present particularly appropriate cases for application of the abstention doctrine." *Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996).

As to the fifth factor, Amazon should present—and indeed, has presented—its defenses in the State Action and needs no relief here. "[W]hen the traditional remedy provides the parties with the procedural safeguards required by the law to insure the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment." *Storms v. U.S.*, No. 13-CV-811 (MKB), 2015 WL 1196592, at *24 (E.D.N.Y. Mar. 16, 2015) (citations omitted). "[R]esolution of the underlying claims in a parallel proceeding is a 'more effective remedy' than a declaratory judgment." *XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605, 611 (S.D.N.Y. 2019). And the State Action is the appropriate forum to address Amazon's state-law defenses (such as its disagreement over the meaning of the NYLL), possibly rendering it unnecessary even to address federal-preemption defenses.

Without, so far, addressing the *Solvent* factors at all, Amazon has suggested two reasons *Wilton* abstention should not apply. *See* ECF No. 28 at 2; ECF No. 30 at 2. The first is that Amazon is seeking more than declaratory relief—namely, an injunction. But since "declaratory relief alone has virtually the same practical impact as a formal injunction" the two types of relief should be treated similarly "in the appropriate exercise of the court's discretion." *Samuels v. Mackell*, 401 U.S. 66, 72–73 (1971). And while Amazon has cited Fifth and Eighth Circuit decisions finding that *Wilton* generally does not apply if a plaintiff makes a good-faith request

for injunctive as well as declaratory relief, ECF No. 30 at 2,[5] the Second Circuit has a different view.

The Second Circuit has found *Wilton* inapplicable when a plaintiff sought <u>damages</u> in addition to declaratory relief.[6] But Amazon does not seek damages. In *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003), which post-dates the out-of-Circuit decisions Amazon relies on, the Second Circuit implicitly rejected Amazon's view that a request for injunctive relief is enough to make *Wilton* inapplicable. Based on the factors adopted in *Solvent*, *Dow Jones* affirmed a district court's decision to abstain in a case where the plaintiff had sought an injunction as well as declaratory relief. *Id.* at 359–60. This Court should weigh the factors used in *Dow Jones* and *Solvent* and abstain from exercising jurisdiction pursuant to *Wilton*.

Amazon also argues that *Wilton* should not apply on the basis that federal-law questions should be resolved by federal courts. But neither of the decisions Amazon has cited for this proposition, *Niagara*, 673 F.3d 84, and *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996), suggests a rule that precludes abstention in this case. *Niagara* did not simply state that federal-law questions should be resolved by federal courts; it called for weighing, and did weigh, the *Solvent* factors. *See* 673 F.3d at 105. That *Youell* did not discuss the *Solvent* factors is not surprising since *Youell* antedated *Solvent*. Furthermore, the issue in *Youell* ("whether maritime losses caused by an insured's recklessness are fortuitous… 'a novel issue of federal admiralty law'") was quite different from, and much more remote from state-court adjudication than, a question of whether or not a yet-to-be-construed state workplace safety statute should be deemed

___

[5] *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002).

[6] *See Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 (2d Cir. 2012); *Kanciper v. Suffolk Cty. SPCA*, 722 F.3d 88, 93 (2d Cir. 2013).

preempted.  *See* 74 F.3d at 376.  If it reaches the issue, the Court should weigh the *Solvent* factors, abstain from exercising its discretion, and dismiss the complaint.

## IV.    Even if the Court Reaches the Merits, the Complaint Fails to State a Claim for Relief

### A.  The OAG's NYLL § 200 Claim Is Not Preempted by the OSH Act.

Amazon claims that the OSH Act preempts any attempt by the OAG to exercise regulatory authority over a private employer's health-and-safety response to COVID-19.  Am. Compl. ¶¶ 237, 247.  But as this Court recognized in *Palmer v. Amazon.com, Inc.*, the OSH Act does not preempt the OAG's Labor Law § 200 claim because it "does not conflict with an existing federal standard and the OSH Act's savings clause expressly excludes statutory tort law claims from preemption."  498 F. Supp. 3d 359, 374 (E.D.N.Y. 2020).

