UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMAZON.COM, INC.,

      Plaintiff,

v.

ATTORNEY GENERAL LETITIA JAMES, in
her official capacity as the Attorney General of
the State of New York,

      Defendant.

Case No. 1:21-cv-767 (BMC)

**Oral Argument Requested**

---

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Jason C. Schwartz (*pro hac vice*)
Lucas C. Townsend (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.:  (202) 955-8500
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com

Mylan L. Denerstein
Zainab N. Ahmad
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.:  (212) 351-4000
mdenerstein@gibsondunn.com
zahmad@gibsondunn.com

*Attorneys for Plaintiff Amazon.com, Inc.*

June 18, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND .................................................................................................... 4

LEGAL STANDARD ............................................................................................. 5

ARGUMENT ......................................................................................................... 6

    I.     The OAG's Attempt To Regulate Claims Of Retaliation Against Employees Who Protested Working Conditions Is Preempted By The NLRA And Falls Within The Exclusive Jurisdiction Of The NLRB. ................ 6

         A.     The NLRA Protects And Prohibits The Activity The OAG Purports To Regulate. ............................................................... 7

         B.     The Controversy The OAG Seeks To Regulate Is Identical To One That Could Have Been Brought (And Was Brought) Before The NLRB. ...................................................................................... 9

         C.     The Local Interest Exception To NLRA Preemption Is Inapplicable. ......................................................................... 11

    II.    The OSH Act Preempts The OAG From Regulating Amazon's Occupational Safety Measures In Response To COVID-19. .............................. 13

    III.   The OAG's Attempt To Regulate Amazon's Health-And-Safety Response To COVID-19 Impermissibly Intrudes On OSHA's Primary Jurisdiction. ..................................................................................... 18

    IV.   The Court Should Grant A Declaratory Judgment. ............................................ 22

    V.    Amazon Is Entitled To Injunctive Relief. ......................................................... 23

         A.     Amazon Has Been Irreparably Harmed By The OAG's Unlawful Exercise Of Regulatory Authority And Remedies At Law Are Inadequate. ..................................................................... 23

         B.     The Public Interest And Balance Of Hardships Favor Injunctive Relief. .......................................................................... 25

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AFL-CIO,*
2020 WL 3125324 (D.C. Cir. June 11, 2020).........................................................20

*In re AFL-CIO,*
No. 20-1158 (D.C. Cir. May 29, 2020)................................................................14

*AFT v. OSHA,*
No. 20-73203 (9th Cir. Dec. 31, 2020).............................................................20

*Am. Transit Ins. Co. v. Bilyk,*
2021 WL 216673 (E.D.N.Y. Jan. 21, 2021) .........................................................5

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge,*
403 U.S. 274 (1971)..........................................................................................6

*Andrewsikas v. Supreme Indus., Inc.,*
2021 WL 1090786 (D. Conn. Mar. 22, 2021) ...............................................9, 13

*Arcadian Health Plan, Inc. v. Korfman,*
2010 WL 5173624 (D. Me. Dec. 14, 2010) ........................................................23

*Atlas Roofing Co. v. OSHRC,*
430 U.S. 442 (1977)........................................................................................17

*Batista v. Union of Needleworkers,*
2000 WL 1760923 (S.D.N.Y. Nov. 30, 2000).......................................................9

*Bergen Reg'l Med. Ctr., L.P. v. Health Prof'ls,*
2005 WL 3216549 (D.N.J. Nov. 29, 2005) .........................................................11

*Bud Antle, Inc. v. Barbosa,*
45 F.3d 1261 (9th Cir. 1994) ..............................................................................9

*Carley v. Gentry,*
2021 WL 2276458 (D. Nev. June 3, 2021).........................................................21

*Case v. Ivey,*
2021 WL 2210589 (M.D. Ala. June 1, 2021) ......................................................21

*Casumpang v. Hawaiian Com. & Sugar Co.,*
712 F. App'x 709 (9th Cir. 2018) .....................................................................12

*Chamber of Commerce of U.S. v. Edmondson,*
594 F.3d 742 (10th Cir. 2010) .....................................................................23, 25

ii

Page(s)

*Chamber of Commerce of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ............................................................................6

*Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*,
70 F.3d 1361 (1st Cir. 1995) ........................................................................10, 11

*Citineighbors Coal. of Historic Carnegie Hill v. N.Y.C. Landmarks Pres.*
*Comm'n*,
2 N.Y.3d 727 (2004) ......................................................................................21

*Consol. Freightways v. NLRB*,
892 F.2d 1052 (D.C. Cir. 1989) ......................................................................11

*Deming Hosp. Corp. v. NLRB*,
665 F.3d 196 (D.C. Cir. 2011) ........................................................................11

*Domnister v. Exclusive Ambulette, Inc.*,
2008 WL 2157115 (E.D.N.Y. May 21, 2008) ..................................................7

*Donovan v. OSHRC*,
713 F.2d 918 (2d Cir. 1983) ............................................................................18

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ..........................................................................................5

*Ellis v. Tribune Television Co.*,
443 F.3d 71 (2d Cir. 2006) ..................................................................18, 19, 21

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*,
32 F. Supp. 2d 118 (S.D.N.Y. 1997) ..............................................................22

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) ............................................................................13, 14, 15, 18

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
846 F.2d 848 (2d Cir. 1988) ............................................................................18

*Gustavia Home, LLC v. Rutty*,
2018 WL 2198742 (E.D.N.Y. May 14, 2018) ..................................................5

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*,
471 F.3d 87 (2d Cir. 2006) ................................................................................6

*Kolentus v. Avco Corp.*,
798 F.2d 949 (7th Cir. 1986) ..........................................................................11

*Kroeger v. L3 Techs., Inc.*,
   2018 WL 1357363 (C.D. Cal. Mar. 15, 2018).......................................................7

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016)...................................................25

*Linn v. United Plant Guard Workers of Am., Local 114*,
   383 U.S. 53 (1966)................................................11

*Local 926, Int'l Union of Operating Eng'rs v. Jones*,
   460 U.S. 669 (1983)................................................12

*Mayes v. Kaiser Found. Hosps.*,
   917 F. Supp. 2d 1074 (E.D. Cal. 2013).......................................9

*Mo. Ins. Coal. v. Huff*,
   2012 WL 6681688 (E.D. Mo. Dec. 21, 2012).................................24

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)................................................23

*N.Y. State Elec. & Gas Corp. v. Sec'y of Labor*,
   88 F.3d 98 (2d Cir. 1996).......................................14

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
   673 F.3d 84 (2d Cir. 2012)................................22, 23

*Nken v. Holder*,
   556 U.S. 418 (2009)................................................25

*NLRB v. City Disposal Sys. Inc.*,
   465 U.S. 822 (1984)................................................8

*NLRB v. Lloyd A. Fry Roofing Co.*,
   651 F.2d 442 (6th Cir. 1981)...................................8

*Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*,
   90 F.3d 797 (3d Cir. 1996)................................11, 12, 13

*Palmer v. Amazon.com, Inc.*,
   498 F. Supp. 3d 359 (E.D.N.Y. 2020)..................4, 14, 15, 18, 19, 21

*Platt v. Jack Cooper Transp., Co.*,
   959 F.2d 91 (8th Cir. 1992)...............................9, 11, 12

