UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAZON.COM, INC., | Case No. 1:21-cv-767 (BMC) |
| Plaintiff, | |
| v. | **Oral Argument Requested** |
| ATTORNEY GENERAL LETITIA JAMES, in her official capacity as the Attorney General of the State of New York, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR,
<u>IN THE ALTERNATIVE, STAY PROCEEDINGS</u>**

Jason C. Schwartz (*pro hac vice*)
Lucas C. Townsend (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: (202) 955-8500
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com

Mylan L. Denerstein
Zainab N. Ahmad
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
mdenerstein@gibsondunn.com
zahmad@gibsondunn.com

*Attorneys for Plaintiff Amazon.com, Inc.*

July 9, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ....................................................................................................... 3

    I.    Amazon's Responses To COVID-19 Have Been Industry-Leading. ................... 3

    II.    The OAG Began An Unwarranted Investigation Into Federally Regulated Matters. .................................................................................................... 4

    III.    When The OAG Made Overreaching Demands, Amazon Filed This Action To Protect Its Federal Rights. ................................................... 5

LEGAL STANDARD ............................................................................................... 5

ARGUMENT .......................................................................................................... 6

    I.    This Court Has Subject-Matter Jurisdiction. .......................................... 6

    II.    Abstention Doctrines Do Not Warrant Dismissing Or Staying Amazon's Claims. ..................................................................................... 7

        A.    *Younger* Abstention Is Inappropriate. ........................................ 8

        B.    *Wilton* Abstention Is Inappropriate. .......................................... 12

    III.    Amazon Has Stated Claims For Relief. ................................................ 16

        A.    Amazon Adequately Alleges That The NLRA Preempts The OAG's Attempts To Regulate Claims Of Retaliation Against Employees Who Protested Working Conditions. .................................... 16

        B.    Amazon Adequately Alleges That The OSH Act Preempts The OAG's Attempts To Regulate COVID-19 Workplace Safety. ................ 20

        C.    Amazon Adequately Alleges That The OAG's Attempts To Regulate COVID-19 Workplace Safety Are Under OSHA's Primary Jurisdiction. .............................................................. 23

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ACE Am. Ins. Co. v. Bank of the Ozarks*,
2014 WL 4953566 (S.D.N.Y. Sept. 30, 2014)........................................................15

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*,
403 U.S. 274 (1971)..............................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................6

*Atlas Roofing Co. v. OSHRC*,
430 U.S. 442 (1977)..............................................................................................23

*Belknap, Inc. v. Hale*,
463 U.S. 491 (1983)..............................................................................................18

*Bridges v. Kelly*,
84 F.3d 470 (D.C. Cir. 1996).................................................................................11

*Brillhart v. Excess Ins. Co.*,
316 U.S. 491 (1942)..............................................................................................13

*Bud Antle, Inc. v. Barbosa*,
45 F.3d 1261 (9th Cir. 1994)...................................................................................9

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
280 F.3d 874 (8th Cir. 2002).................................................................................13

*Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination*,
70 F.3d 1361 (1st Cir. 1995)...................................................................8, 9, 10, 17

*Cullen v. Fliegner*,
18 F.3d 96 (2d Cir. 1994).........................................................................8, 10, 11

*Diamond "D" Constr. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002)..................................................................................12

*Dittmer v. Cty. of Suffolk*,
146 F.3d 113 (2d Cir. 1998).............................................................................13, 14

*Domnister v. Exclusive Ambulette, Inc.*,
2008 WL 2157115 (E.D.N.Y. May 21, 2008)........................................................17

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003).............................................................................13, 14

Page(s)

*Ellis v. Tribune Television Co.*,
443 F.3d 71 (2d Cir. 2006)..............................................................23, 24

*Env't Encapsulating Corp. v. City of N.Y.*,
855 F.2d 48 (2d Cir. 1988)........................................................................20

*Farmer v. United Brotherhood of Carpenters & Joiners of Am., Local 25*,
430 U.S. 290 (1977)...................................................................................19

*Fleet Bank National Ass'n v. Burke*,
160 F.3d 883 (2d Cir. 1998)..................................................................6, 7

*Fountain v. Karim*,
838 F.3d 129 (2d Cir. 2016).......................................................................6

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992).............................................................10, 21, 22, 23

*Gasperino v. Larsen Ford, Inc.*,
426 F.2d 1151 (2d Cir. 1970)....................................................................25

*Gubitosi v. Kapica*,
895 F. Supp. 58 (S.D.N.Y. 1995) .............................................................12

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*,
471 F.3d 87 (2d Cir. 2006).................................................................16, 18

*HSBC Bank USA, N.A. v. N.Y. City Comm'n on Human Rights*,
673 F. Supp. 2d 210 (S.D.N.Y. 2009)....................................................8, 10

*K.D. Hercules, Inc. v. Laborers Local 78 of Laborers' Int'l Union of N. Am.*,
2021 WL 1614369 (S.D.N.Y. Apr. 26, 2021).............................................20

*Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*,
722 F.3d 88 (2d Cir. 2013).......................................................................13

*Kolentus v. Avco Corp.*,
798 F.2d 949 (7th Cir. 1986) ....................................................................18

*Linn v. United Plant Guard Workers of America, Local 114*,
383 U.S. 53 (1966)..............................................................................18, 19

*Local 926, Int'l Union of Operating Eng'rs v. Jones*,
460 U.S. 669 (1983)...................................................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).................................................................................2, 8

*New York v. Solvent Chemical Co.*,
    664 F.3d 22 (2d Cir. 2011)......................................................................14, 15

*Niagara Mohawk Power Corp. v. Hudson-River Black River Regul. Dist.*,
    673 F.3d 84 (2d Cir. 2012)..........................................................13, 14, 15, 16

*NLRB v. Tamara Foods, Inc.*,
    692 F.2d 1171 (8th Cir. 1982) ...............................................................17

*Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*,
    90 F.3d 797 (3d Cir. 1996)....................................................................18, 19, 20

*Paige v. Henry J. Kaiser Co.*,
    826 F.2d 857 (9th Cir. 1987) ...............................................................20

*Palmer v. Amazon.com, Inc.*,
    498 F. Supp. 3d 359 (E.D.N.Y. 2020) ........................................3, 10, 21, 23, 24, 25

*In re Pan Am. Corp.*,
    950 F.2d 839 (2d Cir. 1991)....................................................................9

*Pia v. URS Energy & Construction, Inc.*,
    227 F. Supp. 3d 999 (S.D. Iowa 2017) .............................................19, 20

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*,
    459 F. Supp. 3d 1228 (W.D. Mo. 2020) ..............................................24

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959)...........................................................2, 9, 10, 18, 19, 20

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*,
    436 U.S. 180 (1978)....................................................................20

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)....................................................................1, 6

*Socony Mobil Oil Co. v. NLRB*,
    357 F.2d 662 (2d Cir. 1966)....................................................................17

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)....................................................................7, 8

*Surgicore of Jersey City v. Anthem Life & Disability Ins. Co.*,
    2020 WL 5752227 (E.D.N.Y. Sept. 25, 2020) ....................................8, 9

*Vill. Green at Sayville, LLC v. Town of Islip*,
    2019 WL 4737054 (E.D.N.Y. Sept. 27, 2019) ....................................14

