# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

AMAZON.COM INC.,

        Plaintiff,

   v.

ATTORNEY GENERAL LETITIA
JAMES, in her official capacity as the
Attorney General of the State of New
York,

        Defendant.

No. 21-CV-767 (BMC)

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT .......................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT ....................................................................................................3

I.      Amazon Is Not Entitled To An Injunction..........................................4

      A.      Amazon Has Not Shown Irreparable Injury. ............................4

      B.      Amazon Has Not Shown That an Injunction Is the Only Adequate Remedy. .....................................................................7

      C.      Neither the Balance of Hardships nor the Public Interest Supports Issuing an Injunction ................................................8

II.     Amazon Is Not Entitled To A Declaratory Judgment..........................8

III.    The OSH Act Does Not Preempt The OAG's NYLL § 200 Claim..................................10

IV.   The Primary-Jurisdiction Doctrine Is Not Applicable To The OAG's Case. ....................13

V.    The NLRA Does Not Preempt The OAG's §§ 215 And 740 Claims. ..............................17

CONCLUSION.................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arcadian Health Plan, Inc. v. Korfman*,
No. 1:10-CV-322-GZS, 2010 WL 5173624 (D. Me. Dec. 14, 2010) ........................5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ............................................................................15

*Brillhart v. Excess Ins. Co.*,
316 U.S. 491 (1942) ..........................................................................................8

*Carley v. Gentry*,
No. 2:17-cv-02670-MMD-VCF, 2021 WL 2276458 (D. Nev. June 3, 2021) ........................15

*Case v. Ivey*,
No. 2:20-CV-777-WKW, 2021 WL 2210589 (M.D. Ala. June 1, 2021) ...............................16

*Chamber of Commerce of U.S. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010) ..........................................................................5

*Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*,
70 F.3d 1361 (1st Cir. 1995) ............................................................................22

*Cuomo v. Dreamland Amusements, Inc.*,
No. 08 Civ. 6321 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) ...............................5

*Domnister v. Exclusive Ambulette, Inc.*,
607 F.3d 84 (2d Cir. 2010) ..........................................................................20, 22

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ..........................................................................................4

*Eccles v. Peoples Bank of Lakewood Vill.*,
333 U.S. 426 (1948) ..........................................................................................9

*Ellis v. Tribune Television Co.*,
443 F.3d 71 (2d Cir. 2006) ..........................................................................13, 16

*Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*,
430 U.S. 290 (1977) ..................................................................................17, 19, 20

*Fleet Bank, N.A. v. Burke*,
160 F.3d 883 (2d Cir. 1998) ..............................................................................3

*Gade v. Nat. Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992) ................................................................................13

*Great Lakes Dredge & Dock Co. v. Huffman*,
    319 U.S. 293 (1943) .................................................................................8

*Healthcare Ass'n of New York State, Inc. v. Pataki*,
    471 F.3d 87 (2d Cir. 2006) ..........................................................17, 22, 23

*Linn v. United Plant Guard Workers of Am., Loc. 114*,
    383 U.S. 53 (1966) ................................................................................22

*Missouri Ins. Coal. v. Huff*,
    947 F. Supp. 2d 1014 (E.D. Mo. 2013) ....................................................7

*Missouri Ins. Coal. v. Huff*,
    No. 12 Civ. 2354 (AGF), 2012 WL 6681688 (E.D. Mo. Dec. 21, 2012) ................6

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) .............................................................................4, 5

*New York v. Solvent Chem. Co.*,
    664 F.3d 22 (2d Cir. 2011) ......................................................................9

*Pa. Nurses Ass'n v. Pennsylvania State Educ. Ass'n*,
    90 F.3d 797 (3d Cir. 1996) ....................................................................18

*Palmer v. Amazon.com Inc.*,
    498 F. Supp. 3d 359 (E.D.N.Y. 2020) ............................................. *passim*

*Palmer v. Amazon.com Inc.*,
    No. 1:20-cv-02468-BMC (July 28, 2020) ................................................14

*Puffer's Hardware, Inc. v. Donovan*,
    742 F.2d 12 (1st Cir. 1984) ....................................................................13

*Queenside Hills Realty Co. v. Saxl*,
    328 U.S. 80 (1946) ................................................................................19

*Reuters Ltd. v. United Press Int'l, Inc.*,
    903 F.2d 904 (2d Cir. 1990) ....................................................................6

*Rittmann v. Amazon*,
    971 F.3d 904 (9th Cir. 2020) ...................................................................7

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
    359 U.S. 236 (1959) ................................................................. *passim*

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*,
    436 U.S. 180 (1978) ..................................................................................19, 20

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) .................................................................................6

*Weisshaus v. Cuomo*,
    No. 20-cv-5826 (BMC), 2021 WL 103481 (E.D.N.Y. Jan. 11, 2021) ....................4

*Wilcox v. Niagara of Wis. Paper Corp.*,
    965 F.2d 355 (7th Cir. 1992) ...........................................................................12

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .........................................................................................9

*Wis. Dep't of Indus., Labor & Human Relations v. Gould*,
    475 U.S. 282 (1986) ..................................................................................21, 22

*Younger v. Harris*,
    401 U.S. 37 (1971) .......................................................................................3, 4

**STATE STATUTES**

New York Executive Law
    § 63(12) ........................................................................................................14

New York Labor Law
    § 27 ..............................................................................................................18
    § 200 ...................................................................................................... *passim*
    § 215 .................................................................................................2, 17, 21
    § 740 .................................................................................................2, 17, 21

**FEDERAL STATUTES**

29 U.S.C.
    § 653(b)(4) ..........................................................................................10, 11, 13
    § 655 ...................................................................................................... *passim*
    § 667 ..........................................................................................10, 12, 18

Declaratory Judgment Act, 28 U.S.C.
    § 2201(a) .......................................................................................................8, 9

**FEDERAL REGULATIONS**

29 C.F.R.

§ 1904.4.................................................................................................................12
§ 1910, Subpart U ........................................................................................10, 15
§ 1910.133(a)(1) ....................................................................................................12
§ 1910.134(a)(1) ....................................................................................................12
§ 1910.138(a) ..................................................................................................11, 12
§§ 1910.141(a)–(h) .........................................................................................11, 12

**MISCELLANEOUS AUTHORITIES**

Emily Anthes, *The Delta Variant: What Scientists Know*, The New York Times
(updated June 30, 2021)........................................................................................16

Defendant Attorney General Letitia James ("OAG") respectfully submits this memorandum of law in opposition to Amazon.com, Inc.'s ("Amazon") motion for summary judgment.