The presumption against preemption is especially strong when States "exercise[] their police powers to protect the health and safety of their citizens."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).  The OSH Act expressly provides that "[n]othing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title."  29 U.S.C. § 667(a).  Here, the federal government has not promulgated standards with respect to the COVID-related workplace safety issues involved in this case.[7]  The OSH Act also preserves "common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."  29 U.S.C. § 653(b)(4).  That savings clause encompasses

---

[7] Amazon's focus on the submission of a "state plan," Am. Compl. ¶ 194, is a red herring, because such plans are needed only to impose a State standard on an issue "with respect to which Federal standard has been promulgated under section 655." 29 U.S.C. § 667(b)–(c); *see also Gade v. Natural Solid Wastes Management Association*, 505 U.S. 88, 102 (1992) (plurality op.).

state-law workplace protections such as NYLL § 200. Therefore, the OAG's enforcement of NYLL § 200 does not conflict with existing federal standards because, except with respect to healthcare facilities, OSHA has promulgated no standards concerning COVID-19.[8]

### B. OSHA Does Not Have Primary Jurisdiction over the OAG's NYLL § 200 Claim.

Amazon also asserts that OSHA has primary jurisdiction over the OAG's NYLL § 200 claim. Am. Compl. ¶¶ 238, 248. Whether to invoke the primary-jurisdiction doctrine is analyzed "on a case-by-case basis." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006) (citation omitted). It is a prudential doctrine that "applies where a claim is originally cognizable in the courts," but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). In this case, it does not apply.[9] There is no basis to subordinate New York law in favor of OSHA jurisdiction merely because OSHA can resolve related workplace health and safety issues. *See Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002) ("[W]hether an agency is statutorily authorized to resolve a particular issue is not itself determinative of whether to apply the doctrine.").

---

[8] On June 10, 2021, OSHA issued an emergency COVID-19 workplace standard for healthcare settings only. See 29 C.F.R. 1910, Subpart U ("June 10 Healthcare ETS").

[9] The OAG respectfully disagrees with this Court's holding in *Palmer v. Amazon*, 498 F. Supp. 3d at 368–70, that the primary-jurisdiction doctrine applied to the private plaintiffs' NYLL § 200 claim, and certainly, with extending that holding to preclude the OAG from enforcing the NYLL in state court. The OAG's State Action is different from the *Palmer* plaintiffs' private lawsuit. For example, the OAG is acting pursuant to its unique authority and capacity under Executive Law § 63(12)—on behalf of the public—to bring actions in state court to enforce New York law. The relief sought in the State Action also differs from what the *Palmer* plaintiffs sought (which involved "detailed aspects" of employment practices "requiring both technical and policy expertise" not possessed by courts, 498 F.Supp.3d at 370), and instead requests general injunctive relief including that Amazon undergo monitoring. Further, any analysis of primary-jurisdiction doctrine should be for the court in the State Action to adjudicate in the first instance.

The text of the OSH Act makes clear that Congress did not intend to vest OSHA with primary jurisdiction over workplace safety generally, let alone jurisdiction to resolve workplace safety disputes that arise under state laws. *See* 29 U.S.C. §§ 653(b)(4), 667(a); *see also supra* IV.A. Before the issuance of the June 10 Healthcare ETS, OSHA expressly cited the various "non-OSHA public safety requirements enacted by federal, state, and local officials in response to the pandemic" as a reason not to enact federal standards for COVID-19. *See* OSHA Resp. to Emergency Pet. at 16, *In re Am. Fed'n of Labor & Congress of Indus. Orgs.*, No. 20-1158 (D.C. Cir. May 29, 2020). OSHA explained, "the pandemic has had dramatically different impacts on different parts of the country," and "State and local requirements and guidance on COVID-19 are thus critical to employers in determining how to best protect workers." *See id.* at 32.

In the absence of any federal standard that could preempt the OAG's COVID-related NYLL § 200 claim, and in light of OSHA's disclaimer of any need for uniformity, there is no basis to rely on the primary-jurisdiction doctrine and refer this matter to OSHA in the first instance. "[E]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015). Last week's ETS makes clear that OSHA's COVID-19 regulation is limited to the healthcare industry. It has declined to exercise its authority with respect to workplaces like Amazon. The primary jurisdiction doctrine has no application under these circumstances.

The traditional factors the Second Circuit considers in determining whether to apply primary jurisdiction counsel the same result. The Second Circuit has looked to:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a

17

substantial danger of inconsistent rulings; and (4) whether a prior application
to the agency has been made.