*Reuters Ltd. v. United Press Int'l*,
   903 F.2d 904 (2d Cir. 1990)................................24

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*,
459 F. Supp. 3d 1228 (W.D. Mo. 2020) ..............................................20

*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1959).................................................................3, 9, 11, 13

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*,
436 U.S. 180 (1978).................................................................................12

*St. Paul Park Refining Co. v. NLRB*,
929 F.3d 610 (8th Cir. 2019) ..................................................................8

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
60 F.3d 27 (2d Cir. 1995).........................................................................24

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966).................................................................................22

*Valley View Health Care, Inc. v. Chapman*,
992 F. Supp. 2d 1016 (E.D. Cal. 2014)...................................................22

*Weisshaus v. Cuomo*,
2021 WL 103481 (E.D.N.Y. Jan. 11, 2021) ...........................................23

*Wis. Dep't of Indus., Labor & Hum. Rel. v. Gould Inc.*,
475 U.S. 282 (1986)..............................................................................6, 10

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275 (2d Cir. 2012)....................................................................24

**Statutes**

28 U.S.C. § 2201...........................................................................................22

29 U.S.C. § 157.........................................................................................7, 10

29 U.S.C. § 158................................................................................................7

29 U.S.C. § 653.............................................................................................17

29 U.S.C. § 654........................................................................................15, 17

29 U.S.C. § 667.............................................................................................17

NYLL § 27..............................................................................................13, 14

Page(s)

**Rules**

Fed. R. Civ. P. 56 ................................................................................................5

**Regulations**

29 C.F.R. § 1904 ...............................................................................................14

29 C.F.R. § 1904.4 ........................................................................................15, 16

29 C.F.R. § 1904.39 ..........................................................................................16

29 C.F.R. § 1910.132 .................................................................................14, 15, 16

29 C.F.R. § 1910.133 ..........................................................................................14

29 C.F.R. § 1910.134 .......................................................................................14, 16

29 C.F.R. § 1910.138 ..........................................................................................14

29 C.F.R. § 1910.141 .......................................................................................14, 15

# PRELIMINARY STATEMENT

The unprecedented COVID-19 pandemic caused essential businesses such as Amazon.com, Inc. ("Amazon") to reinvent their operations virtually overnight, and from the start, Amazon has taken extraordinary, industry-leading measures grounded in science, above and beyond government guidance and requirements, to protect its associates from COVID-19. Amazon has not only relied on its team of top health and safety professionals but also engaged with over 20 leading global medical and health experts, including pandemic response doctors, epidemiologists, and industrial hygienists, to identify and implement best practices. It implemented over 150 process changes to promote social distancing, hygiene, and the safety of its associates, expanded its paid and unpaid leave programs in light of the pandemic, and even built its own COVID-19 testing capacity and laboratories to test its workforce for asymptomatic cases of COVID-19. Most recently, Amazon began sponsoring on-site vaccination clinics for associates and their family members and providing incentive payments to associates who received vaccinations off-site. All told, Amazon has invested more than $11.5 billion on COVID-related initiatives to keep associates safe and deliver essential products to customers. These and other industry-leading measures taken by Amazon have made a positive difference. In late March 2020, the New York City Sheriff's Office—charged by the Mayor with enforcing COVID-19 safety requirements—conducted an unannounced inspection of Amazon's JFK8 fulfilment center on Staten Island and concluded that "[t]he facility appeared to go above and beyond the current compliance requirements." In October 2020, the COVID-19 infection rate among Amazon front-line employees in New York was *half* that of New York's general population.

All of this was not enough for the Office of the New York Attorney General ("OAG"), which, for over a year, has unlawfully attempted to subject Amazon's JFK8 fulfillment center in

1

Staten Island and DBK1 delivery station in Queens to state oversight of activities governed exclusively by federal law and enforced by federal regulators. After Amazon disciplined one employee, Derek Palmer, for repeatedly violating Amazon's social distancing rules, and terminated the employment of another employee, Christian Smalls, for willfully violating a quarantine order following a potential COVID-19 exposure, the OAG began and conducted an 11-month long investigation into supposed workplace safety violations at those facilities and supposed "retaliation" against Mr. Palmer and Mr. Smalls for their actions in organizing protests of working conditions. The allegations the OAG has made against Amazon were, and are, entirely baseless—Amazon has developed and implemented industry-leading COVID-19 workplace-safety measures that far exceed what is required by law, and go well beyond measures that the OAG has deemed "comprehensive" when defending, in other litigation, the New York State Courts' reasonable, but more limited, workplace safety response to COVID-19. Moreover, Amazon was fully justified in taking disciplinary actions against Mr. Smalls and Mr. Palmer for violating workplace safety rules and endangering the health and safety of other employees. But more fundamentally, the OAG lacks the legal authority it purports to wield against Amazon.

Congress has entrusted the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") with regulating occupational health and safety—including COVID-19 workplace safety practices—and the National Labor Relations Board ("NLRB") with regulating labor practices, including the rights of employees to engage in concerted activity. The OAG's investigation of and lawsuit against Amazon improperly seek to undermine and supplant these federal laws and regulations, and to substitute the OAG's judgment for that of Congress, OSHA, and the NLRB. The OAG's exercise of regulatory authority is unlawful and should be enjoined.

*First*, the National Labor Relations Act ("NLRA") preempts the OAG from exercising

2

regulatory authority over claims of retaliation against Mr. Smalls and Mr. Palmer for their protests of working conditions at JFK8. The OAG's retaliation claims arise out of events *already* being litigated before the NLRB—and if the NLRB even "arguably" has jurisdiction over a matter, that jurisdiction is "exclusive" and "state jurisdiction . . . must yield." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–46 (1959). In fact, hours after Amazon terminated Mr. Smalls's employment, the New York Attorney General publicly "call[ed] on the National Labor Relations Board" to investigate the incident, ¶ 26; Ex. 19, thus acknowledging the NLRB's jurisdiction.[1]

*Second*, the federal Occupational Safety and Health Act ("OSH Act") preempts the OAG's use of New York Labor Law ("NYLL") § 200 to regulate COVID-19 workplace safety. In 1975, New York expressly disclaimed authority to promulgate occupational safety and health standards in areas under OSHA's regulation. OSHA's standards for, *inter alia*, personal protective equipment ("PPE") and sanitation, as well as employers' obligations under the OSH Act's general duty clause, govern the operations of private employers, such as Amazon, in response to COVID-19. Because OSHA unquestionably can regulate COVID-19 workplace safety under its existing standards—and has been doing so since the start of the pandemic—it is clear that New York cannot enforce state workplace safety standards for the same COVID-19 issues against private employers.

*Third*, even if not preempted by the OSH Act, the OAG's attempt to exercise regulatory authority over Amazon's health-and-safety response to COVID-19 goes to the heart of OSHA's expertise and discretion and thus impermissibly seeks to regulate an area over which OSHA has primary jurisdiction. In *Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359 (E.D.N.Y. 2020), this Court held that a NYLL § 200 claim concerning COVID-19 workplace safety practices at JFK8

---

[1] References to "¶ __" are to Plaintiff's Rule 56.1 Statement, submitted herewith. All Exhibits refer to those attached to the Declaration of Jason C. Schwartz, dated June 18, 2021.

was within OSHA's primary jurisdiction.  *Id.* at 368–71.  That holding applies equally here.