*VonRosenberg v. Lawrence*,
  781 F.3d 731 (4th Cir. 2015) ...........................................................13, 14

*Wilmington Tr., Nat'l Ass'n v. Estate of McClendon*,
  287 F. Supp. 3d 353 (S.D.N.Y. 2018)...............................................13

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)...........................................................................12, 13

*Wis. Dep't of Indus., Labor & Hum. Rels. v. Gould*,
  475 U.S. 282 (1986)...........................................................................17, 18

*XL Insurance America, Inc. v. DiamondRock Hosp. Co.*,
  414 F. Supp. 3d 605 (S.D.N.Y. 2019)...............................................15, 16

*Youell v. Exxon Corp.*,
  74 F.3d 373 (2d Cir. 1996).................................................................14

**Statutes**

29 U.S.C. § 157 .....................................................................................17

29 U.S.C. § 158 .....................................................................................17

29 U.S.C. § 653 .....................................................................................23

29 U.S.C. § 654 .....................................................................................21

29 U.S.C. § 655 .....................................................................................22

29 U.S.C. § 658 .....................................................................................24

29 U.S.C. § 659 .....................................................................................24

29 U.S.C. § 667 .....................................................................................21

**Rules**

N.Y. R. Prof'l Conduct 3.6 ...................................................................12

**Regulations**

29 C.F.R. § 1904.4 ................................................................................21, 22

29 C.F.R. § 1904.39 ..............................................................................22

29 C.F.R. § 1910.132 ............................................................................21, 22

Page(s)

29 C.F.R. § 1910.133 ...........................................................................................21

29 C.F.R. § 1910.134 .....................................................................................21, 22

29 C.F.R. § 1910.138 ...........................................................................................21

29 C.F.R. § 1910.141 ...........................................................................................21

## PRELIMINARY STATEMENT

Amazon brought this action to compel the Office of the New York Attorney General ("OAG") to comply with the federal laws that govern Amazon's workplace safety response to the COVID-19 pandemic. The OAG has been disregarding those federal laws for more than a year by attempting to regulate the adequacy of Amazon's COVID-19 response in areas that are preempted by federal law or assigned to the exclusive or primary jurisdiction of federal regulators. In fact, Amazon has developed and implemented industry-leading workplace protections against COVID-19 that far exceed any applicable standard, and was justified in taking disciplinary actions against two employees, Christian Smalls and Derrick Palmer, for repeatedly violating Amazon's social distancing policies and, in Mr. Smalls's case, a quarantine order following a potential COVID-19 exposure. Those facts, however, are not at issue in this case. The only issues—and the issues on which Amazon has sought summary judgment—concern whether the OAG is improperly disregarding federal law and intruding on the jurisdiction of federal regulators. As this Court knows well, federal courts have both the jurisdiction and the obligation to compel such recalcitrant state actors to comply with federal law.

In moving to dismiss, the OAG offers several theories for why it should not be answerable in federal court for its ongoing disregard of federal law. None of those theories has merit.

The OAG first argues that this Court lacks subject-matter jurisdiction. But it is "beyond dispute that federal courts have jurisdiction over suits," such as this one, that "seek[] injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). The OAG's attempt to invoke a supposed exception to *Shaw* recognized by the Second Circuit for claims primarily seeking an interpretation of state law has no bearing on this proceeding. Amazon is not asking this Court for

an interpretation of state law, and seeks declaratory and injunctive relief only on the ground that *federal* law bars the OAG's actions. This Court can grant that relief without interpreting state law, as Amazon's motion for summary judgment shows.

Next, the OAG invokes two abstention doctrines, *Younger* and *Wilton*, in a further attempt to shield its conduct from scrutiny. But this case presents none of the "exceptional circumstances" that must exist for a federal court to abstain from exercising its jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983). *Younger* abstention does not apply because no significant state interests are implicated in the OAG's state court action and it is apparent that most, if not all, of the OAG's claims are beyond the state court's jurisdiction. Furthermore, if Amazon prevails on its legal arguments and the state court dismisses the OAG's complaint, Amazon likely cannot secure the injunctive and declaratory relief it seeks here. Regardless, *Younger* abstention is not available where a state actor has pursued its claims in bad faith, as Amazon's well-pleaded allegations show here. And *Wilton* abstention does not apply because Amazon asserts claims under federal law and does not seek purely declaratory relief.

Lastly, the OAG offers several arguments for why Amazon's complaint supposedly fails to state a claim, but those arguments are easily dispatched. The National Labor Relations Act ("NLRA") clearly preempts the OAG's attempt to regulate allegations of retaliation against employees who protested workplace-safety conditions at Amazon's JFK8 facility in Staten Island. Indeed, the National Labor Relations Board ("NLRB") is currently hearing an identical claim for an allegedly retaliatory discharge following the same COVID-safety protests at JFK8. As the Supreme Court has made clear, if the NLRB even "arguably" has jurisdiction over a matter (as it does here), that jurisdiction is "exclusive" and state jurisdiction "must yield." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959). Contrary to the OAG's arguments, there

2

is no basis for applying the "local interest exception" to *Garmon* preemption here.

The OAG also fails to show that its workplace-safety allegations are not preempted by the federal Occupational Safety and Health Act ("OSH Act") or subject to the primary jurisdiction of the Occupational Safety and Health Administration ("OSHA"). Although this Court declined to find OSH Act preemption in *Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359 (E.D.N.Y. 2020), it did not consider the OAG's allegations regarding "cleaning and disinfection," Dkt. 33-4 ¶ 51, policies promoting "hygiene and sanitation practices," *id.* ¶ 67, and procedures for documenting and reporting COVID-19 infections—all of which fall under existing OSHA standards or mirror OSHA's COVID-19 enforcement actions. There is no merit to the OAG's contention that OSHA must promulgate new, COVID-specific standards to preempt state law. The OAG also fails to distinguish this Court's holding in *Palmer* that a closely similar workplace-safety claim seeking injunctive relief was subject to OSHA's primary jurisdiction. OSHA has the institutional perspective and expertise needed to determine what protocols are adequate in light of a rapidly changing pandemic—expertise it has deployed throughout the pandemic to regulate the same practices that the OAG seeks to regulate. OSHA standards have been effective in controlling the spread of COVID-19, and, together with other efforts, have contributed to the end of the COVID-19 emergency.

For all of these reasons, the OAG's motion to dismiss should be denied.

## BACKGROUND

### I.   Amazon's Responses To COVID-19 Have Been Industry-Leading.

Amazon is an essential business that has provided vital supplies to customers and much-needed jobs throughout the COVID-19 pandemic. Am. Compl. ¶ 1. To protect its associates from COVID-19, Amazon has taken extraordinary, industry-leading measures grounded in science,

going above and beyond governmental guidance and requirements. *Id.* ¶¶ 1-2, 28-116. Amazon has implemented over 150 process changes to promote social distancing, hygiene, and the safety of its associates, often doing so well before state and federal officials recommended analogous measures. *Id.* ¶¶ 2, 35-36. When the New York City Sheriff's Office conducted an unannounced inspection of Amazon's JFK8 fulfillment center in Staten Island in March 2020, it concluded that Amazon's health and safety measures went "above and beyond" then-current compliance requirements and presented "absolutely no areas of concern," and that complaints about inadequate protective measures at JFK8 were "completely baseless." *Id.* ¶ 4. Since then, Amazon has taken numerous additional steps to increase workplace safety, including building its own COVID-19 testing facilities, hosting on-site vaccination programs at its facilities (including JFK8), and offering a financial incentive to associates who receive the vaccine off-site. *Id.* ¶¶ 95-112. To date, Amazon has spent more than $11.5 billion on COVID-related initiatives. *Id.* ¶ 16.