## PRELIMINARY STATEMENT

During an unprecedented pandemic that closed businesses, schools, and public spaces, the State of New York permitted companies like Amazon to continue in-person operations so long as they took adequate measures to protect their workforce. After a nearly yearlong investigation by the OAG into Amazon's health-and-safety protocols revealed that Amazon was not taking required precautions to keep their workers safe from COVID-19, Amazon raced to the courthouse to seek declaratory and injunctive relief to thwart state law, state court jurisdiction, and the lawful enforcement efforts of the OAG. This Court should deny Amazon's attempt to avoid its responsibilities under state law.

As a threshold matter, Amazon has failed to show it is entitled to a permanent injunction or declaratory judgment. By its own admission, Amazon offers no concrete facts supporting irreparable injury. At the same time, it fails to explain why the defense it is mounting in the OAG's state court action does not provide it access to an adequate remedy. And the only way the balance of hardships or public interest could favor Amazon is if the OAG's action is actually unlawful, which, as explained below, it is not.

First, the Occupational Safety and Health Act ("OSH Act") does not preempt the OAG's health-and-safety claims. As this Court has already recognized, there is no federal standard with which the OAG's claims could conflict, and New York Labor Law ("NYLL") § 200 constitutes statutory tort law, which falls under the OSH Act's savings clause. No developments since *Palmer*—and certainly not Occupational Health and Safety Administration ("OSHA") standards

1

that predate that decision—warrant reconsideration of the Court's holdings. While the Court applied the primary-jurisdiction doctrine in *Palmer*, the doctrine is properly analyzed on a case-by-case basis and the OAG's case merits different treatment.

Second, the National Labor Relations Act ("NLRA") does not preempt the OAG's retaliation claims. The Supreme Court has long recognized an exception to NLRA preemption where, as here, state laws are rooted in significant state interests and pose little risk to the primacy of the NLRA. Considering the OAG's paramount interest in preventing viral clusters from emerging at massive Amazon warehouses during a once-in-a-century pandemic and the distinct conduct at issue under the OAG's state law claims, the exception applies with full force here. Even if it did not, the lack of a threat to the NLRA's federal scheme is, in itself, sufficient grounds for rejecting Amazon's preemption argument. Accordingly, the Court should deny Amazon's motion for summary judgment.

## BACKGROUND

In March 2020, the OAG began investigating Amazon's COVID-19 response and retaliation against employees who complained about Amazon's health-and-safety measures. The investigation showed that Amazon employees—performing services deemed essential by New York State—are working in unsafe conditions at Amazon's New York City facilities, JFK8 and DBK1, and that employees, including Christian Smalls and Derrick Palmer, were retaliated against for voicing concerns for their safety. Accordingly, the OAG sued Amazon in state court on February 16, 2021, for violations of NYLL §§ 200, 215, and 740. Compl., NYSCEF Doc. No. 1, *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. Feb. 16, 2021) ("State Action"). Amazon filed this anticipatory declaratory judgment action one business day earlier. ECF No. 1. On May 3, the OAG moved to dismiss Amazon's complaint. ECF No. 25. In lieu

of opposing the motion, Amazon amended its complaint on May 17. ECF No. 27 ("Am. Compl."). On June 18, the OAG renewed its motion to dismiss on the grounds that there is no federal subject matter jurisdiction under *Fleet Bank, N.A. v. Burke*, 160 F.3d 883 (2d Cir. 1998); abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is mandatory; declaratory judgment jurisdiction should be declined; and Amazon's claims fail as a matter of law. *See generally* Def. Mem. of Law in Supp. of Mot. to Dismiss ("OAG Mem. Supp. MTD") ECF No. 32. Amazon moved for summary judgment at the same time. Pl. Mem. of Law. in Supp. of Mot. for Summ. J. ("Amazon Mem. Supp. MSJ") ECF No. 33-1. Meanwhile, on May 25, Amazon moved to dismiss the OAG's State Action based on, *inter alia*, the federal preemption defenses it asserts here. *See* Defs. Mem. of Law in Supp. of Mot. to Dismiss, NYSCEF Doc. No. 27, *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. May 25, 2021). The state court will hear argument on Amazon's motion on July 14.

## ARGUMENT

As an initial matter, as the OAG has explained in its motion to dismiss, the Court lacks subject matter jurisdiction under *Fleet* because Amazon seeks anticipatory declaratory and injunctive relief while disputing state law. *See* OAG Mem. Supp. MTD at 4–5. Moreover, even if there were jurisdiction, *Younger* abstention would be mandatory because the OAG's action is pending in state court; a safe and retaliation-free workplace is an important state interest; and the State Action affords an adequate opportunity for judicial review of Amazon's preemption defenses. *Id.* at 5-11.

Even if the Court reaches the merits of Amazon's motion for summary judgment, however, it should be denied.

## I.       Amazon Is Not Entitled To An Injunction

Amazon cannot demonstrate that it is entitled to an injunction.  To obtain a permanent injunction, a plaintiff must show that (1) it has been irreparably injured, (2) remedies at law are inadequate, and both (3) the balance of hardships and (4) the public interest favor granting the injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  As Amazon has made none of these showings, it would not be entitled to injunctive relief—even if the Court does not dismiss this case for lack of federal jurisdiction or abstain under *Younger*.

### A. Amazon Has Not Shown Irreparable Injury

First, Amazon has not been irreparably injured.  Amazon makes two assertions: (a) "enforcement of a preempted—and thus unconstitutional—law constitutes irreparable injury" (that is, does so *per se*, obviating the need for a specific showing); and (b) the OAG's effort to enforce New York law "also irreparably harms Amazon by damaging Amazon's reputation and good will."  Amazon Mem. Supp. MSJ at 23.  Neither assertion has merit.