*Ellis*, 443 F.3d at 82–83 (internal citation omitted).  Additionally, the court may consider

"potential costs resulting from complications and delay in the administrative proceedings."  *Id.*

None of the *Ellis* factors support applying the primary-jurisdiction doctrine here.  *First*,

the claims here do not present issues that are so arcane or complex that they fall beyond the

competence of judges and instead require OSHA's "technical or policy expertise."  *National*

*Comm'ns Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995).  To the

contrary, NYLL claims are well within the conventional experience of judges, who routinely

adjudicate tort claims under NYLL § 200.[10]

*Second*, as previously noted, COVID-19 related workplace health and safety issues do not

fall particularly within OSHA's discretion as OSHA has "already taken a clear position,"

declining to issue COVID-19 guidance to non-healthcare work settings, and instead choosing to

rely on state and local measures.  *GOJO Indus., Inc. v. Innovative Biodefense, Inc.*, 407 F. Supp.

3d 356, 362–63 (S.D.N.Y. 2019) (finding all factors weighed against stay, including second

factor because nothing raised an unresolved question of agency discretion).

*Third*, there is no substantial danger of businesses being subject to inconsistent rulings.

Where an agency is not simultaneously contemplating the same issue as one presented in a court

case, "there is no risk of inconsistent rulings between the [agency] and the Court."  *Hasemann v.*

*Gerber Prod. Co.*, No. 15-CV-2995 (MKB), 2016 WL 5477595, at *7 (E.D.N.Y. Sept. 28, 2016)

---

[10] *See, e.g.*, *Gasperino v. Larsen Ford, Inc.*, 426 F.2d 1151, 1153 (2d Cir. 1970) (wrongful death
action under NYLL § 200); *McNally v. Port Authority*, 414 F.3d 352, 380 (2d Cir. 2005)
(applying NYLL § 200 substantive standards to claims arising from World Trade Center
attacks); *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505–06 (N.Y. 1993)
(workplace injury claim under NYLL § 200).

(citing *Ellis*, 443 F.3d at 87–88). Here, Amazon has not alleged that OSHA is investigating

Amazon's response to the COVID-19 pandemic. OSHA has declined to issue an applicable

COVID-19 standard and has instead deferred to the states. Therefore, there is no risk of

inconsistent rulings, which weighs against applying the primary-jurisdiction doctrine.

*Fourth*, Amazon has not identified any complaints filed with OSHA concerning working

conditions at JFK8 and DBK1. *See Ellis*, 443 F.3d at 89 (disfavoring primary jurisdiction when

"prior application to the agency is absent").

*Lastly*, there is no advantage in applying the doctrine here. OSHA has made clear its

view that state and local regulation is preferable to a uniform national standard. And as a

practical matter, OSHA's limited resources were directed towards health and emergency care

workers during the COVID-19 pandemic. *See* Br. for National Employment Law Project, *et al.*,

as *Amici Curiae* Supporting Plaintiffs-Appellants at 19–23, *Palmer v. Amazon.com, Inc.*, (No.

20-3989) (2d Cir. Jan. 19, 2021). The June 10 Healthcare ETS confirms OSHA's focus on

healthcare settings. Under these circumstances, a deferral of this case to OSHA would be

inappropriate and cause unnecessary delay. The State Action should be allowed to proceed.

### C. The OAG's NYLL §§ 215 and 740 Claims Are Not Preempted by the NLRA.

Relying on *Garmon*, Amazon also claims that the NLRA preempts the OAG from

pursuing its NYLL §§ 215 and 740 claims. *See* Am. Compl. ¶¶ 239, 249; *San Diego Bldg.*

*Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959). But this claim

has no merit. As the Supreme Court has explained, *Garmon* "does not . . . sweep[] away state-

court jurisdiction over conduct traditionally subject to state regulation without careful

consideration of the relative impact of such a jurisdictional bar on the various interests affected."

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978).

Rather, preemption "must depend upon the nature of the particular interests being asserted and

the effect upon the administration of national labor policies of permitting the state court to proceed." *Id*. at 189 (internal quotation marks omitted).

To that end, state regulation yields to the jurisdiction of the National Labor Relations Board ("NLRB") only "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8." *Garmon*, 359 U.S. at 244. Generally, "[s]ections 7 and 8 of the Act regulate 'concerted activities' and 'unfair labor practices,' respectively." *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002).