Accordingly, Amazon respectfully requests summary judgment granting a declaration that the OAG's use of state law to regulate Amazon's COVID-19 workplace safety response and claims of retaliation is preempted by federal law and subject to the primary jurisdiction of federal regulators, and an injunction against the OAG's ongoing disregard of federal law.

## BACKGROUND

This case arises from the OAG's unlawful attempts to subject Amazon to state oversight of activities governed by federal law and assigned to the jurisdiction of federal regulators.  The material facts are not in dispute.  Amazon is an essential business.  At its JFK8 fulfillment center in Staten Island and its DBK1 delivery station in Queens, Amazon provides much-needed supplies and jobs in its communities.  ¶ 2; Ex. 1; Ex. 2 ¶¶ 43–46.  In March 2020, two associates at JFK8, Derrick Palmer and Christian Smalls, organized and participated in protests of Amazon's COVID-19 workplace safety-measures at JFK8.  ¶¶ 20–21; Ex. 16 ¶ 84; Ex 17 at 661:4–662:15.  Amazon subsequently terminated Mr. Smalls's employment and issued a final written warning to Mr. Palmer.[2]  ¶¶ 22–23; Ex. 2 ¶ 89; Ex. 16 ¶ 84.  Although the parties dispute Amazon's motivations for these disciplinary actions, that dispute is immaterial to the issues of federal law in this motion.

Within hours of Mr. Smalls's termination, the OAG publicly announced that Amazon's actions were "immoral and inhumane" and opened an investigation that dragged on for 11 months. ¶¶ 1, 26; Ex. 1; Ex. 2 ¶ 43; Ex. 19.  Amazon provided the OAG with information about Amazon's efforts to protect its workers against COVID-19, as well as documentation of its reasons for taking disciplinary action against Mr. Smalls and Mr. Palmer.  ¶¶ 3–4; Ex. 3.  Amazon cooperated with

---

[2]  Amazon issued Mr. Palmer a final written warning "for violating JFK8's social distancing policy," and terminated Mr. Smalls's employment for "violating" an order to "quarantine" due to a potential COVID-19 exposure and "Amazon's social distancing requirements."  Ex. 2 ¶¶ 89, 94 ("OAG Am. Compl.").

the OAG's investigation, but made clear that the investigation was intruding on areas governed exclusively by federal law and within the jurisdiction of federal regulators.  ¶ 9; Ex. 6 at 15.

As the OAG continued to press its investigation and threatened to sue Amazon if it did not agree to a list of demands, Amazon commenced this action, on February 12, 2021, seeking injunctive and declaratory relief from the OAG's unlawful regulation of Amazon's COVID-19 response.  On February 16, 2021, the OAG filed its own lawsuit against Amazon in the New York Supreme Court.  ¶ 14; Ex. 10.  The OAG alleges that Amazon failed to provide its employees with "reasonable and adequate protection" against COVID-19 in violation of NYLL § 200, and retaliated against Mr. Palmer and Mr. Smalls in violation of NYLL §§ 215 and 740.  ¶¶ 30, 45; Ex. 2 ¶¶ 3, 120–55.

## LEGAL STANDARD

A court shall "grant summary judgment when the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Gustavia Home, LLC v. Rutty*, 2018 WL 2198742, at *3 (E.D.N.Y. May 14, 2018) (quoting Fed. R. Civ. P. 56(a)).  The decision to grant a declaratory judgment lies within the discretion of a district court, which "must consider whether the judgment would clarify the issues involved and finalize the controversy so as to offer relief from uncertainty."  *Am. Transit Ins. Co. v. Bilyk*, 2021 WL 216673, at *8 (E.D.N.Y. Jan. 21, 2021).  To obtain a permanent injunction, a plaintiff must show (1) that he has been irreparably injured; (2) that remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that the public interest weighs in favor of injunctive relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**ARGUMENT**

**I.    The OAG's Attempt To Regulate Claims Of Retaliation Against Employees Who Protested Working Conditions Is Preempted By The NLRA And Falls Within The Exclusive Jurisdiction Of The NLRB.**

The NLRA divests the OAG of jurisdiction over claims of retaliation against Mr. Smalls and Mr. Palmer for protesting working conditions at JFK8.  It is "settled" that "States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wis. Dep't of Indus., Labor & Hum. Rel. v. Gould Inc.*, 475 U.S. 282, 286 (1986).  So powerful is this preemption doctrine, known as *Garmon* preemption, that it "prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Id.*  The doctrine is "designed to prevent conflict *in its broadest sense* with the complex and interrelated federal scheme of law, remedy, and administration." *Id.* (emphasis added); *see Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1337 (D.C. Cir. 1996) (noting the NLRA's "broad field of pre-emption").  Where the NLRB even "arguably" has jurisdiction over a matter, that jurisdiction is "exclusive," and States are divested of jurisdiction. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 276, 292 (1971).

The Second Circuit has articulated a three-step inquiry to identify the "many different concerns and situations" that *Garmon* covers.  *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 95 (2d Cir. 2006).  Courts consider whether: (1) "any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation," (2) "the controversy is identical to one that the aggrieved party could bring . . . before the NLRB," and (3) "the regulated conduct touches interests deeply rooted in local feeling and responsibility." *Id.* at 96 (cleaned up).  All three steps establish NLRA preemption here.

6

**A. The NLRA Protects And Prohibits The Activity The OAG Purports To Regulate.**

The activity that the OAG seeks to regulate is protected and prohibited by the NLRA. Section 7 of the NLRA protects employees who "engage in . . . concerted activities for the purpose of . . . mutual aid or protection," 29 U.S.C. § 157, and Section 8 prohibits employers from retaliating against employees who engage in such conduct, *id.* § 158(a)(1). As a result, a state-law claim for retaliation against an employee for engaging in activity which, at least arguably, qualifies as protected "concerted activity" under the NLRA cannot stand. *See, e.g.*, *Kroeger v. L3 Techs., Inc.*, 2018 WL 1357363, at *3 (C.D. Cal. Mar. 15, 2018) (NLRA preempts state-law claims of "retaliat[ion] . . . for engaging in NLRA-protected activities"); *Domnister v. Exclusive Ambulette, Inc.*, 2008 WL 2157115, at *2–3 (E.D.N.Y. May 21, 2008) (similar).

The activity that the OAG attempts to regulate is alleged retaliation against employees for protests and whistleblowing. Specifically, the OAG alleges that Amazon disciplined Mr. Palmer and terminated Mr. Smalls for engaging in the following protected activity: (1) Mr. Smalls and Mr. Palmer, "along with 8 to 15 other associates, approached JFK8 managers" and "communicated their concerns" regarding Amazon's cleaning and contact tracing procedures; (2) Mr. Smalls "reiterated" complaints on behalf of associates in a "smaller meeting" with managers; (3) Mr. Smalls and Mr. Palmer "contacted the CDC" and "notified Amazon" of their call campaign; and (4) on March 30, Mr. Smalls and Mr. Palmer "participated in a protest outside JFK8" with other associates "to call further attention to their health and safety concerns." ¶ 31; Ex. 2 ¶¶ 81–83, 88. The OAG contends that Amazon's disciplinary actions against Mr. Palmer and Mr. Smalls constitute retaliation in violation of NYLL §§ 215 and 740. ¶ 30; Ex. 2 ¶¶ 120–55.