Amazon takes the health and safety of its employees extremely seriously, which is why it took appropriate steps to address the health-and-safety violations of Mr. Smalls and Mr. Palmer. Am. Compl. ¶ 6. Amazon terminated Mr. Smalls's employment and issued Mr. Palmer a written warning because of their repeated violations of Amazon's social-distancing policies and Mr. Smalls's violation of a quarantine order following a COVID-19 exposure. *Id.* ¶¶ 7, 140-52.

## II. The OAG Began An Unwarranted Investigation Into Federally Regulated Matters.

Within hours of Mr. Smalls's termination, the New York Attorney General issued a press release and posted a Tweet describing Amazon's actions as "immoral," "inhumane," and "disgraceful," and "calling on the NLRB to investigate." Am. Compl. ¶¶ 9, 164, 218.

The OAG then began its own investigation of Amazon's COVID-19 response at JFK8 and DBK1 and supposed retaliation against Mr. Smalls and Mr. Palmer for protesting working

4

conditions and COVID-19 workplace-safety practices at JFK8. Am. Compl. ¶ 10. Less than a month later, and without interviewing a single Amazon employee, the OAG made a "preliminary assessment" that Amazon had violated workplace-safety requirements—including the OSH Act and its regulations—and that Amazon had unlawfully retaliated against Mr. Smalls. *Id.* ¶¶ 10, 166-67, 220. The OAG's assessment ignored the New York City Sheriff's Office's contrary, first-hand findings. *Id.* ¶ 168. The OAG's "preliminary assessment" was promptly leaked to the press: on April 27, 2020, NPR reported that it had obtained a copy of the OAG's April 22 letter to Amazon and published an article quoting the letter and describing its contents. *Id.* ¶ 221.

## III. When The OAG Made Overreaching Demands, Amazon Filed This Action To Protect Its Federal Rights.

The OAG's investigation dragged on for 11 months. Despite substantial contrary evidence produced by Amazon, Am. Compl. ¶¶ 11, 165, the OAG continued to claim that Amazon violated health and safety standards and retaliated against Mr. Smalls and Mr. Palmer, *id.* ¶¶ 12, 167-72. The OAG eventually threatened to sue Amazon if it did not agree to demands that included making payments to Mr. Smalls and Mr. Palmer for "emotional distress" and disgorging profits. *Id.* ¶¶ 13, 189. Amazon filed this action on February 12, 2021, seeking injunctive and declaratory relief from the OAG's unlawful regulation of Amazon's COVID-19 response. The OAG subsequently filed its own lawsuit in the New York Supreme Court, alleging that Amazon failed to provide its employees "reasonable and adequate protection" against COVID-19 in violation of New York Labor Law ("NYLL") § 200, and retaliated against Mr. Palmer and Mr. Smalls in violation of NYLL §§ 215 and 740. *Id.* ¶¶ 18, 190.

## LEGAL STANDARD

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all

5

uncontroverted facts in the complaint … as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.     This Court Has Subject-Matter Jurisdiction.

Under *Shaw*, this Court has jurisdiction over this action "to enjoin state officials from interfering with federal rights." 463 U.S. at 96 n.14. "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute … thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Id.* The OAG nevertheless argues that this case falls within a narrow exception recognized in *Fleet Bank National Ass'n v. Burke*, 160 F.3d 883 (2d Cir. 1998), for lawsuits that are "primarily an attempt to have a federal court construe a state regulatory statute." *Id.* at 884. But *Fleet* does not apply because this case does not ask the Court (primarily or otherwise) to construe state law. Unlike the plaintiff in *Fleet*, Amazon's preemption argument is not contingent on any prior interpretation of state law, and Amazon has not filed this action to preclude the OAG—"*as a matter of state law*"—from regulating Amazon. *Id.* at 889. Amazon simply seeks to enjoin the OAG's attempted regulation of Amazon's COVID-19 response on grounds of *federal* preemption and *federal* primary jurisdiction. Am. Compl. ¶¶ 235-54.

The OAG's contrary arguments mischaracterize Amazon's claims and the law. The OAG erroneously asserts that "Amazon alleges that the OAG lacks authority under state law" to pursue

6

its claims against Amazon. Mot. 4. But the OAG concedes that Amazon's complaint is "focus[ed] on preemption," not state law. *Id.* at 5. The OAG cites only six paragraphs in Amazon's 254-paragraph complaint that purportedly address the OAG's authority under state law—one of which does not even reference state law, *see* Am. Compl. ¶ 15, and none of which is in Amazon's causes of action or prayer for relief. These allegations, which demonstrate the OAG's overreaching application of state law, are relevant only to show why the bad-faith exception to *Younger* abstention applies. *See id.* ¶¶ 219, 229. In contrast to *Fleet*, where the plaintiff sought a declaration that state law "did not prohibit [a] surcharge fee," 160 F.3d at 885, Amazon's declaratory and injunctive claims rest only on the preemptive force of federal law. Amazon's motion for summary judgment on those claims does not address the OAG's authority under state law. *See* Dkt. 33-1.

The OAG argues that "*Fleet* is not limited to cases 'primarily' attempting to have a federal court construe a state regulatory statute," Mot. 5, but *Fleet*'s express holding says otherwise. *See* 160 F.3d at 884 ("We conclude that federal question jurisdiction is lacking because the lawsuit is primarily an attempt to have a federal court construe a state regulatory statute."). The OAG also argues that Amazon is "implicitly asking the Court to assume that the NYLL applies to it," Mot. 5, but the same could be said of *any* plaintiff who has standing to seek an injunction against state regulation on federal preemption grounds, including the plaintiff in *Shaw*. Moreover, unlike the plaintiff in *Fleet*, which raised preemption only as a "contention in reserve," 160 F.3d at 891, Amazon seeks relief based solely on federal preemption and primary jurisdiction; the Court need not construe state law before granting Amazon's request for declaratory and injunctive relief.

## II. Abstention Doctrines Do Not Warrant Dismissing Or Staying Amazon's Claims.

Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given them, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013), and a constitutional duty "to

adjudicate a controversy properly before" them, *Moses H. Cone*, 460 U.S. at 14. Abdication of this obligation is justified "only in the exceptional circumstances" where directing the parties to "repair to [a] State court would clearly serve an important countervailing interest." *Id.* Otherwise, "[t]he pendency of an action in a state court is no bar to proceedings concerning the same matter in" federal court. *Sprint*, 571 U.S. at 73 (alteration omitted). No such exceptional circumstances are present here. This Court should reject the OAG's invitation to abstain.[1]

### A. *Younger* Abstention Is Inappropriate.

*Younger* abstention is appropriate only where (1) there is an "ongoing state proceeding," (2) that implicates an "important state interest," and (3) provides "an adequate forum for the vindication of federal constitutional rights." *Cullen v. Fliegner*, 18 F.3d 96, 103 & n.4 (2d Cir. 1994). The OAG cannot satisfy the second or third prongs of this analysis, rendering *Younger* abstention inapplicable. *Younger* abstention independently fails because Amazon adequately alleges that the OAG's investigation and litigation fall within the "bad faith" exception to *Younger*.