With respect to Amazon's first assertion, this Court—as Amazon admits—has recognized that the possibility that a preempted law might be enforced does *not* create *per se* irreparable injury.  *Weisshaus v. Cuomo*, No. 20-cv-5826 (BMC), 2021 WL 103481, at *5 (E.D.N.Y. Jan. 11, 2021) ("Plaintiff must point to some other harm.").  Amazon calls *Weisshaus* "distinguishable" because whereas Amazon faces "threatened enforcement action" the plaintiff in *Weisshaus* supposedly did not, but the Court noted in *Weisshaus* that "if plaintiff refuses to comply with the Executive Order, he will face a substantial fine."  *Id.*

Amazon also relies on a statement in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992), that the "prospect of state suit . . . supplies the necessary irreparable injury," Amazon Mem. Supp. MSJ at 23 n.9, but *Morales* held that the prospect of suit can supply that

injury in certain circumstances, including those in *Morales*—not that every threatened enforcement action is *per se* irreparable harm.[1] *Morales* enjoined the Texas Attorney General from suing to enforce state guidelines for air travel advertisements when federal law expressly prohibited states from "enacting or enforcing any . . . provision having the force and effect of law relating to rates, routes, or services of any air carrier." *Morales*, 504 U.S. at 383. In that context, the Supreme Court found injunctive relief against enforcement of the preempted law available: not *per se*, but "at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses," leaving it "a Hobson's choice." *Id.* at 381.

Amazon has not asserted that the prospect of repetitive penalties makes it unrealistic to raise its federal defenses or that as a practical matter it is being forced to knuckle under to the OAG. On the contrary, Amazon: (a) has declared that its course of action is proper even under New York law and that it neither needs nor plans to change course, *see generally* Am. Compl., and (b) not only can, but already has, asserted its federal-law defenses in the State Action, where its motion to dismiss is scheduled to be heard on July 14. Nothing in *Morales* suggests that being sued, by itself, is irreparable harm.[2]

---

[1] Besides *Morales*, Amazon cites two out-of-circuit decisions that found a likelihood of irreparable harm in the context of affirming preliminary injunctions. *Arcadian Health Plan, Inc. v. Korfman*, No. 1:10-CV-322-GZS, 2010 WL 5173624 (D. Me. Dec. 14, 2010), states: "A party *may* be irreparably injured in the face of the threatened enforcement of a preempted law." *Id.* at *8 (emphasis added). And *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010), found that particular state action was likely to cause irreparable harm—not that threatened action is irreparable harm *per se*. Specifically, *Edmondson* found that enforcing a state requirement that businesses use a certain method to verify employees' work authorization would likely cause irreparable harm since following the law was costly—with no means of recovering the costs later—while defying the law meant debarment from state contracts.

[2] Having to make a legal argument in state rather than federal court is also not irreparable injury. *Cf. Cuomo v. Dreamland Amusements, Inc.*, No. 08 Civ. 6321 (JGK), 2008 WL 4369270, at *11

5

Amazon also claims that the OAG's "exercise of regulatory authority . . . irreparably harms Amazon by damaging Amazon's reputation." Amazon Mem. Supp. MSJ at 23. By way of support, Amazon states that the OAG publicly criticized Amazon and sent it a letter (which National Public Radio obtained) giving a preliminary assessment of the OAG investigation, and that the OAG's conclusions about Amazon are "wrong[]" and "unfair[]." *Id.* at 24. But public criticism is not evidence of actual or potential harm to Amazon's reputation, still less its business. Instead, Amazon describes the "irreparable harm done" as "impossible to measure." *Id.*

Effectively, Amazon is asking for an injunction despite lack of any evidence of irreparable injury. Although Amazon cites two decisions finding that non-measurable injury to reputation supported a preliminary injunction, both involved harm to reputation that flowed directly from denial of access to a defendant supplier.[3] By contrast, Amazon vaguely claims to have been "denigrate[d]" and "publicly and unfairly maligned," Amazon Mem. Supp. MSJ at 24—assertions which would be no different had the Attorney General simply criticized Amazon.[4] Amazon does not allege the actual or potential loss of customers, vendors, or business

(S.D.N.Y. Sept. 22, 2008) ("State courts routinely hear cases in which federal preemption is asserted as a defense.").

[3] *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908 (2d Cir. 1990), involved the likelihood that cutting off a wire service's access to photos would lead customers to drop subscriptions, "so that interrupting the flow of pictures even briefly threatens [the plaintiff's] continued viability." The injunction in *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995), maintained the plaintiff's access to an "opportunity to become a major publisher of children's books" and explained that "loss of prospective goodwill can constitute irreparable harm," but only on "a clear showing that a product . . . is a truly unique opportunity . . . . We expect the 'clear showing' standard to be infrequently met."

[4] The sole, unreported decision which Amazon claims found that "enforcement actions" irreparably damage reputation and good will so as to support an injunction, *Missouri Ins. Coal. v. Huff*, No. 12 Civ. 2354 (AGF), 2012 WL 6681688, (E.D. Mo. Dec. 21, 2012), granted a temporary restraining order the same day the TRO hearing was held. Not only did the TRO cite harm beyond damage to reputation, but the court's later, more considered ruling, granting a

opportunities resulting from the OAG's lawsuit. Indeed, over the course of the pandemic (using the period Q2-2020 through Q1-2021), Amazon generated more than $213 billion in revenues from its online sales—corresponding to a 44% growth from revenues generated for the same period the prior year (i.e., Q2-2019 through Q1-2020). Am. Compl., NYSCEF Doc. No. 15, *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. May 6, 2021) ("OAG Am. Compl.") at ¶ 9; *see also Rittmann v. Amazon*, 971 F.3d 904, 915 (9th Cir. 2020) (noting Amazon's description of itself as "one of the world's largest online retailers").

### B. Amazon Has Not Shown That an Injunction Is the Only Adequate Remedy

With respect to the second prerequisite for a permanent injunction, Amazon makes only the completely conclusory statement that "[t]he OAG has refused to withdraw its claims, and the only adequate remedy is an injunction." Amazon Mem. Supp. MSJ at 23. While it is true that the OAG has not withdrawn its well-founded claims, it is not true that Amazon's only adequate remedy is an injunction. Amazon can assert its putative federal defenses in the State Action— and, indeed, it has already done so. *See* Defs. Mem. of Law in Supp. of Mot. to Dismiss, NYSCEF Doc. No. 27, *People v. Amazon.com Inc.*, No. 450362/2021 (N.Y. Sup. Ct. May 25, 2021). Amazon does not even attempt to argue, let alone provide any authority in support, that dismissal of the State Action is inadequate. It has simply asserted elsewhere that "all the state court can do is dismiss the OAG's lawsuit." *See* Pl. Pre-Motion Letter, ECF No. 30 at 2. In practice, however, dismissal by the state court would provide adequate relief. For this reason alone, Amazon cannot demonstrate that it is entitled to an injunction.