In *Pataki*, the Second Circuit adopted a three-part test to establish *Garmon* preemption. *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006). At the first step, a court must identify "whether any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation." *Id.* Second, the court "must decide whether the controversy is identical to one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB." *Id*. Absent identical proceedings, Amazon would need to make "a strong showing that the State has interfered with the protections offered by section 7 or 8 of the NLRA." *Id.* Finally, even if these thresholds are met, a state that has "interests so deeply rooted in local feeling and responsibility" at stake will overcome *Garmon* preemption "in the absence of compelling congressional direction." *Sears*, 436 U.S. at 195 (quoting *Garmon*, 359 U.S. at 244). Here, because the proceedings would not be identical or interfere with the NLRA, and, even if they did, the "local interest" exception applies, *Garmon* does not preempt the OAG's §§ 215 and 740 claims.

a.   **The OAG's claims do not meet the threshold for *Garmon* Preemption.**

Amazon's NLRA preemption defense does not survive the second step of the *Pataki*

analysis. "In order to fall under Section 8 of the NLRA, plaintiffs must be alleging that they were retaliated against on the basis of having engaged in 'concerted protected activity.'" *Domnister v. Exclusive Ambulette, Inc*., 607 F.3d 84, 89 (2d Cir. 2010). "Concerted protected activity, as defined by [s]ection 7, requires 'that an employee's action be taken for purposes of collective bargaining or other mutual aid or protection.'" *Sampson v. Medisys Health Network Inc*., No. 10-CV-1342 SJF, 2011 WL 579155, at *8 (E.D.N.Y. Feb. 8, 2011) (quoting *Domnister*, 607 F.3d at 89). In other words, any proceeding before the NLRB would focus on whether Mr. Smalls and Mr. Palmer were engaged in concerted activities and whether those activities were "taken for purposes of collective bargaining or other mutual aid or protection." *Id.*

By contrast, whether Mr. Smalls or Mr. Palmer acted in a "concerted" manner for "collective bargaining" or "mutual aid," *id.*, is "irrelevant to the state claim[s]," *Sears*, 436 U.S. at 198. Rather, NYLL § 215 is concerned with whether an employer has discharged or penalized an "employee [who] has made a complaint to his or her employer [or regulators] . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the Labor Law. Similarly, NYLL § 740 prohibits "retaliatory personnel action against an employee" who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." These claims are thus "discrete," *Belknap, Inc. v. Hale*, 463 U.S. 491, 512 (1983), and certainly not "identical" to Section 7 or 8 claims, *Pataki*, 471 F.3d at 96.

In an NLRB proceeding, the Board would not look at whether the employer engaged in conduct that an employee believed violated the NYLL, nor whether the employer violated a regulation endangering the public health. At bottom, an NLRB proceeding would focus on the

right to leverage workers' collective power while the OAG's case focuses on protecting each employee's ability to complain about NYLL violations that harm workers' or the public's health during a global pandemic. Because "the state court need not consider, much less resolve" the same legal questions that would arise before the NLRB, the claims would not be identical or risk interference and, therefore, fail to meet the second threshold for *Garmon* preemption. *Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 304 (1977). And the fact that claims "arose in the same factual setting" does not alter that conclusion. *See Sears*, 436 U.S. at 196–97 ("Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same."); *Domnister*, 607 F.3d at 89–90 (rejecting a preemption defense to state- and city-law national origin discrimination claims that did not "address (or even mention) any collective-bargaining agreement" or claim "to have acted in concert in any fashion").

That the OAG seeks remedies which the NLRB cannot provide confirms that the controversies are distinct and that, as a result, the OAG's claims are not subject to *Garmon* preemption. Specifically, the emotional distress damages that the OAG seeks for Mr. Smalls and Mr. Palmer are unavailable in a proceeding before the NLRB. *See Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 64 (1966) ("The Board's lack of concern with the 'personal' injury . . . , together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption."). The Supreme Court has rejected *Garmon* preemption when neither the legal claims nor the remedies sought are identical. *Farmer*, 430 U.S. at 304 (rejecting *Garmon* "in light of the discrete concerns of the federal scheme and the state tort law" as reflected, in part, in the fact that the plaintiff's "severe emotional distress and physical injury would play no role in the Board's disposition of the case, and the Board could not award [the

plaintiff] damages for pain, suffering, or medical expenses").