Although the Court need only conclude that the OAG's allegations of retaliation "arguably" fall within the scope of the NLRA to grant Amazon relief, the facts indicate that the

activity the OAG purports to regulate is plainly protected and prohibited by the NLRA. The OAG's allegations make clear that Mr. Smalls and Mr. Palmer necessarily "joined together" with their fellow associates for "the purpose of . . . mutual aid or protection," *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 830 (1984)—the hallmarks of NLRA-protected "concerted activity." Courts have long held that complaints regarding workplace safety qualify as "concerted activity," and retaliation for engaging in such concerted activity is an unfair labor practice under the NLRA. *See, e.g.*, *St. Paul Park Refining Co. v. NLRB*, 929 F.3d 610, 616 (8th Cir. 2019); *NLRB v. Lloyd A. Fry Roofing Co.*, 651 F.2d 442, 445 (6th Cir. 1981). Indeed, the Attorney General herself issued a public statement "calling on the National Labor Relations Board" to investigate Amazon's termination of Mr. Smalls's employment, ¶¶ 24–26; Exs. 18–19, thereby recognizing the NLRB's jurisdiction over the incident.

The NLRB also has made abundantly clear that the NLRA prohibits retaliation against employees who engage in concerted activity, such as protests, regarding their employer's COVID-19 workplace safety practices. For example, the NLRB's General Counsel issued a memorandum describing its investigation of an employer's actions "after a group of employees protested" an "alleged failure to provide [PPE], such as gloves, masks and hand sanitizer, and to enforce social distancing guidelines." ¶ 32; Ex. 20. The NLRB directed its Regional Office to "issue [a] complaint absent settlement alleging that the Employer violated Section 8(a)(1) of the [NLRA] by unlawfully discharging the employee who led protected concerted efforts to secure PPE and to enforce social distancing." ¶ 33; Ex. 20. The NLRB's exercise of jurisdiction in materially indistinguishable circumstances shows that it has jurisdiction over the claims concerning Mr. Palmer and Mr. Smalls; at a minimum, these claims are "arguably" covered.

Because "it is clear or may fairly be assumed that the activities which [the OAG] purports

to regulate are protected by [the NLRA], or constitute an unfair labor practice under [the NLRA], due regard for the federal enactment requires that state jurisdiction must yield." *Garmon*, 359 U.S. at 244; *see also, e.g.*, *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1273–76 (9th Cir. 1994) (concluding that the NLRA "ousts the [state labor board] of jurisdiction" where "the [board] is seeking to regulate activity which is at least arguably protected or prohibited by the NLRA").[3]

### B. The Controversy The OAG Seeks To Regulate Is Identical To One That Could Have Been Brought (And Was Brought) Before The NLRB.

The OAG alleges that Amazon took disciplinary action against Mr. Palmer and Mr. Smalls because of their complaints about workplace safety—complaints that qualify as concerted activity. *Andrewsikas*, 2021 WL 1090786, at *5. This alleged controversy is identical to a retaliatory discharge claim that could have been—and in fact was—brought before the NLRB. *See Platt v. Jack Cooper Transp., Co.*, 959 F.2d 91, 94–96 (8th Cir. 1992).

The NLRB's General Counsel is litigating an identical claim that Amazon retaliated against Gerald Bryson, one of the other associates who participated in the same protests at JFK8 as Mr. Smalls and Mr. Palmer in March 2020. ¶ 35; Exs. 22–23. The General Counsel alleges that Mr. Bryson "engaged in protected concerted activity," on March 25, 2020, "during [Amazon's] morning managers meeting, . . . by advocating, with a group of coworkers, for greater COVID-19 protections and by raising concerns about potential COVID-19 exposure." ¶ 36; Ex. 23 ¶ 5(a). The General Counsel also alleges that, on March 30, 2020, Mr. Bryson "engaged in protected concerted activity by protesting with coworkers [Amazon's] failure to provide greater COVID-19 safety protections to employees." ¶ 37; Ex. 23 ¶ 5(b). There is no dispute that these are the *same*

---

[3] *See also, e.g.*, *Andrewsikas v. Supreme Indus., Inc.*, 2021 WL 1090786, at *4 (D. Conn. Mar. 22, 2021) (NLRA preempts state-law retaliation claims because plaintiff "engaged in 'concerted activity'" when he made "complaints about workplace safety"); *Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1085 (E.D. Cal. 2013) (similar); *Batista v. Union of Needleworkers*, 2000 WL 1760923, at *4 (S.D.N.Y. Nov. 30, 2000) (NLRB has "exclusive jurisdiction" over state-law claims that employee was "terminated . . . in retaliation" for attempt to organize).

protests attended by Mr. Palmer and Mr. Smalls. After Mr. Bryson served a subpoena requesting documents concerning Mr. Smalls and Mr. Palmer, the Administrative Law Judge found that information about both men is relevant because they allegedly "concertedly engaged in the same protected activity" as Mr. Bryson. ¶¶ 38–39; Ex. 24 ¶ 11(c)–(d); Ex. 25. Mr. Smalls and Mr. Palmer also featured prominently in the hearing of this claim: the NLRB's General Counsel argued that Mr. Smalls and Mr. Palmer were "the leaders of the employee protests for safe working conditions," which it argued was "protected concerted activity." ¶ 40; Ex. 26 at 403:20–404:1. Mr. Palmer testified that he engaged in protests with Mr. Smalls and other associates "to improve working conditions," and that he viewed these protests as "concerted activity" that were "protected" by NLRB rules. ¶ 41; Ex. 17 at 723:5–11, 724:1–5. These statements mirror Mr. Smalls's own statement in his complaint against Amazon that he was engaging in "concerted activity." ¶ 42; Ex. 27 ¶¶ 16–17, 47.[4]

The controversy is no less identical merely because the elements of a cause of action under the NLRA differ from those of a cause of action under the NYLL. "It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern" in the *Garmon* preemption analysis. *Gould*, 475 U.S. at 289. Thus, the OAG cannot evade federal law by simply "repackag[ing]" worker-retaliation claims as whistleblower or retaliation claims under state law. *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*, 70 F.3d 1361, 1370 (1st Cir. 1995). Similarly, the OAG cannot evade preemption merely by seeking different *remedies*. *Garmon* preemption prevents states from "providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the [NLRA]." *Gould*, 475 U.S.

---

[4] Mr. Smalls expressly alleges that he engaged in "concerted activity"—a term of art under the NLRA, *see* 29 U.S.C. § 157—by "lead[ing] a demonstration of workers" on March 30, 2020, and that Amazon terminated his employment because he "organiz[ed] workers" to protest Amazon's COVID-19 policies. ¶ 42; Ex. 27 ¶¶ 16–17, 47.

at 286. "[S]ince remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict." *Garmon*, 359 U.S. at 247. Thus, the OAG's retaliation claims seeking emotional-distress damages are preempted irrespective of any "difference between available state and NLRB remedies." *Kolentus v. Avco Corp.*, 798 F.2d 949, 962 (7th Cir. 1986).[5]

Accordingly, the OAG's claims concerning Mr. Smalls and Mr. Palmer are preempted, because "there is the potential risk" of the "incorrect[] appl[ication of] the substantive rules governing labor controversies laid out by Congress in the NLRA." *Chalk*, 70 F.3d at 1367, 1370 (state agency "act[ed] beyond its jurisdiction[] . . . by entertaining" discrimination claim where the "conduct at issue is at least arguably prohibited by" the NLRA). "It is precisely this potential for incompatible or conflicting adjudications that Congress sought to avoid by leaving these determinations in the first instance to the NLRB." *Id.* at 1367. Because Mr. Smalls and Mr. Palmer "could have brought to the NLRB the specific claim[s] asserted" by the OAG, "that [they] w[ere] [disciplined] for making job safety complaints," the NLRA divests the OAG of jurisdiction over those claims. *Platt*, 959 F.2d at 94–96.