### 1. The OAG's State Court Action Does Not Raise Important State Interests.

To begin, the OAG cannot satisfy the second prong of the test for *Younger* abstention because there is no cognizable "important state interest" implicated in the state proceeding. *Cullen*, 18 F.3d at 103 n.4. It is "readily apparent" that the "state tribunal is acting beyond the limits of its authority." *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361, 1370 (1st Cir. 1995); *accord HSBC Bank USA, N.A. v. N.Y. City Comm'n on Human Rights*, 673 F. Supp. 2d 210, 215 (S.D.N.Y. 2009) (recognizing that the Second Circuit would "likely" apply the

---

[1] The OAG tacks on a cursory request for a stay at the end of its motion, but it articulates no basis for that request. To the extent the request is not forfeited, *but see Surgicore of Jersey City v. Anthem Life & Disability Ins. Co.*, 2020 WL 5752227, at *3 (E.D.N.Y. Sept. 25, 2020), it should be denied for the same reasons that abstention is inappropriate.

"readily apparent" "exception to *Younger* abstention"); *see also In re Pan Am. Corp.*, 950 F.2d 839, 847 (2d Cir. 1991) (recognizing a "presumption against abstention when there are preemption issues"). In these circumstances, "no significant state interests are"—or even could be—"served" by the state proceeding. *Chaulk*, 70 F.3d at 1370.

The OAG seeks to regulate issues that are governed exclusively by federal law and are within the jurisdiction of federal regulators. The State has no legally cognizable interest in resolving these matters in state court. For example, the OAG's claim that Amazon "retaliat[ed]" against Mr. Smalls and Mr. Palmer for collectively "complain[ing]" that "Amazon [had] failed to provide reasonable and adequate" COVID-19 workplace safety protections, Dkt. 33-4 ¶¶ 121, 124 (Smalls); *id.* ¶¶ 139, 142 (Palmer), plainly presents a federal issue. *See infra* pp. 16-20. Where the NLRB even "arguably" has jurisdiction over a matter, the Board's jurisdiction is exclusive and states are divested of jurisdiction. *Garmon*, 359 U.S. at 244-45. The NLRB clearly has jurisdiction over the matter; in fact, it is *already* exercising jurisdiction over the exact events giving rise to the OAG's retaliation claims.[2] Where, as here, the "very same conduct provides the factual basis" for a case currently pending before the Board, it is "'readily apparent' that the [state tribunal] is acting beyond its jurisdictional authority by entertaining [the OAG's] complaint." *Chaulk*, 70 F.3d at 1370; *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1272 (9th Cir. 1994) (declining to apply *Younger* where "the NLRA clearly preempts" state jurisdiction).

Similarly, the OAG's claims relating to COVID-19 workplace safety are preempted by standards promulgated under the federal OSH Act, and are subject to OSHA's primary jurisdiction.

---

[2]  In the case of Gerald Bryson (NLRB Case No. 29-CA-261755), the Board alleges that Amazon retaliated against Mr. Bryson for participating in the *same* protests as Mr. Palmer and Mr. Smalls. Am. Compl. ¶ 214. The Administrative Law Judge has found that information about Mr. Smalls and Mr. Palmer is relevant to that claim because they allegedly engaged "in the same protected activity" as Mr. Bryson. *Id.*

*See infra* pp. 20-25.  This Court found it "appropriate to apply the doctrine of primary jurisdiction" to a closely similar claim for injunctive relief under NYLL § 200.  *Palmer*, 498 F. Supp. 3d at 370. Since *Palmer* was decided, OSHA has issued over 100 additional citations related to COVID-19. Dkt. 33-32.  There is no doubt that federal law, not state law, controls these issues.

Contrary to the OAG's assertion, Mot. 8, there are no "unresolved questions of fact or law" that would impede deciding the preemption questions here.  *HSBC Bank*, 673 F. Supp. 2d at 215. These questions were settled decades ago by the Supreme Court.  *See Garmon*, 359 U.S. at 244-45 (NLRA); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 97 (1992) (plurality) (OSH Act); *see, e.g.*, *Chaulk*, 70 F.3d at 1370.  Accordingly, *Younger* abstention does not apply.

### 2.  The State Court Likely Cannot Grant Amazon The Full Relief It Seeks.

The OAG independently fails to satisfy the third prong of the test for *Younger* abstention because the state court does not "provide[] an adequate forum for the vindication of [Amazon's] federal constitutional rights."  *Cullen*, 18 F.3d at 103.  The OAG argues that the state court can consider Amazon's "federal constitutional defense[s]," Mot. 7, but the limited review that the OAG contemplates is unlikely to afford Amazon the declaratory and injunctive relief it seeks.  If the state court dismisses the OAG's complaint based on Amazon's federal constitutional arguments, judgment will be entered without any opportunity for Amazon to secure the necessary declaratory and injunctive relief against the OAG's ongoing refusal to abide by federal law.  As the OAG's conduct shows, such affirmative relief is essential—and only this Court can grant it.[3]

---

[3]  For example, the OAG recently doubled down on its demands for forward-looking injunctive relief and a court-ordered safety monitor, despite the fact that the New York Governor has declared the public emergency over and public health restrictions have expired.  *See* Reply in Supp. of Mot. to Lift Stay of Disclosure at 3-6, *People v. Amazon.com Inc.*, Index No. 450362/2021 (N.Y. Sup. Ct. N.Y. Cty. June 30, 2021).  The OAG's unwillingness to acknowledge the obvious mootness of its workplace-safety injunctive claim is just one example of why Amazon needs affirmative relief.

For this additional reason, *Younger* abstention is inappropriate. *See, e.g.*, *Bridges v. Kelly*, 84 F.3d 470, 477 (D.C. Cir. 1996) (inability of the D.C. courts to "afford appellant the full relief he seeks in connection with his federal claims is sufficient to preclude dismissal under *Younger*").

### 3. The OAG Pursued Its Claims Against Amazon In Bad Faith.

Even if the OAG could satisfy the criteria for *Younger* abstention (and it cannot), this case qualifies for an exception based on Amazon's well-pleaded allegations that the OAG began its investigation and brought its case in a bad faith effort to harass Amazon. *Cullen*, 18 F.3d at 103-04. From the start, this matter has been marked by a pattern of bias and harassment by the OAG that defies any impartial, "good faith" explanation. Mot. 9.

- **Rush to Judgment:** Within hours of Amazon terminating Mr. Smalls's employment, the Attorney General publicly condemned Amazon in widely followed public statements *before* opening an investigation or even asking Amazon for its account. Am. Compl. ¶ 218.

- **Predetermined Outcome:** Less than a month later, and before interviewing a single Amazon employee, the OAG took the unusual step of issuing to Amazon a "preliminary assessment" letter alleging that Amazon's response to the COVID-19 pandemic had violated safety requirements and that Amazon had retaliated against Mr. Smalls and Mr. Palmer. *Id.* ¶ 220.