---

request for a declaratory judgment (and declining to grant an injunction), did not even mention reputation or good will. Instead, the court discussed only that the challenged law "force[d] health insurers to risk fines and penalties by choosing between compliance with state or federal law." *Missouri Ins. Coal. v. Huff*, 947 F. Supp. 2d 1014, 1020 (E.D. Mo. 2013).

**C.  Neither the Balance of Hardships nor the Public Interest Supports Issuing an Injunction**

Amazon's argument that a permanent injunction is supported by the balance of hardships and the public interest amounts simply to claiming that Amazon is right on the merits of its preemption claims.  *See* Amazon Mem. Supp. MSJ at 25.  As shown in the balance of this brief, that is not correct: Amazon's preemption arguments fail.  *See infra* 10–23.  Moreover, the public has a strong interest in having the OAG enforce health-and-safety standards and anti-retaliation laws during this unprecedented pandemic.  The OAG brought the State Action to protect Amazon workers, their families, and their communities from the spread of COVID-19 and to ensure that Amazon employees can raise concerns about workplace safety.  Amazon's unsuccessful attempt to remove the State Action to the Southern District of New York based on the same preemption claims has already delayed protection for its workers to the detriment of the public interest.  Amazon's attempt to stymie the OAG's enforcement efforts should be rejected here as well.

Further, as noted above, *see supra* 7, between the second quarter of 2020 and the first quarter of 2021—the height of the pandemic—Amazon generated more than $213 billion in revenues from on-line sales, a 44% growth over the prior year, making it unreasonable for Amazon to claim hardship in defending against the OAG's State Action.

**II.     Amazon Is Not Entitled To A Declaratory Judgment**

Nor is Amazon entitled to declaratory relief.  The Declaratory Judgment Act ("DJA") is an authorization, not a command, giving federal courts competence to make a declaration of rights but not imposing a duty to do so.  *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *see also id.* at 499 (Douglas, J., concurring); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300–01 (1943).  "A declaratory judgment, like other forms of equitable relief, should

be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948). *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), instructs that federal courts should use that "unique and substantial discretion" to avoid piecemeal litigation and prevent forum shopping.

Here, Amazon raced to file this case knowing full well that the OAG was planning to file an enforcement action soon in state court. *See, e.g.*, Am. Compl. ¶ 13. The OAG brought its enforcement action, asserting NYLL claims, one business day later. Another federal court has already concluded that there is no basis for removing those claims to federal court. *See* ECF No. 23-1 (S.D.N.Y. order). And Amazon's challenges to that state-law enforcement proceeding can and are being litigated there. Amazon argues that "determining who should regulate these issues" is a "quintessential question for a federal court." Amazon Mem. Supp. MSJ at 22. But Justice Bannon, who presides over the State Action, is well-equipped to answer the question, and, as noted, will hear argument on the preemption issues on July 14.

As the OAG has explained in its motion to dismiss, to avoid piecemeal litigation and prevent Amazon from forum shopping, the Court should decline to exercise its discretion under the DJA. The factors recognized in *New York v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011), call for *Wilton* abstention, and the OAG incorporates those arguments by reference here. OAG Mem. Supp. MTD at 11–15.[5]

---

[5] Amazon has maintained that *Wilton* does not apply to "actions [], like this one, [that] involve . . . claims for injunctive relief." Pl. Pre-Motion Letter, ECF No. 30 at 2. While the OAG has explained in its motion to dismiss that including a request for injunctive relief is not enough to defeat *Wilton* abstention, OAG Mem. Supp. MTD at 13–14, the fact that Amazon cannot make the necessary showing for an injunction, *see supra* 4–8, further confirms that *Wilton* is appropriately applied here.

### III.    The OSH Act Does Not Preempt The OAG's NYLL § 200 Claim

With respect to the merits, the OSH Act does not preempt state regulation of Amazon's workplace safety response to COVID-19.  The Act includes a jurisdictional savings clause, which expressly provides that "[n]othing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title."  29 U.S.C. § 667(a).  The Act also includes an additional savings clause, which preserves "common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."  29 U.S.C. § 653(b)(4).

As this Court already recognized in *Palmer*, each of these clauses provides a basis to reject Amazon's preemption arguments.  The OSH Act does not preempt the OAG's NYLL § 200 claim because it "does not conflict with an existing federal standard and the OSH Act's savings clause expressly excludes statutory tort law claims from preemption."  *Palmer v. Amazon.com Inc.*, 498 F. Supp. 3d 359, 374 (E.D.N.Y. 2020).  Amazon asks the Court to reconsider that ruling, Amazon Mem. Supp. MSJ at 15, but there is no reason to do so.  While OSHA has issued an Emergency Temporary Standard since the *Palmer* decision, it only applies to workers in healthcare settings and does not regulate employers like Amazon.  *See* 29 C.F.R. § 1910, Subpart U ("Healthcare ETS").  There is still no federal standard governing the COVID-related workplace safety issues involved in this case.  Further, "NYLL § 200 is the codification of the common law duty to maintain a safe work environment."  *Palmer*, 498 F. Supp. 3d at 373.  "Because [it] constitutes statutory tort law, claims brought under it generally fall within the OSH Act's savings clause."  *Id.*  Therefore, a NYLL § 200 claim would generally not be preempted

even if there were a standard on the given issue. There is no need for the Court to depart from its holdings in *Palmer* with respect to OSH Act preemption.

Amazon argues that OSHA's activities since the *Palmer* decision—citations and fines against non-Amazon workplaces, guidance documents, advisory recommendations, and a National Emphasis Program—warrant preemption. *See* Amazon Mem. Supp. MSJ at 15–16. But Amazon cannot escape the fact that these activities do not amount to a federal standard under 29 U.S.C. § 655 or overcome the OSH Act's savings clause. *See* 29 U.S.C. § 653(b)(4).