At the same time, Amazon cannot make the requisite "strong showing" demonstrating "that the State has interfered with the protections offered by section 7 or 8 of the NLRA." *Pataki*, 471 F.3d at 96. "The NLRA's declared purpose is to remedy '[t]he inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association.'" *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 753 (1985) (quoting 29 U.S.C. § 151) (holding that the NLRA did not preempt state law requiring employers to provide certain mental health benefits in insurance plans). The Act "notes the desirability of 'restoring equality of bargaining power,' among other ways, 'by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.'" *Id.* at 753–54 (quoting 29 U.S.C. § 151).

This Court's adjudication of the OAG's claims will not threaten these goals. Indeed, Congress did not "intend[] to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization." *Id.* at 756. "To the contrary," the Supreme Court has found "that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety." *Id.* As the OAG seeks to enforce state law to regulate health and safety here, this case creates no risk of undermining the policies of the NLRA. *Garmon* does not apply.

### b.     The strong local interest exception to *Garmon* applies.

Even if *Garmon* extends to the instant case, "the Court has upheld state-court jurisdiction over conduct that touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.'"  *Sears*, 436 U.S. at 195 (quoting *Garmon*, 359 U.S. at 244). Whether the "local interest" exception applies depends on two factors: First, courts consider whether there exists a "significant state interest in protecting the citizen from the challenged conduct."  Second, "although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed," courts consider whether the exercise of state jurisdiction over the state-law claim entails "little risk of interference with the regulatory jurisdiction of the Labor Board."  *Id.* at 196.

As explained above, there is "little risk" of interference with the NLRB's jurisdiction. *See supra* IV.C.a.  As such, the only remaining question is whether the OAG's claims arose out of "a significant state interest."  *Sears*, 436 U.S. at 196.  But there can be no doubt as to the significance of the state's interest where, as here, the state seeks to protect essential workers from retaliation for raising concerns about health and safety during a historic pandemic. "Protection of the safety of persons is one of the traditional uses of the police power of the States," and, as such, "is one of the least limitable of governmental powers."  *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 82–83 (1946); *Metro. Life Ins.*, 471 U.S. at 756 ("The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." (internal quotation marks omitted)); *Pia v. URS Energy & Constr., Inc.*, 227 F. Supp. 3d 999, 1003 (S.D. Iowa 2017) ("[A] state's interest in protecting employees from retaliatory termination for raising workplace-safety

concerns" is "legitimate and substantial.").

To that end, "[t]here is a strong presumption against preemption when states and localities 'exercise[] their police powers to protect the health and safety of their citizens.'" *Steel Inst. of New York v. City of New York*, 716 F.3d 31, 36 (2d Cir. 2013) (quoting *Medtronic*, 518 U.S. at 475) (discussing preemption in the OSHA context); *Paige v. Henry J. Kaiser Co*., 826 F.2d 857, 865 (9th Cir. 1987) ("As it is uniquely within the states' police powers to legislate for the health and safety of their citizens, and such regulation does not interfere with the NLRA's goals, federal law does not preempt such statutes."). That presumption is at its strongest when the State is enforcing state laws protecting the health and safety of workers performing services deemed essential by the State during a once-in-a-century pandemic.

Indeed, in light of "the legitimate and substantial interest of the State in protecting its citizens," the Supreme Court has rejected "a rigid application of the Garmon doctrine" even when "allegations of tortious conduct might form the basis for unfair labor practice charges before the Board" and a proceeding was, in fact, brought before the Board. *Farmer*, 430 U.S. 290 at 302–04 & n.11. And a federal court has specifically held that a state was not preempted from, as here, enforcing anti-retaliation laws protecting workers who raised safety concerns. *Pia*, 227 F. Supp. 3d at 1003. As "[t]he NLRA does not contain an express preemption provision," *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 84 (2d Cir. 2015), this Court should not infer preemption in this context. The "local interest" exception applies.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action or, in the alternative, stay this action in deference to the OAG's State Action.

Dated: June 18, 2021

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Fiona J. Kaye*

KAREN CACACE
   *Chief of Labor Bureau*
JULIE R. ULMET
   *Deputy Chief of Labor Bureau*

FIONA J. KAYE
ROYA AGHANORI
ELIZABETH KOO
SETH KUPFERBERG
DANIELA L. NOGUEIRA
JEREMY PFETSCH
   *Assistant Attorneys General*

Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8036
Fiona.Kaye@ag.ny.gov

*Attorneys for the State of New York*