## C. The Local Interest Exception To NLRA Preemption Is Inapplicable.

Contrary to the OAG's assertions, there is no basis to apply the "narrow" local interest exception to *Garmon* preemption here. *Bergen Reg'l Med. Ctr., L.P. v. Health Prof'ls*, 2005 WL 3216549, at *6 (D.N.J. Nov. 29, 2005). To avoid undermining the NLRB's "exclusive jurisdiction over issues of national labor relations," *Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797,

---

[5]  *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53 (1966), which the OAG cited at the pre-motion conference, is inapposite. In *Linn*, the Court held that the NLRA did not preempt a defamation claim because the NLRB "lack[ed]" "concern with the 'personal' injury caused by malicious libel" and could not "provide redress to the maligned party." *Id.* at 63. By contrast, the alleged injuries to Mr. Palmer and Mr. Smalls—employee discipline and termination—are precisely the type of injury the NLRB routinely addresses. *See, e.g.*, *Deming Hosp. Corp. v. NLRB*, 665 F.3d 196, 202 (D.C. Cir. 2011); *Consol. Freightways v. NLRB*, 892 F.2d 1052, 1056–57 (D.C. Cir. 1989).

805 (3d Cir. 1996), the local interest exception applies only where "the exercise of state jurisdiction . . . entail[s] little risk of interference with the regulatory jurisdiction of the [NLRB]," *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 196 (1978). Where the exercise of state jurisdiction presents an "obvious and substantial" "risk of interference with the Board's jurisdiction," the local interest exception is inapplicable. *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676, 683 (1983).

The OAG's attempt to regulate matters under the NLRB's exclusive jurisdiction presents an obvious and substantial risk of interference. There is already a retaliatory discharge claim being litigated before the NLRB arising out of the same concerted activities that gave rise to the OAG's claims. *See* ¶¶ 35–37; Exs. 22, 23. When "the same issues brought to the [NLRB] are raised in a state court complaint," courts have declined to apply the local interest exception. *Casumpang v. Hawaiian Com. & Sugar Co.*, 712 F. App'x 709, 710–11 (9th Cir. 2018). This makes perfect sense, because when "the conduct forming the basis of" the OAG's claims "also underlies the potential unfair labor practice charges, and the same facts would need to be determined in each proceeding," allowing the state to retain jurisdiction would "create[] a risk of conflicting rulings" and therefore "interfer[e] with" the NLRB's jurisdiction. *Pa. Nurses Ass'n*, 90 F.3d at 804. The NLRA precludes the OAG from "relitigat[ing]" the same issue "under state law." *Casumpang*, 712 F. App'x at 710–11; *see also Platt*, 959 F.2d at 95 (local interest exception is inapplicable, despite "deeply rooted local interest," where plaintiff could have brought claim "that he was fired for making job safety complaints" to the NLRB).

The local interest exception independently fails because the alleged protected activity underlying the OAG's retaliation claims—Mr. Smalls's and Mr. Palmer's complaints regarding Amazon's COVID-19 workplace safety measures—does not "touch[] interests so deeply rooted in

local feeling and responsibility." *Garmon*, 359 U.S. at 244, 247. Indeed, the New York Legislature *declined* to assume responsibility for enforcing workplace safety standards against private employers, choosing instead to rely on *federal* standards. *See* NYLL § 27(1). Further, where the exception applies, courts ordinarily limit it to a state's traditional power to address exigent threats to the public peace—"concerned activity . . . involving threats to public order such as violence, threats of violence, intimidation and destruction of property." *Pa. Nurses*, 90 F.3d at 803. There were no such threats here. Moreover, the OAG has not sought emergency relief, nor alleged that events at JFK8 threatened the "public order." The OAG thus cannot show that Mr. Smalls's and Mr. Palmer's complaints were "of special or overriding local concern." *Andrewsikas*, 2021 WL 1090786, at *6. There is no plausible basis for the local interest exception here.

***

Only the NLRB can address the OAG's allegations that Amazon took disciplinary action against Mr. Smalls and Mr. Palmer for protesting working conditions at JFK8. Mr. Smalls's and Mr. Palmer's alleged protected activity plainly qualifies as "concerted activity," and claims of retaliation for engaging in such activity are quintessential NLRA claims—as evidenced by the fact that Mr. Smalls's and Mr. Palmer's co-worker has already brought an identical claim to the NLRB. The NLRA thus divests the OAG of jurisdiction to regulate the exact same issues under state law.

## II. The OSH Act Preempts The OAG From Regulating Amazon's Occupational Safety Measures In Response To COVID-19.

Federal law also preempts the OAG's attempts to regulate Amazon's workplace safety response to COVID-19. The OSH Act "'unquestionably' pre-empts any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 97 (1992)

13

(plurality); *see also id.* at 113 (Kennedy, J., concurring in part and concurring in judgment) (noting that the OSH Act "leave[s] little doubt" that "Congress intended to pre-empt supplementary state regulation"). "If a State wishes to regulate an issue of worker safety for which a federal standard is in effect, its only option is to obtain the prior approval of the Secretary of Labor, as described in [29 U.S.C. § 667]." *Id.* at 103–04. Under this "comprehensive regulatory scheme," *N.Y. State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 103 (2d Cir. 1996), "nonapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act," *Gade*, 505 U.S. at 98–99. Congress "sought to promote occupational safety and health while at the same time avoiding duplicative, and possibly counterproductive, regulation." *Id.* at 102.

In 1975, the New York Legislature relinquished its authority to enforce OSH Act standards against private employers by withdrawing its federally approved plan for private sector employees. *Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359, 372 (E.D.N.Y. 2020). New York thus "cannot enforce occupational safety and health standards for issues covered by a federal standard" for private employers. *Palmer*, 498 F. Supp. 3d at 372; *see* NYLL § 27(1).

OSHA has several preexisting standards that preempt the NYLL's application to a private employer's health-and-safety response to COVID-19. On its website, OSHA lists over a dozen "OSHA standards . . . that may apply to" COVID-19. *See* ¶ 49; Ex. 29. These include: 29 C.F.R. §§ 1910.134 (respiratory protection), 1910.141 (sanitation), 1910.132, 1910.33, 1910.34, 1910.38 (PPE), and 1904 (recordkeeping). ¶ 49; Ex. 29. The Department of Labor has "repeatedly" stated that *each* of these standards applies to COVID-19 workplace hazards. Dep't of Labor Br. 4, 21–23, *In re AFL-CIO*, No. 20-1158 (D.C. Cir. May 29, 2020).