- **Leaked Findings:** The OAG's "preliminary assessment" letter was leaked to the press. *Id.* ¶ 221. A fair inference is that the OAG was the source of the leak. *See id.* ¶¶ 173-75.

- **Lack of Jurisdiction:** The authority that the OAG purports to wield against Amazon is plainly preempted by federal law. Before this litigation, the OAG accused Amazon of violating OSHA standards and called on the NLRB to investigate Mr. Smalls's firing. *Id.* ¶¶ 196, 224.

- **Double Standards:** Although Amazon has adopted similar and, in many cases, more extensive protective measures than the New York State Courts, the OAG has defended the

11

State Courts' measures to address COVID-19 as "reasonable" and "effective" while inconsistently condemning Amazon's more extensive measures as inadequate.  *Id.* ¶ 227.

- **Disregard of Contradictory Evidence:**  No one from the OAG ever visited Amazon's JFK8 or DBK1 facilities during the COVID-19 pandemic.  In contrast, the New York City Sheriff's Office conducted an unannounced inspection of JFK8 in March 2020 and concluded that JFK8 "appeared to go above and beyond the current compliance requirements" and that "complaints" to the contrary were "completely baseless."  *Id.* ¶ 229.  The OAG has ignored those findings.

Collectively, these factual allegations are more than sufficient to show that the OAG has pursued this matter in bad faith.  At the very least, they create a colorable fact issue that precludes dismissal on *Younger* abstention grounds.  *See Gubitosi v. Kapica*, 895 F. Supp. 58, 62 (S.D.N.Y. 1995) (*Younger* abstention inappropriate because the court cannot "determine at this stage of litigation whether or not subsequent discovery in this case will bear out allegations of bad faith").

Amazon's allegations are not mere criticisms of the "execution" of the OAG's investigation, *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002), but specific allegations from which this Court can infer that the OAG brought the investigation "for the *purpose to harass*" Amazon, *id.* at 200.  Unlike in *Diamond "D,"* the allegations show that the OAG "singled [Amazon] out for adverse treatment," *id.*, including by applying "stricter standards" to Amazon than to New York State itself, Mot. 9.  Furthermore, the OAG's incendiary public statements and tweets about this matter raise questions about the OAG's commitment to securing a fair trial.  *See* Dkts. 33-9, 33-10, 33-11, 33-13, 33-14, 33-15, 33-20, 33-21; *cf.* N.Y. R. Prof'l Conduct 3.6 (trial publicity).  *Younger* does not shield this conduct from federal intervention.

### B.  *Wilton* Abstention Is Inappropriate.

There is no basis for the OAG's invocation of the *Wilton* abstention doctrine.  Under *Wilton*

*v. Seven Falls Co.*, 515 U.S. 277 (1995), courts have discretion to dismiss a declaratory judgment action "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (quoting *Wilton*, 515 U.S. at 282). If those threshold requirements are met, the Second Circuit has enumerated factors for courts to consider in exercising their discretion. *See Niagara Mohawk Power Corp. v. Hudson-River Black River Regul. Dist.*, 673 F.3d 84, 105 (2d Cir. 2012).

This action does not meet the threshold requirements for *Wilton* abstention because it both includes claims for injunctive relief and is governed by federal law. Even if *Wilton* applied, the factors guiding its application make clear that abstention would be improper here.

### 1. The Threshold Requirements For *Wilton* Abstention Are Not Satisfied.

Where, as here, a federal action seeks more than "purely declaratory" relief, the Second Circuit has held that *Wilton* abstention does not apply. *Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013); *see also, e.g.*, *Niagara*, 673 F.3d at 106. These precedents squarely foreclose the application of *Wilton* abstention here.[4] That "Amazon does not seek damages," Mot. 14, is irrelevant: *Wilton* does not apply to "actions [], like this one, [that] involve … claims for injunctive relief." *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)); *see also, e.g.*, *VonRosenberg*, 781 F.3d at 734-35; *Wilmington Tr., Nat'l Ass'n v. Estate of McClendon*, 287 F. Supp. 3d 353, 366 & n.7 (S.D.N.Y. 2018) (*Wilton* abstention inapplicable where plaintiff "seeks … injunctive relief").[5]

---

[4] Because Amazon seeks "coercive relief," the more stringent "*Colorado River* standard governs the abstention question." *VonRosenberg v. Lawrence*, 781 F.3d 731, 735-36 (4th Cir. 2015). The OAG does not invoke *Colorado River* abstention or argue that this standard is satisfied here.

[5] *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) is inapposite and pre-dates *Niagara* and *Kanciper*, which held that *Wilton* does not apply in actions seeking more than "purely

13

The OAG's contention that *Wilton* applies because Amazon's declaratory claim has "the same practical impact" as an injunction is unavailing. Mot. 13. The OAG cites no cases applying *Wilton* abstention to injunctive claims on this basis. To the contrary, the "only potential exception" to the "general rule" that *Wilton* abstention is limited to "purely declaratory" actions is when an injunctive claim is "frivolous" or "made solely to avoid" *Wilton* abstention. *VonRosenberg*, 781 F.3d at 735. The OAG does not assert that this exception applies here.

Moreover, *Wilton* abstention is inapplicable because Amazon's claims raise issues of federal, not state, law. It is settled that "cases like this one that involve questions of federal law 'are fundamentally distinct from *Wilton* because federal law supplies a rule of decision,' whereas *Wilton* 'involved state law only.'" *Niagara*, 673 F.3d at 105. That this action "involves issues of federal law only" is reason alone to find *Wilton* abstention inapplicable. *Dittmer*, 146 F.3d at 118; *see also, e.g.*, *Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996); *Vill. Green at Sayville, LLC v. Town of Islip*, 2019 WL 4737054, at *11 (E.D.N.Y. Sept. 27, 2019).[6]

## 2. Even If *Wilton* Applied, Abstention Would Still Be Inappropriate.

Even if *Wilton*'s threshold requirements were satisfied (and they are not), there would be no basis for abstention. In evaluating whether to abstain under *Wilton*, courts consider:

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of declaratory judgment would increase friction between sovereign legal systems …; and (5) whether there is a better or more effective remedy.

---

declaratory" relief.

[6] That *Youell* "antedated" *New York v. Solvent Chemical Co.*, 664 F.3d 22 (2d Cir. 2011), is irrelevant. Mot. 14. *Solvent* did not establish new "factors" for the *Wilton* abstention analysis, *id.*; rather, in *Solvent*, the Second Circuit merely applied the same test that it "articulated" "[m]any years ago," well before *Youell*. *Dow Jones*, 346 F.3d at 359; *see Solvent*, 664 F.3d at 26 (quoting *Dow Jones*, 346 F.3d at 359).

14

*Solvent*, 664 F.3d at 26 (alterations omitted). If either of the first two factors is satisfied, a court is "*required* to entertain" the action. *ACE Am. Ins. Co. v. Bank of the Ozarks*, 2014 WL 4953566, at *19 (S.D.N.Y. Sept. 30, 2014).