Amazon also contends that preexisting OSHA standards preempt the OAG's NYLL § 200 claim, *see* Amazon Mem. Supp. MSJ at 14–15, but standards regarding personal protective equipment, sanitation, and record-keeping do not equate to a federal standard governing the COVID-19 workplace safety issues alleged in the OAG's lawsuit. First, with respect to "Amazon's Failure to Conduct Adequate Cleaning and Disinfection," *see* OAG Am. Compl. at ¶¶ 51–55, the OAG alleges that "Amazon did not close off all areas visited, did not open outside doors and windows or use ventilating fans to increase ventilation, and did not wait 24 hours before cleaning and disinfecting such areas" in response to "a probable or confirmed COVID case," *id.* ¶ 52. OSHA's hand protection and sanitation standards do not address those deficiencies.[6] *See* Amazon Mem. Supp. MSJ at 15. Second, the OAG asserts that Amazon's productivity and "time off task" monitoring policies, used to assess worker performance and

---

[6] The hand protection standard provides that "[e]mployers shall select and require employees to use appropriate hand protection when employees' hands are exposed to hazards such as those from skin absorption of harmful substances; severe cuts or lacerations; severe abrasions; punctures; chemical burns; thermal burns; and harmful temperature extremes." 29 C.F.R. § 1910.138(a). And the sanitation standard sets out requirements for housekeeping, waste disposal, vermin control, water supply, toilet facilities, washing facilities, change rooms, clothes drying facilities, consumption of food and beverages on premises, and food handling. 29 C.F.R. §§ 1910.141(a)–(h).

discipline, hampered employees from taking appropriate health precautions during the pandemic. *See* OAG Am. Compl. ¶¶ 56–70. These issues are not governed by OSHA's sanitation and personal protective equipment standards.[7] *See* Amazon Mem. Supp. MSJ at 15. Third, the OAG alleges that Amazon did not conduct proper contact tracing by, for example, failing to interview infected workers to determine close contacts. *See* OAG Am. Compl. ¶¶ 71–77. OSHA's record-keeping standard only addresses maintaining a log of certain work-related illnesses, *see* 29 C.F.R. § 1904.4; it does not speak to workplace transmission of a virus or efforts to identify workers that might contract the virus from a sick colleague.

Further, Amazon provides no support for its argument that the OSH Act's general duty clause preempts the OAG's NYLL § 200 claim. *See* Amazon Mem. Supp. MSJ at 17. The general duty clause is not a § 655 standard preempting state law. *Cf. Wilcox v. Niagara of Wis. Paper Corp.,* 965 F.2d 355, 366 n.* (7th Cir. 1992) (Cummings, J., concurring) ("This Court has not held that the 'general duty clause' . . . is a 'standard' that preempts state law. Such a holding would imperil numerous traditional areas of state general health and safety regulation and would seem to subvert 29 U.S.C. § 667(a).").[8] Indeed, Amazon's argument would render § 667(a) meaningless because all state occupational safety and health laws would be preempted regardless of whether OSHA had issued a standard on the question at issue when Congress expressly

---

[7] The eye and face protection standard provides that "employer[s] shall ensure that each affected employee uses appropriate eye or face protection when exposed to eye or face hazards from flying particles, molten metal, liquid chemicals, acids or caustic liquids, chemical gases or vapors, or potentially injurious light radiation[.]" 29 C.F.R. § 1910.133(a)(1). And the respiratory protection standard applies to "control of those occupational diseases caused by breathing air contaminated with harmful dusts, fogs, fumes, mists, gases, smokes, sprays, or vapors[.]" 29 C.F.R. § 1910.134(a)(1). *See also supra* at n.6 (quoting 29 C.F.R. § 1910.138(a) (hand protection); 29 C.F.R. §§ 1910.141(a)–(h) (sanitation)).

[8] That the OAG cited OSHA standards in its *preliminary* assessment" of Amazon's COVID-19 workplace safety response, *see* MSJ at 15 n.6, has no bearing on whether the OAG's claims are preempted.

preserved "state authority in the absence of a federal standard." *Gade v. Nat. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 100 (1992) (plurality op.). "Federal regulation of the workplace was not intended to be all-encompassing." *Id.* at 96.[9]

The fact that OSHA has not issued standards under 29 U.S.C. § 655 with respect to the COVID-19-related workplace safety issues involved in this case is fatal to Amazon's preemption claim. OSHA's recent activities, preexisting standards, and the OSH Act's general duty clause have no bearing on the preemption analysis here because they do not amount to promulgated standards by OSHA to govern workplace exposure to COVID-19 at Amazon's JFK8 and DBK1 facilities.[10] The OSH Act's savings clause, 29 U.S.C. § 653(b)(4), also bars preemption. Accordingly, the OAG's NYLL § 200 claim is not preempted.

## IV. The Primary-Jurisdiction Doctrine Is Not Applicable To The OAG's Case

Whether to invoke the primary-jurisdiction doctrine is analyzed "on a case-by-case basis." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006) (citation omitted). Although this Court held that OSHA had primary jurisdiction over private plaintiffs' NYLL § 200 claim in *Palmer*, 498 F. Supp. 3d at 368–70, the OAG respectfully disagrees with that

---

[9] Accordingly, the fact that OSHA has "issued a citation" to a tax services business in Massachusetts "under the general duty clause for, *inter alia*, failing to enforce social distancing protocols," Amazon Mem. Supp. MSJ at 17, is immaterial to whether the OAG can enforce the NYLL to ensure reasonable and adequate protection of Amazon workers during the pandemic. *See Puffer's Hardware, Inc. v. Donovan*, 742 F.2d 12, 16 (1st Cir. 1984) (holding that employer was properly cited for violation of the general duty clause while also finding that "since no federal standard govern[ed] the conduct at issue . . . the [state] statute [was] not preempted").