Each of the COVID-19 workplace safety issues that the OAG alleges in its amended

complaint is governed by these existing OSHA standards.  Specifically, the OAG alleges safety

violations grouped into three categories: (1) "Amazon's Failure to Conduct Adequate Cleaning

and Disinfection," (2) "Amazon's Relentless Focus on Productivity at the Expense of Allowing

Employees to Take Appropriate Health Precautions," and (3) "Amazon's Inadequate Identification

of Contacts and Notification to Workers."  ¶¶ 45–47; Ex. 2 ¶¶ 3, 51–77, 118.  The OAG cannot

regulate these issues, however, because each is already covered by one or more federal standards:[6]

| OAG's Claims Under NYLL § 200 | Applicable Federal OSHA Standard |
| --- | --- |
| "Cleaning and Disinfection" Practices (*See* OAG Am. Compl. ¶¶ 51–55) | 29 C.F.R. §§ 1910.141 (Sanitation), 1910.138 (Hand protection); 29 U.S.C. § 654(a)(1) (General Duty Clause) |
| "Productivity Policies" that Allegedly "Hampered" Employees from Taking "Appropriate Health Precautions" (*See* OAG Am. Compl. ¶¶ 56–70) | 29 C.F.R. §§ 1910.141 (Sanitation), 1910.133 (Eye and face protections), 1910.134 (Respiratory protection), 1910.138 (Hand protection); 29 U.S.C. § 654(a)(1) (General Duty Clause) |
| "Identification of Contacts and Notification to Workers" (*See* OAG Am. Compl. ¶¶ 71–77) | 29 C.F.R. § 1904.4 (Recordkeeping); 29 U.S.C. § 654(a)(1) (General Duty Clause) |

Amazon recognizes that this Court did not find OSH Act preemption in *Palmer*, although

the Court acknowledged that the plaintiffs' NYLL § 200 claim was "in tension with the OSH Act

and creates the potential for 'duplicative, and possibly counterproductive, regulation' of workplace

safety." 498 F. Supp. 3d at 373–74 (quoting *Gade*, 505 U.S. at 102).  Amazon respectfully requests

that the Court reconsider that conclusion in light of the foregoing specific activities that the OAG

seeks to regulate, as well as more recent regulatory developments at the federal level.

In the months since the *Palmer* decision, OSHA has engaged in significant, additional

---

[6]  The OAG apparently agrees that the alleged health and safety issues at JFK8 are governed by existing federal laws and standards enforced by OSHA.  In its "preliminary assessment" of Amazon's COVID-19 workplace-safety response at JFK8, the OAG alleged that Amazon's conduct "would likely violate both OSHA safety standards applied specifically to this crisis by the OSHA Guidance," including 29 C.F.R. § 1910.141 (sanitation) and 29 C.F.R. §1910.132 (PPE), "and the OSHA general duty clause." ¶ 43; Ex. 1 at 2.

regulatory activity that makes clear that COVID-19 workplace safety is subject to federal, not state, control. For example, OSHA has issued over 100 citations related to COVID-19 since *Palmer* was decided, including dozens of citations for violations of OSHA's standards for respiratory protection, *see* 29 C.F.R. § 1910.134, PPE, *see id.* § 1910.132, and recordkeeping and reporting, *see id.* §§ 1904.4, 1904.39. ¶ 50; Ex. 30. OSHA also published guidance documents titled "Common COVID-19 Citations: Helping Employers Better Protect Workers and Comply with OSHA Regulations" and "Lessons Learned: Frequently Cited Standards Related to COVID-19 Inspections," which list the OSHA standards that OSHA has most frequently cited during COVID-19-related inspections. ¶ 52; Exs. 32–33.[7]

Moreover, on January 21, 2021, President Biden issued an Executive Order directing OSHA to take additional actions regarding COVID-19. ¶ 51; Ex. 31. On January 29, 2021, OSHA issued advisory "recommendations" that "are intended to assist employers in providing a safe and healthful workplace" as well as "descriptions of mandatory safety and health standards." ¶ 53; Ex. 34. The guidance makes clear that "[a]ll of OSHA's standards that apply to protecting workers from infection remain in place," including "requirements for . . . sanitation." *Id.* Further, on March 12, 2021, OSHA launched a National Emphasis Program designed "to ensure that employees in high-hazard industries or work tasks are protected from" COVID-19, including "General Warehousing and Storage" employees. ¶ 54; Ex. 35.

OSHA has also used its existing standards to bring enforcement actions for COVID-19-related issues that are analogous to the OAG's alleged issues. For example, on April 22, 2021, OSHA fined a warehouse company after finding that the company "failed to take immediate steps

---

[7] The latter notes, for example, how employers had been "frequently" cited for, among other things, failing to "[e]stablish, implement, and update a written respiratory protection program with required worksite-specific procedures," and "[a]ssess the workplace to determine if COVID-19 hazards are present." ¶ 52; Ex. 33.

to identify, inform, isolate and quarantine all potentially exposed individuals" in a COVID-19 outbreak at the warehouse. ¶ 59; Exs. 41–42. On May 14, 2021, OSHA fined a manufacturer for failing to enforce COVID-19 safety protocols, such as social distancing. ¶ 60; Ex. 43.

These federal actions leave no doubt that OSHA is asserting its authority to regulate occupational safety responses to COVID-19. OSHA's regulatory actions, particularly those that occurred after this Court ruled in *Palmer*, show that COVID-19 is not an "occupational safety or health issue with respect to which no [federal] standard is in effect." 29 U.S.C. § 667(a).

In addition to OSHA's preexisting standards, the OSH Act's general-duty clause preempts the OAG's regulatory authority over COVID-19 workplace safety. That clause requires employers to "furnish" a "place of employment" "free from recognized hazards that are causing or are likely to cause death or serious physical harm." 29 U.S.C. § 654(a)(1). OSHA has applied the general duty clause to COVID-19, and cited employers for COVID-19 safety violations under that provision. *See* ¶¶ 58, 60; Exs. 40, 43. For example, in April 2021, OSHA issued a citation under the general duty clause for, *inter alia*, failing to enforce social distancing protocols. ¶ 58; Ex. 40.

Finally, the OAG finds no support in the OSH Act's saving clause. For state laws not preempted by a federal standard, the saving clause preserves "the common law or statutory rights, duties, or liabilities of employers and employees . . . with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4). Because it is clear that federal standards cover the conduct that the OAG seeks to regulate, the saving clause has no effect; New York surrendered its authority to regulate occupational safety issues for private employers. Further, the saving clause applies only to garden-variety tort suits that seek recovery for "*actual* injury and death." *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 445 (1977) (emphasis added). The OAG has brought no such claim. Rather, in "actual effect," the OAG attempts to

craft its own workplace-safety regime that "constitutes, in a direct, clear and substantial way, regulation of worker health and safety." *Gade*, 505 U.S. at 107–08. The OAG cannot deploy NYLL § 200 to regulate an area governed by federal law or use state law as a back door to enforce the requirements of the OSH Act's general duty clause, which is the sole prerogative of the Secretary of Labor. *See Donovan v. OSHRC*, 713 F.2d 918, 927 (2d Cir. 1983).

### III. The OAG's Attempt To Regulate Amazon's Health-And-Safety Response To COVID-19 Impermissibly Intrudes On OSHA's Primary Jurisdiction.