Application of these factors militates against abstention. The OAG does not, and cannot, dispute that this case presents an ongoing, substantial controversy. The OAG asserts the authority to regulate claims of retaliation against employees who protested working conditions and Amazon's workplace safety responses to COVID-19, while Amazon asserts the right under federal law to be free from such state regulation. A declaratory judgment would settle this dispute, plainly serving "a useful purpose in clarifying or settling the legal issues involved" and bringing this "controversy" and the attendant "uncertainty" to an end. *Niagara*, 673 F.3d at 105. The OAG asserts that a declaratory judgment will serve no "useful purpose" because it claims that "the legal issues can be settled in the State Action." Mot. 12. But the Second Circuit rejected that argument in *Niagara*, concluding that a declaratory judgment "clearly would serve a useful purpose" even though proceedings involving overlapping issues were pending in state court. 673 F.3d at 105.

Although application of the first two factors alone precludes *Wilton* abstention, the remaining factors further demonstrate that abstention is inappropriate. A declaratory judgment would not increase "friction" between state and federal systems. Mot. 13. To the contrary, it would *decrease* the friction that the OAG is generating by intruding on matters governed by federal authority. Further, resolution of the OAG's claims in the state court action is not a "more effective remedy." Mot. 12. In this action, Amazon seeks affirmative relief from the OAG's regulation of activities governed by federal law, not merely the dismissal of the OAG's state court action.[7] There

---

[7] By contrast, in *XL Insurance America, Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605 (S.D.N.Y. 2019), the plaintiffs sought a more limited declaratory judgment regarding the enforceability of a forum-selection clause and choice-of-law clause in an action in a Virgin Islands

also is no evidence that Amazon "turned to the federal courts for any improper purposes." *Niagara*, 673 F.3d at 105. Amazon brought this action as soon as the OAG's attempts to regulate these areas crystallized into a substantial and imminent threat that would support injunctive relief; in response, the OAG hurriedly filed its lawsuit in an attempt to preclude Amazon's injunctive claims. It is the OAG's case, not Amazon's, that was improperly filed.

## III. Amazon Has Stated Claims For Relief.

### A. Amazon Adequately Alleges That The NLRA Preempts The OAG's Attempts To Regulate Claims Of Retaliation Against Employees Who Protested Working Conditions.

Amazon adequately alleges that the OAG's attempts to regulate claims of retaliation against employees who protested working conditions are preempted by the NLRA and within the exclusive jurisdiction of the NLRB. The Second Circuit has instructed courts in analyzing *Garmon* preemption to consider whether: (1) "any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation," (2) "the controversy is identical to one that the aggrieved party could bring … before the NLRB," and (3) "the regulated conduct touches interests 'deeply rooted in local feeling and responsibility.'" *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006). All three steps establish NLRA preemption here, and the OAG's arguments to the contrary are meritless.

### 1. The Controversy The OAG Seeks To Regulate Is Identical To One That Could Have Been Brought (And Was Brought) Before The NLRB.

The OAG does not dispute that the first step in the *Garmon* preemption analysis is satisfied—the activity it seeks to regulate is plainly protected and prohibited by the NLRA. The NLRA protects employees who engage in "concerted activities for the purpose of … mutual aid

---

court, and that action would "settle the claims at issue" in the declaratory action. *Id.* at 611.

or protection," 29 U.S.C. § 157, and prohibits employers from retaliating against employees who engage in such conduct, *id.* § 158(a)(1). The OAG alleges that Amazon took disciplinary action against Mr. Palmer and Mr. Smalls because of their complaints about COVID-19 workplace safety. Dkt. 33-4 ¶¶ 120-55. Courts have held that complaints regarding workplace safety qualify as "concerted activity," and retaliation against employees who engage in such concerted activity is an unfair labor practice under the NLRA. *See, e.g.*, *NLRB v. Tamara Foods, Inc.*, 692 F.2d 1171, 1176-77 (8th Cir. 1982); *Socony Mobil Oil Co. v. NLRB*, 357 F.2d 662, 663-64 (2d Cir. 1966).

The second step in the *Garmon* preemption analysis is also met, because this alleged controversy is identical to a retaliatory discharge claim that could have been brought—and in fact *was* brought—before the NLRB. The NLRB's General Counsel is litigating an identical claim that Amazon retaliated against Mr. Bryson, who participated in the same workplace-safety protests at JFK8 as Mr. Smalls and Mr. Palmer, Am. Compl. ¶¶ 214-15—a fact that the OAG ignores.

The OAG asserts that the alleged controversy is not "identical" to a claim that could have been brought before the NLRB because its claims concern employees' "ability to complain about NYLL violations that harm workers' or the public's health," while "an NLRB proceeding would focus on the right to leverage workers' collective power." Mot. 21-22. However, *Garmon* preemption turns on "the conduct being regulated, not the formal description of governing legal standards." *Wis. Dep't of Indus., Labor & Hum. Rels. v. Gould*, 475 U.S. 282, 289 (1986). The OAG cannot change the essential nature of the federally covered conduct by "artfully pleading" it as state-law retaliation claims. *Chaulk*, 70 F.3d at 1370. Because the OAG's allegations of retaliation "involve[] precisely the same conduct" that "could have been presented to the NLRB," the alleged controversy the OAG seeks to regulate is identical to a retaliatory discharge claim that could have been brought before the NLRB. *Domnister v. Exclusive Ambulette, Inc.*, 2008 WL

17

2157115, at *4 (E.D.N.Y. May 21, 2008). Even if there were any "uncertainty" about the NLRA's application, that is for the NLRB to resolve in the first instance. *Pataki*, 471 F.3d at 95, 101.

The OAG's cited cases do not hold otherwise. In *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983), the Court held that the NLRA did not preempt misrepresentation and breach of contract claims brought by replacement workers hired during a strike. The Court reasoned that the controversy before the NLRB would not have "anything in common with the question whether [defendant] made misrepresentations to replacements that were actionable under state law," because the NLRB would instead "be concerned with the impact on strikers not with whether the employer deceived replacements." *Id.* at 510. Accordingly, maintaining the state-law action "would not interfere with the Board's determination of matters within its jurisdiction." *Id.* at 510-11. Here, by contrast, the allegations that Amazon took disciplinary action against Mr. Palmer and Mr. Smalls because of their workplace-safety complaints would be the focus of *both* the OAG's NYLL claims and the potential unfair labor practice charges. In these circumstances, "[t]he risk of conflicting rulings and interference with Board enforcement of national labor policy is evident." *Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 805 (3d Cir. 1996).

The controversy is no less identical because the OAG seeks different remedies. *Garmon* preemption prevents states from providing their own "remedies for conduct prohibited or arguably prohibited by the [NLRA]." *Gould*, 475 U.S. at 286. "[S]ince remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the [NLRB] only accentuates the danger of conflict." *Garmon*, 359 U.S. at 247. Thus, that the OAG seeks "remedies which the NLRB cannot provide," Mot. 22, is reason to *enforce* preemption, not disregard it. *See Kolentus v. Avco Corp.*, 798 F.2d 949, 962 (7th Cir. 1986).[8]

---

[8] The OAG's cited cases are inapposite. In *Linn v. United Plant Guard Workers of America*,

18

### 2. The Local Interest Exception To *Garmon* Preemption Is Inapplicable.

The local interest exception to *Garmon* preemption is inapplicable because the exercise of state jurisdiction presents an "obvious and substantial" "risk of interference with the Board's jurisdiction." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676, 683 (1983). Contrary to the OAG's assertions, interference with the NLRB's jurisdiction is not limited to state-law claims that expressly concern employee "bargaining power." Mot. 23. Rather, where "the conduct forming the basis of" state-law claims "also underlies the potential unfair labor practice charges," as here, allowing the state to retain jurisdiction would "create[] a risk of conflicting rulings" and thus "interfer[e] with" the NLRB's jurisdiction. *Pa. Nurses Ass'n*, 90 F.3d at 804.