[10] Because there is no federal standard, the lack of a New York plan for private sector employees, *see* Amazon Mem. Supp. MSJ at 14, is irrelevant; the OAG may enforce occupational safety and health standards against private employers like Amazon.

holding, and with extending that holding to preclude the OAG from enforcing NYLL § 200 in state court. *See* OAG Mem. Supp. MTD at 16–19.[11]

The OAG's State Action is different from the *Palmer* plaintiffs' private lawsuit. For example, the OAG is acting pursuant to its unique authority and capacity under Executive Law § 63(12)—on behalf of the public—to bring actions in state court to enforce New York law. The relief sought in the State Action also differs from what the *Palmer* plaintiffs sought. The injunctive relief requested in *Palmer* included specific requirements to, *inter alia*, "[c]ontinue the existing rate requirements and refrain from counting handwashing and bathroom breaks against TOT requirements," "[p]rovide workers with adequate time and tools to clean and disinfect their work stations," and "[e]nsure that workers have access to air-conditioned break rooms in which they can maintain social distancing." *See* Am. Compl. Class Action, ECF No. 63 at ¶¶ 362(c)(iii)–(v), *Palmer v. Amazon.com Inc.*, No. 1:20-cv-02468-BMC (July 28, 2020). By contrast, the OAG seeks an order finding that Amazon violated NYLL § 200, enjoining Amazon from "engaging in unlawful practices," and requiring Amazon to "chang[e] policies, conduct[] training, and undergo[] monitoring"—types of relief routinely granted by courts. *See* OAG Am. Compl., Prayer for Relief at 29–30. Indeed, instatement of a health monitor would mean that the monitor—not the OAG or a court—would determine the steps Amazon needs to take to ensure health-and-safety protection for its workers and the public health.

Moreover, since the *Palmer* holding, OSHA has made clear that it is focusing its limited resources on healthcare settings. "[E]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest

---

[11] Further, as noted in the State's motion to dismiss, any analysis of the primary-jurisdiction doctrine should be for the court in the State Action to adjudicate in the first instance.

in the subject matter of the litigation." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015). Amazon incorrectly claims that OSHA's enforcement of existing standards and recent activity justifies a deferral of the OAG's claims to OSHA. *See* Amazon Mem. Supp. MSJ at 20. OSHA's existing standards, however, do not address the workplace safety issues alleged in the OAG's State Action.

Amazon also fails to demonstrate how OSHA's inspections, citations, and investigations of non-Amazon workplaces are relevant to the OAG's allegations as to JFK8 and DBK1.[12] Further, when considering the danger workers have faced in the millions of workplaces across the country, the number of inspections, citations, and investigations are not particularly substantial. As a practical matter, OSHA's limited resources have been directed towards health and emergency care workers during the COVID-19 pandemic. *See* Br. for National Employment Law Project, *et al.*, as *Amici Curiae* Supporting Plaintiffs-Appellants at 19–23, *Palmer v. Amazon.com, Inc.*, (No. 20-3989) (2d Cir. Jan. 19, 2021). And the Healthcare ETS confirms OSHA's focus on healthcare settings.

Amazon also maintains that deferring to OSHA is "especially warranted" in light of the improved COVID-19 conditions in New York State, suggesting that the OAG's case may be moot.[13] However, the pandemic continues to endanger Amazon workers. Despite decreasing

---

[12] Amazon emphasizes OSHA's 11,400 COVID-related investigations, 1,430 inspections, and 294 citations, *see* Amazon Mem. Supp. MSJ at 20, but omits that "[o]f the[ ] [1,430] inspections, over 800 involved healthcare establishments" and "[o]f the 294 cited employers, 261 were healthcare establishments." Dep't of Labor Br., *AFT v. OSHA*, No. 20-73203 (9th Cir. Dec. 31, 2020), Dkt. 13-2 at 11.

[13] The out-of-circuit cases Amazon cites regarding COVID-related issues being moot, Amazon Mem. Supp. MSJ at 21, are readily distinguishable on the facts and procedural posture. *See Carley v. Gentry*, No. 2:17-cv-02670-MMD-VCF, 2021 WL 2276458, at *3 (D. Nev. June 3, 2021) (plaintiff's motions for a temporary restraining order and preliminary injunction denied as moot because in-person access to a correctional center's law library was permitted again following a COVID-19 lockdown and plaintiff had been able to conduct in-person research at

infection rates and increasing vaccination rates, New York City still sees an average of 204 cases and at least five deaths per day. *See* Kaye Decl. Ex. E, NYC Health, COVID-19: Data, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last accessed July 8, 2021). Further, only 52.1% of the total population of New York City is fully vaccinated. *See* Kaye Decl. Ex. F, NYC Health, COVID-19 Vaccines, https://www1.nyc.gov/site/doh/covid/covid-19-data-vaccines.page (last accessed July 8, 2021). In Staten Island, where Amazon's JFK8 facility is located, the vaccination rate is lower at 48%. *Id.* Moreover, variants of COVID-19, including the Delta variant, continue to pose a threat across the globe. Emily Anthes, *The Delta Variant: What Scientists Know*, The New York Times, (updated June 30, 2021), https://www.nytimes.com/2021/06/22/health/delta-variant-covid.html. Amazon cites two press releases about the lifting of restrictions in light of the number of individuals being vaccinated in New York State. Schwartz Decl. Exs. 14–15, ECF Nos. 33-16, 33-17. However, Amazon has not disclosed the numbers of JKF8 and DBK1 workers who are fully vaccinated or how many employees continue to report COVID cases. Moreover, even if forward-looking relief became moot at some future date, the OAG seeks, *inter alia*, disgorgement for the outsize profits Amazon obtained at the expense of its frontline workers, reinstatement and back pay for Mr. Smalls, and emotional distress damages for Mr. Smalls and Mr. Palmer. OAG Am. Compl., Prayer for Relief at 29–30.

As the OAG has explained in its motion to dismiss, the *Ellis* factors, including that OSHA has not and is not investigating Amazon's New York facilities, confirm that there is no

---

library); *Case v. Ivey*, No. 2:20-CV-777-WKW, 2021 WL 2210589, at *10 (M.D. Ala. June 1, 2021) (plaintiffs' motion for preliminary injunction denied as moot because subsequent order superseded all of the State defendants' previous orders and "eliminated the provisions of the previous orders that formed the basis of plaintiffs' request for prospective injunctive relief.").

need to apply the primary-jurisdiction doctrine here, and deferral to OSHA would cause unnecessary delay. *See* OAG Mem. Supp. MTD at 17–19. The OAG incorporates those arguments by reference here.