Independent of OSH Act preemption, the OAG's attempt to regulate Amazon's workplace-safety response to COVID-19 intrudes on OSHA's primary jurisdiction. In *Palmer*, this Court applied the primary jurisdiction doctrine to a materially indistinguishable claim under NYLL § 200. 498 F. Supp. 3d at 370. There is no reason to depart from that holding here.

Under the primary-jurisdiction doctrine, a court may dismiss a case to allow an administrative agency in the first instance to resolve issues that "have been placed within [its] special competence." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). Application of the doctrine is "appropriate whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006). To determine whether the doctrine applies, courts consider four factors: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Id.* at 82–83; *see also Palmer*, 498 F. Supp. 3d at 368. Here, as in *Palmer*, at least three—and arguably

all four—factors favor applying the primary jurisdiction doctrine to bar the OAG's attempt to regulate Amazon's COVID-19 workplace safety response.

*First*, as in *Palmer*, the workplace-safety issues that the OAG seeks to regulate "turn on factual issues requiring both technical and policy expertise" that "go to the heart of OSHA's expertise and discretion." 498 F. Supp. 3d at 370. The OAG "seek[s] relief that involves detailed aspects of how Amazon regulates its workplace, from how Amazon manages employee productivity, to the time and tools provided to sanitize workstations." *Id.* Specifically, the OAG seeks to regulate whether Amazon has taken "reasonable and adequate steps to provide employees with sufficient opportunities to engage in hygiene, cleaning, sanitizing, or social distancing in its facilities." ¶ 46; Ex. 2 ¶ 118. It also seeks to regulate Amazon's social distancing, cleaning, and sanitization protocols at JFK8 and DBK1. ¶¶ 44–47; Ex. 1 at 13–14; Ex. 2 ¶¶ 3, 51–77, 118. The plaintiffs in *Palmer* asked this Court to decide similar questions: they sought an injunction requiring Amazon to "provide workers with adequate time and tools to clean and disinfect their workstations," and to take other steps to ensure workers "can maintain social distancing." 498 F. Supp. 3d at 367. All of these claims ask courts to "analyze how Amazon's employment practices and policies impact transmission of a poorly understood disease in JFK8, determine whether those policies create an unsafe workplace or otherwise violate state and federal guidance and standards, and implement and oversee new workplace policies." *Id.* at 370. But OSHA—the federal agency "specifically charged with regulating health and safety in the workplace"—has "primary responsibility for setting and enforcing standards and providing research, information, education, and training to assure safe and healthful working conditions." *Id.* at 368–69.

*Second*, given OSHA's special expertise over workplace safety, questions regarding the adequacy of COVID-19-related workplace practices are committed to OSHA's discretion. *Ellis*,

443 F.3d at 83. OSHA is entitled to "considerable deference" in regulating employer responses to COVID-19 because it has "regulatory tools . . . at its disposal to ensure that employers are maintaining hazard-free work environments." *In re AFL-CIO*, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020) (per curiam). OSHA has developed a "strategy" for combatting COVID-19 in the workplace that "pair[s] a broad arsenal of guidance materials with aggressive enforcement of existing standards." Dep't of Labor Br. 33, *AFT v. OSHA*, No. 20-73203 (9th Cir. Dec. 31, 2020), Dkt. 13-1. "This includes conducting more than 1,430 COVID-related inspections and issuing citations totaling more than $3,849,222 to 294 employers," in addition to conducting over 11,400 COVID-related investigations. *Id.* at 11, 33. Moreover, OSHA has issued guidance and taken enforcement actions on the exact issues related to social distancing, cleaning, and sanitization in the workplace that the OAG seeks to regulate. *See* ¶¶ 48–60; Exs. 28–43. Most recently, OSHA issued an emergency temporary standard ("ETS") for COVID-19 hazards in the healthcare industry. ¶ 56; Exs. 37–38. OSHA determined that additional standards are not needed at this time for non-healthcare industries and instead issued additional guidance for those industries that will be "update[d] . . . over time to reflect developments in science, best practices, and standards." ¶ 57; Ex. 39. OSHA's decision to issue an ETS for the healthcare industry and guidance for other industries shows that it is monitoring COVID-19 conditions, exercising regulatory authority over COVID-19 workplace safety issues, and exercising technical judgment about evolving conditions.

*Third*, "deference to OSHA" would "ensure uniform[ity]," which is crucial in the context of an unprecedented pandemic. *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228, 1241 (W.D. Mo. 2020). As this Court reasoned in *Palmer*, "Court-imposed workplace policies could subject the industry to vastly different, costly regulatory schemes in a time of economic stress. A determination by OSHA, on the other hand, would be more flexible and could

ensure uniformity."  498 F. Supp. 3d at 370.

*Fourth*, nothing prevents the OAG from bringing issues to the attention of OSHA, or assisting employees or their representatives in making an OSHA complaint.  The OAG has argued that it is differently situated than the *Palmer* plaintiffs because it cannot itself file an employee complaint with OSHA, Dkt. 29 at 3, but that argument distorts the inquiry.  The relevant inquiry is whether the issue has been or could be brought to the attention of the relevant agency, irrespective of who actually makes an application to the agency.  *See Ellis*, 443 F.3d at 81.[8]

Finally, deferring to OSHA's expertise is especially warranted now that large percentages of the workforce are vaccinated, COVID-19 infection rates are down dramatically, and public officials (including in New York State) are lifting public health restrictions.  *See* ¶ 18; Exs. 14–15. With each passing day, the improving conditions raise serious doubts over whether there is even a live, cognizable controversy between the OAG and Amazon over workplace safety at JFK8 and DBK1—to say nothing of whether a court can order meaningful and relevant relief.  *See Citineighbors Coal. of Historic Carnegie Hill v. N.Y.C. Landmarks Pres. Comm'n*, 2 N.Y.3d 727, 728–29 (2004) (applying mootness doctrine).  Indeed, courts have begun to conclude that various COVID-related lawsuits have become moot as conditions improve, restrictions are lifted, and the pandemic subsides.  *See, e.g.*, *Carley v. Gentry*, 2021 WL 2276458, at *3 (D. Nev. June 3, 2021); *Case v. Ivey*, 2021 WL 2210589, at *11 (M.D. Ala. June 1, 2021).  If the OAG's workplace safety claim is moot (and it appears to be so), then the *only* recourse for the OAG's preferred workplace reforms would be with OSHA.  For this additional reason, the OAG's attempt to regulate

---

[8]  The OAG is also mistaken when it argues that the primary-jurisdiction doctrine does not apply because OSHA left COVID-19 workplace safety regulation to the states.  Dkt. 29 at 3.  OSHA has not "abdicated its responsibilities during the pandemic," and instead "exercised its discretion" and "reasonably determined" to use "existing regulatory tools" to "ensure that employers are maintaining hazard-free work environments."  *Palmer*, 498 F. Supp. 3d at 369.

Amazon's COVID-19 occupational safety response falls within OSHA's primary jurisdiction.