The local interest exception is independently inapplicable because the protected activity underlying the alleged retaliation—Mr. Smalls's and Mr. Palmer's complaints regarding Amazon's COVID-19 workplace safety measures—does not "touch[] interests so deeply rooted in local feeling and responsibility" that it warrants an exception to exclusive federal jurisdiction. *Garmon*, 359 U.S. at 244, 247. More than 45 years ago, New York surrendered its power to enforce occupational health and safety standards against private employers in favor of federal enforcement. *See* NYLL § 27(1).[9] Further, the local interest exception does not extend to all cases

_____

*Local 114*, 383 U.S. 53 (1966), the Court held that the NLRA did not preempt a defamation claim because the NLRB "lack[ed]" "concern with the 'personal' injury caused by malicious libel" and could not "provide redress to the maligned party." *Id.* at 64. Similarly, in *Farmer v. United Brotherhood of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290 (1977), the Court held that the NLRA did not preempt an intentional infliction of emotional distress claim because the NLRA did not protect or prohibit the allegedly "outrageous conduct," and whether "[Defendants] caused [plaintiff] severe emotional distress and physical injury would play no role in the Board's disposition of the case." *Id.* at 302, 304. Here, in contrast, the activity the OAG seeks to regulate is protected and prohibited by the NLRA, and the alleged injuries to Mr. Palmer and Mr. Smalls— discipline and termination—are precisely the type of injury the NLRB routinely addresses.

[9] By contrast, the court in *Pia v. URS Energy & Construction, Inc.*, 227 F. Supp. 3d 999 (S.D. Iowa 2017), found the local interest exception applicable, but expressly relied on the fact that Iowa (unlike New York) had assumed responsibility for workplace-safety regulation for private sector

where the state exercises its "police power." Mot. 24. By that measure, the exception would swallow the *Garmon* preemption rule. Instead, courts ordinarily limit the local interest exception to a state's traditional power to address "threats to public order," such as "violence, threats of violence, intimidation and destruction of property." *Pa. Nurses Ass'n*, 90 F.3d at 803; *see K.D. Hercules, Inc. v. Laborers Local 78 of Laborers' Int'l Union of N. Am.*, 2021 WL 1614369, at *4 (S.D.N.Y. Apr. 26, 2021). No such "violence" or "threat to the public order" is present here. *Id.*[10]

The OAG's reliance on a "presumption against preemption" is equally unavailing. Mot. 25. This presumption is an interpretive tool for determining Congressional intent, which is the "ultimate touchstone" in the preemption analysis. *Env't Encapsulating Corp. v. City of N.Y.*, 855 F.2d 48, 53 (2d Cir. 1988). *Garmon* held that Congress designed the NLRA to "entrus[t] administration of the labor policy" to "a centralized administrative agency." 359 U.S. at 242. "[N]othing could serve more fully to defeat the congressional goals underlying the Act than to subject, without limitation," the activities regulated by the NLRB to the "jurisdiction of state and federal courts." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 286 (1971). The presumption against preemption cannot undermine this instruction.

### B. Amazon Adequately Alleges That The OSH Act Preempts The OAG's Attempts To Regulate COVID-19 Workplace Safety.

Amazon adequately alleges that the OSH Act and OSHA standards preempt the OAG's attempts to regulate COVID-19 workplace safety. The Act "'unquestionably' pre-empts" state laws relating to occupational safety or health issues "for which OSHA has already promulgated a

---

employers. *Id.* at 1003. Similarly, the court in *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857 (9th Cir. 1987), relied on California's "health and safety regulations" that substituted "applicable federal standards" in concluding that the NLRA did not preempt the plaintiff's claims. *Id.* at 864.
[10] The OAG's cited cases are not to the contrary. *See Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 202 (1978) (trespassory picketing, which "involved a risk of violence").

standard." *Gade*, 505 U.S. at 97 (plurality). States may "assume responsibility" for "occupational safety and health standards" only by submitting a plan to the U.S. Secretary of Labor. 29 U.S.C. § 667(b). New York submitted a plan for public sector employers, but *not* for private employers. Am. Compl. ¶ 194. Thus, it "cannot enforce state occupational safety and health standards for issues covered by a federal standard" for private employers. *Palmer*, 498 F. Supp. 3d at 372.

OSHA has several preexisting standards that "impose enforceable obligations on employers to protect workers from COVID-19." Schwartz Decl., Ex. 1 at 21. These include 29 C.F.R. §§ 1910.141 (sanitation), 1910.134 (respiratory protection), 1910.132, 1910.133, 1910.134, 1910.138 (personal protective equipment ("PPE")), and 1904.4 (recordkeeping). *See* Dkt. 33-31. In addition, "employers who fail to take preventative measures against COVID-19 face potential liability under the general duty clause [29 U.S.C. § 654(a)(1)]." Schwartz Decl., Ex. 1 at 25.

The OAG does not dispute that if an OSHA standard covers conduct that the OAG seeks to regulate, that standard preempts state law. Instead, the OAG argues that it escapes preemption because OSHA did not *specifically* promulgate "standards with respect to the COVID-related workplace safety issues involved in this case." Mot. 15. There is no support for the OAG's position, which contradicts OSHA's consistent pronouncements across two Presidential administrations. OSHA did not need to promulgate COVID-specific standards for "cleaning and disinfection," Dkt. 33-4 ¶ 51, policies promoting "hygiene and sanitation practices," *id.* ¶ 67, and procedures for documenting and reporting COVID-19 infections, *id.* ¶ 77—the issues that the OAG seeks to regulate under NYLL § 200—because OSHA *already* has standards covering those issues.

As OSHA's regulatory actions after this Court's decision in *Palmer* make clear, OSHA is actively enforcing these standards to protect workers against COVID-19. OSHA has undertaken significant regulatory activity showing that COVID-19 occupational safety is under federal

oversight—including issuing dozens of citations for employers' violations of OSHA's standards for respiratory protection, 29 C.F.R. § 1910.134, PPE, *id.* § 1910.132, and recordkeeping and reporting, *id.* §§ 1904.4, 1904.39. *See* Dkt. 33-32; *see also* Dkt. 33-34 at 1 (listing "OSHA standards [that] have been cited most frequently during COVID-19 related inspections").