## V. The NLRA Does Not Preempt The OAG's NYLL §§ 215 And 740 Claims

Amazon also fails to establish that the NLRA preempts the OAG's claims. As explained in the OAG's motion to dismiss, *see* OAG Mem. Supp. MTD at 20, the Second Circuit adopted a three-step test in *Pataki* to determine when, exactly, the NLRA preempts state law under the Supreme Court's decision in *Garmon*, *see Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006); *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 244 (1959). Applying *Pataki* here, it is clear that the NLRA does not preempt the OAG's claims. At a minimum, the OAG's case falls firmly into the "local interest" exception at the third step of *Pataki*. *See Pataki*, 471 F.3d at 9; *see also Garmon*, 359 U.S. at 244 (finding exception "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility [that], in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act"); OAG Mem. Supp. MTD at 24–25. Because the OAG's case is rooted in its significant interest in health and safety, with little risk of "interference with the federal regulatory scheme," the exception precludes preemption here. *Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 297 (1977).

First, the facts and the law show that the OAG seeks to regulate conduct touching upon interests "deeply rooted in local feeling and responsibility." *Garmon*, 359 U.S. at 244. Within weeks of identifying New York's first COVID-19 case in March 2020, "New York State became the global epicenter of the pandemic." OAG Am. Compl. ¶ 23. Over the following weeks and months, "New York State instituted requirements and issued guidance intended to protect the

health and safety of workers, as well as the public, against infection by COVID-19 and to minimize deaths, illness, and other devastating impacts of the virus." *Id.* ¶ 24; *see also id.* ¶¶ 25–42.[14] At the same time, workers' complaints about Amazon facilities that the State had deemed essential prompted the OAG to begin an investigation into the company's safety protocols. *Id.* ¶ 43. As that investigation revealed the threat of "serious illness and grave harm to the thousands of workers in these facilities and . . . a continued substantial and specific danger to the public health," *id.* ¶ 3, the OAG filed suit under state law. In short, the OAG's interest here is both obvious and profound.

Amazon's argument that the local interest exception cannot apply because it extends only to "threats to public order"—not health and safety during a pandemic—both misstates the scope of the exception and fails to rebut its application here. Amazon Mem. Supp. MSJ at 13. Relying on a single out-of-circuit case, Amazon argues that courts typically limit the exception to "threats to public order such as violence, threats of violence, intimidation and destruction of property." *Id.* (quoting *Pa. Nurses Ass'n v. Pennsylvania State Educ. Ass'n*, 90 F.3d 797, 803 (3d Cir. 1996)). But the exception is not so limited. In fact, even the case Amazon cites explains in the very next sentence that the Supreme Court has "extended this exception to cover acts of trespass," "certain personal torts," and "malicious libel." *Pa. Nurses Ass'n*, 90 F.3d at 803. In

---

[14] Citing NYLL § 27(1), Amazon makes the sweeping claim that New York has no significant state interest at stake here because it has "declined to assume responsibility for enforcing workplace safety standards against private employers, choosing instead to rely on federal standards." Amazon Mem. Supp. MSJ at 13 (emphasis omitted). But NYLL § 27 merely authorizes the New York State Department of Labor Commissioner to promulgate specific safety and health standards applicable to employees not covered by an OSHA standard, which the Commissioner is authorized to do under OSHA itself. *See* 29 U.S.C. § 667 ("Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title."). As such, it has no bearing on whether the OAG's case touches upon local interests.

other words, the Supreme Court has repeatedly found that "local interest" goes beyond simply "exigent threats to the public peace." Amazon Mem. Supp. MSJ at 13. And if the Supreme Court has recognized trespass by picketing workers to be sufficiently significant to warrant applying the "local interest" exception, *see Farmer*, 430 U.S. at 304, then surely "the traditional use[] of the police power of the States" to protect health and safety during a historic public health crisis supports applying the exception here, *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 82–83 (1946).

Even employing Amazon's incorrect interpretation, the exception still applies. Given that JFK8 alone employs more than 5,000 workers, *see* Am. Compl. ¶ 45, "that a single person with COVID-19 is likely to infect five or six other individuals absent aggressive social distancing practices," *id*. ¶ 20, and that Amazon's response to Mr. Smalls's and Mr. Palmer's complaints "wrought a devastating chilling impact on other employees," *id*. ¶ 104, it is clear that the OAG seeks to thwart perhaps the greatest threat to the public order that New York has experienced in the past century. Amazon cannot seriously contest that the OAG's claims are rooted in a "significant state interest." *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 196 (1978).

Second, the OAG's claims entail "little risk of interference with the regulatory jurisdiction of the Labor Board." *Id*. at 196. Arguing to the contrary, Amazon makes much of the fact that the NLRB is reviewing a complaint brought by a different JFK8 worker, Gerald Bryson, who was fired. *See* Amazon Mem. Supp. MSJ at 9–10. Even assuming *arguendo* that Mr. Smalls and Mr. Palmer could bring NLRB complaints virtually identical to the Bryson NLRB complaint, Amazon offers no support for the proposition that this is sufficient to demonstrate interference. Nor could they. When considering risk, the question is not whether

19

Mr. Smalls's and Mr. Palmer's potential NLRB complaint would be identical to another NLRB complaint. Rather, "[t]he critical inquiry" is "whether the *controversy presented to the state court* is identical to (as in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the Labor Board." *Sears*, 436 U.S. at 197 (emphasis added). For this inquiry, it is not enough for the proceedings in both forums to arise from the same factual circumstances if "the respective controversies presented to the state and federal forums would not have been the same." *Id.* at 196–97 (rejecting *Garmon* because "[a]lthough the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same"). Indeed, in *Farmer*, the Supreme Court explicitly recognized that "a rigid application of the Garmon doctrine might support the conclusion" that an "entire action" is preempted when "allegations of tortious conduct might form the basis for unfair labor practice charges before the Board," but nevertheless rejected *Garmon* because, though the conduct at issue in that case *could* give rise to a complaint with the NLRB, the controversies were distinct. *Farmer*, 430 U.S. at 301–02.