## IV. The Court Should Grant A Declaratory Judgment.

The Court should exercise its discretion to grant a declaratory judgment finding that the issues the OAG seeks to regulate are preempted by federal law and within the primary or exclusive jurisdiction of federal regulators. *See* 28 U.S.C. § 2201(a). This is an ongoing, substantial controversy. The OAG asserts the authority to regulate both claims of retaliation against employees who protested working conditions and Amazon's workplace safety responses to COVID-19, while Amazon asserts the right under federal law to be free from such state regulation. A declaratory judgment would settle this dispute once and for all, plainly serving "a useful purpose in clarifying or settling the legal issues involved" and bringing this long running "controversy" and the attendant "uncertainty" to an end. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105–06 (2d Cir. 2012); *see also, e.g.*, *Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014) ("plaintiffs are entitled to declaratory relief that the challenged arbitration laws are . . . preempted" because the "requested declaratory relief . . . removes uncertainty as to viability and enforcement of the" challenged laws); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 124 (S.D.N.Y. 1997).

There is no reason to defer decision. Amazon, for example, is not asking this Court to decide the merits of the underlying workplace-safety and retaliation claims. Instead, Amazon is asking for a declaration determining *who* should regulate these issues—federal agencies applying federal law, or the State of New York applying state law. This is a quintessential question for a federal court. *Cf. United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 729 (1966) ("[T]he federal courts are particularly appropriate bodies for the application of pre-emption principles."). A declaratory judgment, moreover, would not increase "friction" between state and federal legal

systems.  *See Niagara*, 673 F.3d at 105.  Quite the contrary, it would *decrease* the friction that the OAG is already generating by intruding on matters governed by federal authority.

## V.    Amazon Is Entitled To Injunctive Relief.

Amazon is also entitled to injunctive relief from the OAG's unlawful attempts to subject Amazon to state oversight of activities governed by federal law and enforced by federal regulators.

### A.  Amazon Has Been Irreparably Harmed By The OAG's Unlawful Exercise Of Regulatory Authority And Remedies At Law Are Inadequate.

The OAG's unlawful assertion of regulatory authority has irreparably harmed Amazon in at least two ways, and remedies at law are inadequate to compensate for these injuries.  *First*, enforcement of a preempted—and thus unconstitutional—law constitutes irreparable injury.  *See Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992); *Arcadian Health Plan, Inc. v. Korfman*, 2010 WL 5173624, at *8 (D. Me. Dec. 14, 2010) ("A party may be irreparably injured in the face of the threatened enforcement of a preempted law.").  The OAG's ongoing exercise of regulatory authority that is preempted by federal law has irreparably harmed—and continues to irreparably harm—Amazon.  *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010).  The OAG has refused to withdraw its claims, and the only adequate remedy is an injunction against the OAG's continued unlawful regulation.  *See Morales*, 504 U.S. at 381 (federal courts may "enjoin[] state officers who threaten . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution" (quotation marks omitted)).[9]

*Second*, the OAG's exercise of regulatory authority also irreparably harms Amazon by damaging Amazon's reputation and good will.  "Harm may be irreparable where the loss is difficult

---

[9]   Although this Court concluded in *Weisshaus v. Cuomo*, 2021 WL 103481 (E.D.N.Y. Jan. 11, 2021) that "an alleged violation of the Supremacy Clause does not trigger[] irreparable harm *per se*," *id.* at *5, that case is distinguishable as the plaintiff did not face threatened enforcement action.  In cases like this one, it is the "prospect of [a preempted] state suit" that "supplies the . . . irreparable injury" for injunctive relief.  *Morales*, 504 U.S. at 382.

to replace or measure," *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012), and the threat that a business will suffer a loss of "good will"—which is "nearly impossible to value"—is particularly suited to a claim for injunctive relief, *Reuters Ltd. v. United Press Int'l*, 903 F.2d 904, 908 (2d Cir. 1990); *see Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (similar).

The OAG's unlawful exercise of regulatory authority severely harms Amazon's brand reputation because it wrongly suggests that Amazon has not sought to protect its employees during a once-in-a-century pandemic, and denigrates the industry-leading measures that Amazon has taken and continues to take. Indeed, from the outset, the OAG has publicly and unfairly maligned Amazon. *See* ¶¶ 10, 12–13, 15–17, 24–26; Exs. 7–9, 11–13, 18–19. Before the OAG even launched its investigation, it publicly described Amazon as "immoral and inhumane" for terminating Mr. Smalls's employment. ¶ 26; Ex. 19. Shortly thereafter, the OAG made a "preliminary assessment" that Amazon had violated safety requirements in connection with Amazon's response to the COVID-19 pandemic, and that Amazon's violations "put[] at grave risk" "the company's thousands of employees," "their families and communities, Amazon's customers, and the general public." ¶ 6; Ex. 1. Days later, National Public Radio reported that it had obtained a copy of the letter, and published an article quoting from the letter and describing its contents. ¶ 8; Ex. 5. However, in reality—and as the New York City Sheriff's Office found—Amazon had by that point implemented industry-leading measures that go "above and beyond" compliance requirements. ¶ 7; Ex. 4. The irreparable harm done to Amazon's brand reputation by the OAG's allegations is impossible to measure. Injunctive relief is warranted. *See Mo. Ins. Coal. v. Huff*, 2012 WL 6681688, at *3 (E.D. Mo. Dec. 21, 2012) (finding irreparable "[d]amage to [plaintiffs'] reputation and goodwill" caused by "Defendant's enforcement actions").

## B.  The Public Interest And Balance Of Hardships Favor Injunctive Relief.

Because the government is the opposing party, the balance-of-hardships and the public-interest factors merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  "There is generally no public interest in the perpetuation of unlawful agency action.  To the contrary, there is a substantial public interest in having governmental agencies abide by . . . federal laws."  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations and quotation marks omitted).  Because the OAG's exercise of regulatory power over Amazon is preempted by the OSH Act and the NLRA, the Supremacy Clause makes the OAG's actions unlawful.  The policy judgment reflected in Congress's decision to preempt state law in the OSH Act and the NLRA demonstrates that the public interest favors injunctive relief.  *See Edmondson*, 594 F.3d at 770–71 ("the public interest will . . . be served by enjoining the enforcement of" a preempted state law).  The public interest in preserving federal preemption is made even more compelling by New York's decision to relinquish its option under the OSH Act to regulate private employers within OSHA's jurisdiction.  *See supra* at 14.  The public interest therefore favors enjoining the OAG from continuing its unlawful exercise of regulatory authority.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant summary judgment for Amazon; enter a declaration that the New York Attorney General lacks authority to regulate (1) Amazon's workplace safety responses to COVID-19 and (2) claims of retaliation against workers who protest working conditions; and issue an injunction preventing the New York Attorney General, acting in her official capacity, from causing the OAG to purport to exercise regulatory authority over (1) Amazon's workplace safety responses to COVID-19 and (2) claims of retaliation against workers who protest working conditions.

Dated:  June 18, 2021

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Jason C. Schwartz*
      Jason C. Schwartz (*pro hac vice*)
      Lucas C. Townsend (*pro hac vice*)
      GIBSON, DUNN & CRUTCHER LLP
      1050 Connecticut Avenue, N.W.
      Washington, D.C. 20036-5306
      Tel.:  (202) 955-8500
      jschwartz@gibsondunn.com
      ltownsend@gibsondunn.com

      Mylan L. Denerstein
      Zainab N. Ahmad
      GIBSON, DUNN & CRUTCHER LLP
      200 Park Avenue
      New York, NY 10166-0193
      Tel.:  (212) 351-4000
      mdenerstein@gibsondunn.com
      zahmad@gibsondunn.com

      *Attorneys for Plaintiff Amazon.com, Inc.*