OSHA's decision to promulgate an Emergency Temporary Standard ("ETS") only for healthcare settings reflects OSHA's determination that its existing standards sufficiently address COVID-19 in non-healthcare settings. OSHA is *obligated* to issue an ETS when it determines an ETS is "necessary" to protect against a "grave danger." 29 U.S.C. § 655(c)(1). Thus, while OSHA determined that "enforcement of existing standards and the General Duty Clause" was not "adequate" to protect against the risk of COVID-19 "in healthcare settings," Dkt. 33-40 at 149, OSHA necessarily determined that enforcement of existing standards is adequate in non-healthcare settings. Otherwise, OSHA would have been *required* to issue an ETS for non-healthcare industries—particularly in light of the Executive Order directing OSHA to issue any COVID-19 ETS it deemed "necessary." Dkt. 33-33 at 1. OSHA also issued additional guidance for non-healthcare employers stating that they must continue to comply with "other applicable mandatory OSHA standards." Dkt. 33-41 at 5. OSHA's decision to enforce existing standards in non-healthcare settings, rather than issue an ETS, does not make them any less preemptive.

The OAG resorts to arguing there is a "presumption against preemption." Mot. 15. But the Supreme Court rejected that presumption in holding that the OSH Act preempts state laws concerning issues covered by a federal standard. *Gade*, 505 U.S. at 107-08; *see id.* at 111-12 (Kennedy, J., concurring) ("A finding of express pre-emption … is not contrary to our longstanding rule that we will not infer pre-emption of the States' historic police powers absent a clear statement of intent by Congress."). Congress made its preemptory intentions clear in the

OSH Act and, as in *Gade*, the federal standards cover the conduct that the OAG seeks to regulate and thus preempt state regulation. The OAG's reliance on the OSH Act's saving clauses, Mot. 15-16, is equally misplaced. The *Gade* plurality cited both clauses, but nonetheless held the OSH Act to be preemptive of state law. 505 U.S. at 96. Further, the OAG fails to explain how its NYLL § 200 claims fall within the savings clause in 29 U.S.C. § 653(b)(4), when it has not alleged the necessary "actual injury and death." *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 445 (1977).

### C. Amazon Adequately Alleges That The OAG's Attempts To Regulate COVID-19 Workplace Safety Are Under OSHA's Primary Jurisdiction.

Amazon also adequately alleges that the primary jurisdiction doctrine bars the OAG's attempt to regulate Amazon's workplace-safety response to COVID-19. This Court held that OSHA has primary jurisdiction over Amazon's workplace-safety response to COVID-19 in a case involving a closely similar NYLL § 200 claim for injunctive relief. *See Palmer*, 498 F. Supp. 3d at 370. The OAG's efforts to distinguish *Palmer* do not warrant a different result here.

Application of the primary jurisdiction doctrine is "appropriate 'whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006). In applying this doctrine, courts consider whether: (1) "the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise," (2) "the question at issue is particularly within the agency's discretion," (3) "there exists a substantial danger of inconsistent rulings," and (4) "a prior application to the agency has been made." *Id.* at 82-83.

Here, as in *Palmer*, at least three—and arguably all four—factors favor applying the primary jurisdiction doctrine. First, the workplace-safety issues that the OAG seeks to regulate

23

"turn on factual issues requiring both technical and policy expertise" that "go to the heart of OSHA's expertise and discretion." *Palmer*, 498 F. Supp. 3d at 370. Second, given OSHA's special expertise over workplace safety, questions regarding the adequacy of COVID-19-related workplace practices are committed to OSHA's discretion. *Ellis*, 443 F.3d at 83. Third, "deference to OSHA" would "ensure uniform[ity]," which is crucial in the context of an evolving pandemic. *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228, 1241 (W.D. Mo. 2020). Finally, nothing prevents the OAG from bringing issues to the attention of OSHA, or assisting employees or their representatives in making an OSHA complaint. The fact that it has not done so, as was the case in *Palmer*, does not render the primary jurisdiction doctrine inapplicable.

The OAG claims that Congress has not vested OSHA with primary jurisdiction over workplace safety issues, and that OSHA has chosen to defer to state regulation of COVID-19 workplace safety. Mot. 17. Both claims are unfounded. OSHA is authorized to determine whether employers have violated the OSH Act and OSHA standards and to impose sanctions. 29 U.S.C. §§ 658, 659. OSHA's decision to incorporate state and local guidance into its own COVID-19 response does not mean OSHA has ceded the field to state regulators, but is itself an exercise of OSHA's expertise, because OSHA determined that "adequate safeguards for workers c[an] differ substantially based on geographic location," and "OSHA must retain flexibility to adapt its advice regarding incorporation of such local guidance, where appropriate." Schwartz Decl., Ex. 1 at 32-33.

The OAG's assertion that OSHA has declined "to issue COVID-19 guidance to non-healthcare work settings" also is incorrect. Mot. 18. OSHA's enforcement efforts have spanned numerous industries: OSHA launched hundreds of investigations of, and issued citations to, employers outside the healthcare sector, including manufacturers and warehouse companies. *See*

Dkts. 33-32, 33-44, 33-45. While OSHA limited its ETS to healthcare settings, it issued guidance for non-healthcare employers that will be "update[d] … over time to reflect developments in science, best practices, and standards." Dkt. 33-41 at 1.

The OAG also asserts that the issues raised by its NYLL § 200 claim against Amazon "are well within the conventional experience of judges," Mot. 18, but that is clearly not so. A court would need to decide whether Amazon's COVID-19 safety measures as a whole are adequate to protect employees at an 857,000-square-foot fulfilment center from an evolving pandemic. As this Court has previously found, "courts are not expert in public health or workplace safety matters, and lack the training, expertise, and resources to oversee compliance with evolving industry guidance." *Palmer*, 498 F. Supp. 3d at 370. That remains true, and none of the OAG's cases is comparable to the OAG's action against Amazon. *See* Mot. 18 n.10. Those cases involved garden-variety torts—not actions asking courts to create out of whole cloth a forward-looking occupational safety regime during a pandemic. *See, e.g.*, *Gasperino v. Larsen Ford, Inc.*, 426 F.2d 1151, 1153 (2d Cir. 1970) (wrongful death claim over carbon monoxide poisoning at the workplace).

The OAG also is wrong in suggesting there is "no substantial danger of businesses being subject to inconsistent rulings" because "Amazon has not alleged that OSHA is investigating Amazon's response to the COVID-19 pandemic." Mot. 18-19. Amazon remains under OSHA's regulatory authority and now faces the prospect of complying with two occupational safety regimes, one federally mandated and one created by a state court. The primary jurisdiction doctrine ensures that defendants are not placed in this untenable position.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny the OAG's motion to dismiss or, in the alternative, stay proceedings.

Dated:   July 9, 2021

                         GIBSON, DUNN & CRUTCHER LLP


                    By: */s/ Jason C. Schwartz*
                         Jason C. Schwartz (*pro hac vice*)
                         Lucas C. Townsend (*pro hac vice*)
                         GIBSON, DUNN & CRUTCHER LLP
                         1050 Connecticut Avenue, N.W.
                         Washington, D.C. 20036-5306
                         Tel.:  (202) 955-8500
                         jschwartz@gibsondunn.com
                         ltownsend@gibsondunn.com

                         Mylan L. Denerstein
                         Zainab N. Ahmad
                         GIBSON, DUNN & CRUTCHER LLP
                         200 Park Avenue
                         New York, NY 10166-0193
                         Tel.:  (212) 351-4000
                         mdenerstein@gibsondunn.com
                         zahmad@gibsondunn.com

                         *Attorneys for Plaintiff Amazon.com, Inc.*