As the OAG has explained, *see* OAG Mem. Supp. MTD at 20–23, the controversies here are also distinct. The state proceeding focuses on protecting the right to complain or report an employer's health-and-safety violations while the federal issue before the NLRB would be whether the employer disrupted employees' rights to organize and advocate for themselves as a collective. *See id.* at 21–22. Because the former is about ensuring that the flow of information to the State and public about illegal business conduct is not hampered while the latter is about ensuring collective bargaining and organizing power, there is no interference risk warranting *Garmon* preemption. *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 89–90 (2d Cir. 2010) (holding that *Garmon* did not preempt a state controversy that did not concern whether

"plaintiffs . . . were being denied a collectively bargained-for right" or "that they were acting in concert in any way," despite the fact that the controversy arose from the same set of facts supporting plaintiffs' other lawsuit in federal court that *did* invoke the relevant bargaining agreement and concerted activity).

Amazon relies on *Gould* to argue that the OAG's analysis of the respective controversies improperly focuses on NYLL §§ 215 and 740's legal standards, rather than the conduct they regulate. Amazon Mem. Supp. MSJ at 10. In *Gould*, however, the Supreme Court was reviewing a Wisconsin statute prohibiting state procurement agencies from contracting with NLRA violators. *See Wis. Dep't of Indus., Labor & Human Relations v. Gould*, 475 U.S. 282, 283–84 (1986). Wisconsin argued that *Garmon* did not preempt its law because the state was exercising its spending power, rather than police power. The Court held that it did not matter which lever the State used to regulate NLRA conduct, only that it did so. *Gould*, 475 U.S. at 289 ("To uphold the Wisconsin penalty simply because it operates through state purchasing decisions therefore would make little sense. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." (internal quotation marks omitted)). Here, the question presented does not concern whether the state is using its spending or police power. And, as described above, the conduct at issue in the State case is different than the conduct that would be at issue if either Mr. Smalls or Mr. Palmer pursued a case under the NLRA (which they have not). The OAG's case does not rest on whether Mr. Smalls or Mr. Palmer took collective action or advocated for bargained-for rights, but, rather, on whether

Amazon violated state law and then retaliated against its employees for complaining about its legal violations. As such, the local interest exception to preemption applies here.[15]

The OAG's sought-for remedies likewise counsel against preemption. *See* OAG Mem. Supp. MTD at 22. Citing *Garmon* and *Gould*, Amazon argues that differing remedies "only accentuate[s] the danger of conflict" with the NLRB's jurisdiction. Amazon Mem. Supp. MSJ at 10–11 (quoting *Garmon*, 359 U.S. at 247). But *Garmon* itself recognized that the lack of a federal remedy is relevant where, as here, a "compelling state interest" is at stake. *Garmon*, 359 U.S. at 247–48. This is why, in *Linn*, upon recognizing "'an overriding state interest' in protecting its residents from malicious libels," the Supreme Court found that the fact that the NLRB could not address "the 'personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiate[d] the ordinary arguments for pre-emption." *Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 61, 64 (1966). Here, the NLRB cannot address the emotional distress suffered by the workers Amazon retaliated against.

Amazon's arguments fail at the second step of *Pataki*'s three-step inquiry for similar reasons. At the second step, as the OAG has explained, *see* OAG Mem. Supp. MTD at 20, the court "must decide whether the controversy is identical to one that the aggrieved party could

---

[15] Relying on the First Circuit's decision in *Chaulk*, Amazon argues that the OAG is simply repackaging NLRA claims as state law controversies. Amazon Mem. Supp. MSJ at 10 (quoting *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.*, 70 F.3d 1361, 1370 (1st Cir. 1995)). In *Chaulk*, the First Circuit held that *Garmon* preempted gender discrimination claims because the employee had repackaged her unfair labor practice claims. *Chaulk*, 70 F.3d at 1370. But the Second Circuit has held that *Garmon* does not preempt discrimination claims when plaintiffs' claims do not hinge on whether "they were being denied a collectively bargained-for right, or that they were acting in concert in any way." *Domnister*, 607 F.3d at 90. As the OAG's NYLL claims also do not hinge on whether Mr. Smalls and Mr. Palmer were acting in concert or for bargained-for rights, preemption is inappropriate.

bring (or induce its adversary to bring) before the NLRB" in order to establish *Garmon*'s

applicability in the first instance, *Pataki*, 471 F.3d at 96.  Where, as here, they are not, *see supra*,

then there must be "a strong showing that the State has interfered with the protections offered by

section 7 or 8 of the NLRA."  *Id.*  Amazon makes no mention of this requirement, much less

offers a strong showing of interference.[16]  Nor would it be possible.  As the OAG's claims do

nothing to disturb the collective bargaining and organizing rights that the NLRA protects, there

can be no interference with the Act's protections.  Accordingly, Amazon's arguments fail at both

the second and third steps of *Pataki*.  *Garmon* does not preempt the OAG's claims.

## CONCLUSION

For the reasons stated above, Defendant requests that the Court deny Amazon's motion

for summary judgment.


DATED:  July 9, 2021                          Respectfully submitted,

                                             LETITIA JAMES
                                             *Attorney General of the State of New York*

                                             By: */s/ Fiona J. Kaye*

                                             KAREN CACACE
                                                *Chief of Labor Bureau*
                                             JULIE R. ULMET
                                                *Deputy Chief of Labor Bureau*

---

[16] Amazon does include a section arguing that the NLRA protects or prohibits what the OAG
seeks to regulate.  Amazon Mem. Supp. MSJ at 7–9.  But that discussion is only responsive to
the first step of the *Pataki* inquiry, *see Pataki*, 471 F.3d at 96 ("The first step in establishing
*Garmon* preemption is to identify which provision of sections 7 or 8 is alleged to protect or
prohibit the conduct regulated."), not the second step, which, absent identical proceedings,
requires "a strong showing that the State has interfered with the protections offered by section 7
or 8 of the NLRA," *id.*  And Amazon's discussion of interference, Amazon Mem. Supp. MSJ at
12, concerns only interference with the NLRB's jurisdiction, not with the protections of Sections
7 and 8.

FIONA J. KAYE
JESSICA AGARWAL
ROYA AGHANORI
ELIZABETH KOO
SETH KUPFERBERG
DANIELA L. NOGUEIRA
JEREMY PFETSCH
   *Assistant Attorneys General*

Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8036
Fiona.Kaye@ag.ny.gov

*Attorneys for the State of New York*